Fee Paid

FILED
CLERK, U.S. DISTRICT COURT
9/14/23
CENTRAL DISTRICT OF CALIFORNIA
BY: CS   DEPUTY

Name: Russell J Terry

Address: 1717 N Street NW STE 1

Washington, DC 20036

Phone: 720-603-1872

Fax:

In Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Russell J Terry

Plaintiff

v.

Apex Systems, Inc., AT&T, Mehak Delawalla, Kim Chu, John Goulding, Oscar Montoya, Ian Hafkenschiel, Daniel Salt

Defendant(s).

CASE NUMBER:
CV23-7707-FMO(JCx)

To be supplied by the Clerk of
The United States District Court

**VERIFIED COMPLAINT**

VERIFIED COMPLAINT

Plaintiff RUSSELL J TERRY ( Plaintiff ) complains of Defendants APEX SYSTEMS, INC, AT&T, MEHAK DELAWALLA, KIM CHU, JOHN GOULDING, OSCAR MONTOYA, IAN HAFKENSCHIEL and DANIEL SALT ( Defendants ) and alleges as follows:

Page 1

**Nature of the Cause**

1. In this civil action, filed by Plaintiff Russell J. Terry against the Defendants, the aim is to secure damages and equitable relief stemming from a series of events characterized by fraudulent misrepresentation, stalking, and harassment. The Plaintiff, who had previously faced retaliation after reporting law enforcement misconduct, including harassment of his family, found himself subjected to a coordinated campaign of harassment by the Defendants. They manipulated him into believing he was being offered a job, only to reveal their true intention to harass him and his parents, resulting in severe emotional distress and employment-related challenges.

**PARTIES**

2. Plaintiff: Russell J. Terry

   Defendants:

3. Apex Systems, Inc. is a corporation engaged in the business of recruitment and job placement with headquarters in Virginia.

4. Mehak Delawalla, at the time of the incident, was a Recruiter at Apex Systems in Los Angeles, California.

5. Kim Chu, at the time of the incident, was an Account Manager at Apex Systems in California.

6. AT&T, Inc. (AT&T) is a multinational telecommunications conglomerate with a prominent presence in the telecommunications and entertainment industries. AT&T offers a wide range of services, including wireless communication, internet, and television broadcasting.

7. DirecTV a subsidiary of AT&T, operates as a leading satellite television provider, delivering a variety of programming to subscribers across the country.

8. Oscar Montoya, at the time of the incident, was the Senior Principal Software Engineer / Architect / Team Lead at AT&T / DirecTV.

9. Ian Hafkenschiel, at the time of the incident, was a Senior React Native Developer for DirecTV.

10. Daniel Salt, who goes by the name of Daniel Morales, at the time of the incident, was a Software Engineer at AT&T.

## Jurisdiction

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. Personal jurisdiction over the defendants is proper in this district as they conduct business within this jurisdiction and have registered agents for service of process in this state.

13. Diversity Jurisdiction, pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over the present matter due to the existence of diversity of citizenship between the plaintiff and the defendants. The plaintiff is a citizen of the United States and is residing in Brazil as a permanent resident. The defendants Apex Systems and AT&T / DirecTV have operations in Los Angeles, California. Defendants Mehak Delawalla, Kim Chu, Oscar Montoya,

Ian Hafkenschiel, and John Goulding are citizens of California and defendant Daniel Salt is a citizen of Florida.

14. The amount in controversy exceeds $75,000, exclusive of interest and costs.

15. Personal jurisdiction over the defendants is proper in this district as they conduct substantial business activities within this jurisdiction. Specifically, the defendants operate and conduct business activities in Los Angeles, California and have registered agents for service of process within this state.

## Venue

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims alleged in this complaint occurred within this district. Additionally, a defendant resides in this district.

## Statement of Facts

**Report of Law Enforcement Misconduct and Subsequent Actions:**

17. The Plaintiff reported law enforcement misconduct, leading to a pattern of retaliation targeted at him, his family and his employment.

18. The Office of Inspection General (OIG) at the Department of Justice referred the Plaintiff's complaint to the FBI's Inspection Division in June 2022. While the FBI Inspection Division took action, they couldn't disclose specific details due to policy.

**Validation of the Complaint**:

19. Both the OIG and FBI Inspection Division acting on the Plaintiff's complaints suggests that there was factual evidence presented and that the complaint was not frivolous.

**Acts of Retaliation reported in the Complaint:**

20. As a result of the Plaintiff submitting complaints of law enforcement misconduct, between 2020 to 2022, the Plaintiff experienced distressing incidents, including threats, stalking, interference with work and school, and harassment of his family.

21. The Plaintiff observed his family's fear, frustration, and distress during Zoom calls following his reports of misconduct, prompting him to refrain from contacting his family to prevent further harassment, and heightening his anxiety pertaining to communication with his family, especially with his mother who was suffering from health issues due to having a brain tumor removed.

22. December 20, 2020, the plaintiff was harassed as a result of submitting law enforcement misconduct and there was an attempt to hit him with a vehicle.

23. In August 2021, before testifying about law enforcement retaliation in a criminal process, the Plaintiff unexpectedly lost his software developer job.

**Apex Systems and AT&T**

24. On September 15, 2021, without applying for a position with Apex Systems, Mehak Delawalla, a recruiter from Apex Systems contacted the Plaintiff, with a remote opportunity at AT&T/ DirecTV that closely aligned with the Plaintiff's qualifications.

25. Prior to an interview with AT&T, the Plaintiff completed a take-home assignment to prove he had the required skills and was sent an email that prepared him for what to expect at the interview.

26. The Plaintiff was interviewed by AT&T / DirecTV employees Oscar Montoya, Ian Hafkenschiel, Daniel Salt, and Gagandeep Brar. The interview lasted about an hour and a half.

27. To the Plaintiff's surprise, Oscar changed the skills required for the job, mentioning the preference for developers with knowledge of other programming languages. Leaving the Plaintiff confused as to why he was interviewed for the position.

28. After the interview, the Plaintiff informed Mehak that Oscar was looking for a candidate with knowledge of other programming languages and asked her to inform him of any jobs that matched his skill set.

29. Mehak convinced the Plaintiff that Oscar liked him and wanted to hire him if he showed he could apply other programming languages to the take-home assignment.

30. The Plaintiff diligently updated the take-home assignment, as he completed it, Oscar continued to add more requirements to it. After completing the take-home assignment four times, on September 30, 2021, Mehak informed the Plaintiff he was going to get a job offer and requested an address as a formality to include on the contract. The Plaintiff provided his parent's address.

31. The Plaintiff was sent an offer letter and Confidentiality and Invention Agreement. He was told the contract was being launched and to inform Mehak when he received it.

32. On October 1, 2021, Mehak informed the Plaintiff that although the position was remote, he would have to reside within the United States to be contracted.

33. The Plaintiff never received a contract and did not sign and return the paperwork.

34. On October 11, 2021, Mehak informed the Plaintiff that AT&T / DirecTV mistakenly shipped a laptop to the Arizona address for the developer position, which was the Plaintiff's parent's home.

35. The Plaintiff told Mehak to have the shipping company pick up the laptop where they left it.

36. Mehak then began to pressure the Plaintiff to contact his parents. That's when the Plaintiff realized that the entire interview process and job offer were interconnected with prior acts of retaliation aimed at harassing his family and disrupting his employment.

37. Apex employees Mehak and Kim Chu, as well as AT&T employee John Goulding, bombarded the Plaintiff with calls and messages pressuring him to get in contact with someone at his parents' home, pretending to be unable to stop the delivery or send a shipping company to retrieve the package.

38. The Plaintiff was forced to help them, because in realizing he was deceived during the interview, he realized his parents could be subject to harassment until the laptop was returned. Therefore, he provided his mother's phone number and email address because they claimed they had to email her a shipping label.

39. Kim Chu claimed the Plaintiff's mother opened the package and was confused. They continued to pressure the Plaintiff to contact his mother.
40. This led to severe emotional distress as the Plaintiff realized reputable companies spent almost a month misleading him to believe he was applying for a legitimate job, while their true intentions were to create a scenario of emotional distress due to the fact, he was not contacting his parents to prevent them from being harassed.

**Expectations of Professionalism**:

41. Apex Systems and AT&T are reputable companies, and they are generally expected to maintain high standards of professionalism and ethics in their recruitment processes.

**Possibility that the job offer and the laptop shipped were fraudulent**:

42. Upon closer examination, the offer letter does not appear to be authentic. It lacks detail, was sent as a Word document susceptible to modification, and contained a punctuation error.
43. The Confidentiality and Invention Agreement seems unusual as it gives the appearance that the Plaintiff was logged into the Apex System platform. A professional recruiting company like Apex Systems would likely provide access to their platform for completing the required paperwork if it were a legit job offer.

**Lack of Paperwork and Signature Requirement**:

It is highly implausible that AT&T would send a laptop for a software developer position to a candidate without requiring any paperwork or a signature for delivery.

Laptops used in software development contain proprietary software and sensitive information. AT&T, as a responsible employer, would likely have established internal processes requiring proper documentation and authorization to release such equipment.

**Data Consent Policies:**

The Plaintiff's address was not likely accessible to AT&T due to the data consent policies displayed on Apex's website.

These policies emphasize that the collection and processing of an individual's information are based on their consent. Since the Plaintiff did not complete any paperwork, AT&T should not have had access to the Plaintiff's address without proper consent or authorization.

**Questionable Employees**:

44. Oscar Montoya was supposedly the lead developer with AT&T/ DirecTV, however when the Plaintiff contacted AT&T to verify his employment with the company, he was informed they did not have an Oscar Montoya, but did have an employee named Ian Hafkenschiel who was contracted through Apex Systems. The Plaintiff was unable to identify John Goulding as an AT&T employee, however in doing a background search, the phone number John Goulding used linked to his name, but the background search did not show he had any history as an AT&T employee.

**Allegations of Fraud and Misrepresentation**:

45. The overall scenario raises suspicions of fraud and misrepresentation, suggesting an underline intent to cause emotional distress to the Plaintiff and his family, which was an ongoing pattern from 2019 through 2022.

**Emphasizing the Impact on the Plaintiff:**

46. The Plaintiff's dedication to the interview process, followed by the revelation of fraudulent actions, caused profound emotional distress and anxiety in seeking employment and contacting his parents.
47. The Plaintiff endured humiliation and emotional pain, particularly concerning the harassment of his elderly mother.
48. The ongoing distress left a lasting impact on the Plaintiff's emotional and psychological well-being.

## CAUSES OF ACTION

### Count I: Fraud and Misrepresentation

49. The Plaintiff incorporates by reference each of the allegations in all prior paragraphs in this complaint.
50. Pursuant to California Civil Code Section 1710(1), which defines actual fraud, the Plaintiff alleges that the Defendants engaged in acts that constitute actual fraud within the meaning of this statute.

**Series of false and misleading acts and statements by the Defendants that they knew were false:**

51. Defendant Apex Systems, a reputable company, through its recruiter Mehak, misled the Plaintiff by emails and phone calls representing that he was a strong candidate for a remote React Native Developer position with AT&T / DirecTV, based on his experience.
52. Defendant AT&T / DirecTV, through their employees Oscar Montoya, Ian Hafkenschiel, Daniel Salt, and Gagandeep Brar, further misled the Plaintiff by conducting an interview that lasted well over an hour, giving him the

impression that he was genuinely being considered for the position. Then at the end of the interview, Oscar Montoya informed him they were looking for a candidate with proficiency in other coding languages.

53. Defendant Apex Systems, through its recruiter Mehak, continued the deception by falsely leading the Plaintiff to believe, in a series of emails, that if he completed the requested updates to the take-home assignment, he would be considered for the position with AT&T / DirecTV.

54. Defendant Apex Systems, through its recruiter Mehak, based on information and belief further misled the Plaintiff by falsely representing that he was offered the job and that a contract would be sent to him once he provided an address. She also emailed the Plaintiff an offer letter and Confidentiality and Invention Agreement that are believed to be fraudulent.

55. Defendant Apex Systems, through its Account Manager, Kim Chu, based on information and belief, deceived the Plaintiff to believe she had spoken to his mother and she had opened the package and was confused.

56. Defendant Apex Systems, through recruiters Mehak and Kim Chu and AT&T, through employee John Goulding, deceived the Plaintiff by claiming that AT&T had accidentally sent a company laptop to his parent's home for the developer position and put pressure on him to contact his parents.

57. **Malicious Intent:** The Defendants intentionally manipulated the Plaintiff throughout the interview process by frequently altering the required skills for the position. They systematically engaged him mentally and emotionally, leading him to believe that he was on the brink of securing the job. Once the Plaintiff was fully invested and optimistic about the job offer, the Defendants deceitfully requested an address, falsely representing it as a

mere formality for paperwork. In reality, this request was part of their scheme to create a situation causing emotional distress and concern for the safety of his parents.

58. **Justifiable Reliance:** The credibility of the situation was bolstered by the active involvement of four AT&T employees who participated in an interview during business hours, in which they all prepared for the interview and asked the Plaintiff questions. As well as constant communication with Apex recruiter Mehak. These actions were orchestrated to induce the Plaintiff to rely on their statements and behaviors.

59. Defendant Mehak also emailed the Plaintiff a Federal Express Tracking number to show a package had been shipped from AT&T / DirecTV to his parent's home.

60. **Plaintiff's Reliance on False Representations**: The Plaintiff reasonably relied on the false representations made by Defendants and, in good faith, prepared for interviews, revised assignments, provided his parents' address, and believed he would receive a job contract.  He also believed they shipped a laptop to his parent's home; therefore, he provided his mother's phone number and email address.

61. **Damages:** As a direct result of Defendants' fraudulent actions, as defined by California Civil Code Section 1710(1), the Plaintiff suffered severe emotional distress, including anxiety, depression, and a profound sense of hopelessness in pursuing gainful employment. Furthermore, the Plaintiff endured severe mental anxiety due to the intentional harassment inflicted upon him and his parents by the Defendants. These cumulative harms have

had a profound and lasting impact on the Plaintiff's emotional and psychological well-being, as well as their ability to seek and maintain employment.

**Count II: Common Law Intentional Infliction of Emotional Distress**

62. The Plaintiff incorporates by reference each of the allegations in all prior paragraphs in this complaint.

63. The defendants, including Apex Systems and its recruiter Mehak, as well as AT&T/DirecTV and their employees Oscar Montoya, Ian Hafkenschiel, Daniel Salt, and John Goulding, engaged in a prolonged and orchestrated campaign that showed reckless disregard for the emotional well-being of the Plaintiff.

64. Over the course of nearly a month, during business hours, the defendants intentionally excited the Plaintiff's hopes of securing a job, only to cruelly demoralize him when he discovered the entire process was a means to harass him and his family.

65. These reputable companies willfully dedicated company resources and employed seven individuals to participate in this campaign of harassment, a shocking and extreme abuse of their positions and resources.

66. The emotional distress inflicted upon the Plaintiff was severe and profound, encompassing suffering, anguish, fright, nervousness, grief, anxiety, worry, shock, humiliation, and shame. This severe emotional distress was not mild or brief; it was substantial and long-lasting, to the extent that he still remains in fear of contacting his family and has refrained to do so until the truth is uncovered.

67. The defendants' deliberate targeting of the Plaintiff and his elderly parents, along with the calculated and malicious nature of their actions, resulted in severe emotional harm beyond what any reasonable person should endure.

68. The Plaintiff's fear of further harassment significantly impacted his mental and emotional well-being, leading to wage losses and a reluctance to seek gainful employment due to the traumatic experience inflicted upon him and his family.

69. Furthermore, the Plaintiff continues to refrain from contacting his mother, fearing that any communication may lead to further harassment, demonstrating the ongoing and lasting psychological impact of the defendants' actions.

## Count III: Stalking

70. The Plaintiff incorporates by reference each of the allegations in all prior paragraphs in this complaint.

71. **Pattern of Conduct with Intent to Follow, Alarm, and Harass:** Defendants Apex Systems and AT&T / DirecTV orchestrated a disturbing pattern of behavior with the deliberate intent to distress and harass the Plaintiff, in violation of California Civil Code Section 1708.7.

72. Acting through its representative Mehak, Apex Systems initiated contact with the Plaintiff under the guise of a genuine employment opportunity tailored to his qualifications.

73. Defendants initially provided insights into the skills required, only to change the parameters during the actual interview.

74. Defendants persisted in coercing the Plaintiff to invest additional time and effort into applying additional language to the take home assignment, fully engaging him and leading him to believe he was a competitive candidate.
75. When the Plaintiff stopped responding after being notified of geographical requirements, Defendants forced him to engage by claiming to have mistakenly sent a laptop to his parent's home, pretending helplessness in stopping the shipment or recovering the package, and bombarding him with messages.
76. Defendants then claimed an inability to communicate with the Plaintiff's mother and requested him to contact her.
77. The combined circumstances were unrealistic for highly reputable companies and show a sustained effort to compel the Plaintiff to invest maximum effort in pursuing a prospective job, ultimately with the underlying intention of inducing a state of emotional distress.
78. **Instilling Credible Threat and Fear for Safety:** Due to recent events of harassment, including an attempt to run the Plaintiff over, and a drug-induced robbery. The Defendants' actions created a credible threat, evoking genuine fear for the safety of the Plaintiff's parents if he did not respond.
79. **Substantial Emotional Distress and Consequent Anxiety:** The Plaintiff suffered substantial emotional distress from being maliciously set up by highly reputable companies that applied their company resources over the course of almost a month, resulting in heightened anxiety and depression. His subsequent job search efforts were severely impaired, leading to prolonged unemployment.

80. **Demand to cease pattern of retaliation and Communication Constraints and Fear of Retaliation:** The Plaintiff's complaints to the FBI, DOJ, and the US Consulate clearly aimed to halt a pattern of retaliation motivated law enforcement.
81. The Plaintiff explicitly informed Mehak he would seek another opportunity after Oscar informed him of the new skill requirements. However, Mehak and Oscar persisted in capturing his interests by leading him to believe he was a viable candidate.
82. Furthermore, while he informed Mehak he was out of the country and never confirmed a return date, he did not complete any of the paperwork sent by Mehak and never received a contract. Despite this, the Defendants continued harassing him by sending the laptop, compelling him to respond, instilling a fear of his parents being harassed.
83. After the Defendants involved his parents, considering the ongoing harassment and his vulnerable position, the Plaintiff was constrained in communicating directly with the Defendants due to a legitimate fear of escalating retaliation.
84. In summary, Defendants Apex Systems and AT&T / DirecTV orchestrated a calculated and sustained campaign to manipulate, distress, and harass the Plaintiff, impacting his emotional well-being, career prospects, and family relationships.

### Count IV: Vicarious Liability under California's Doctrine of Respondeat Superior

85. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

86. **Employment Relationship and Scope of Employment:** AT&T and Apex Systems employed the individuals involved in the Plaintiff's case.
87. Mehak Delawalla, an agent/employee of Apex Systems, initiated contact with the Plaintiff regarding a remote job opportunity at AT&T, clearly acting within her employment scope. She conducted official communication during business hours using Apex Systems' resources and email.
88. Kim Chu, an Account Manager at Apex Systems assigned to AT&T, also engaged in communication within the scope of her employment utilizing Apex System email.
89. AT&T / DirecTV employees and Apex Systems contractors, including Oscar Montoya, Ian Hafkenschiel, Daniel Salt, and Gagandeep Brar, conducted interviews and made representations while acting in their roles as employees and contractors. These interviews occurred during business hours, utilizing AT&T conference link, and followed a clear employment framework.
90. AT&T employee John Goulding shipped a laptop from AT&T to the Plaintiff's parent's home and pressured the Plaintiff through messages, actions executed within the scope of his employment.
91. **Harm or Injury:** The Plaintiff endured severe emotional distress, humiliation, and lasting psychological trauma.
92. This distress stemmed from the Defendants' actions, he came to realize employees of reputable companies had manipulated him over nearly a month. The defendants' deliberate strategy of inducing excitement for the job opportunity, only to deliver a sudden emotional shock aimed at demoralizing him with the threat of harassing his elderly parents has taken

a toll on his psychological well-being. Additionally, the breach caused a tangible loss of wages and future earnings, as the plaintiff's demoralization and fear of potential harassment have deterred him from seeking employment.

93. **Causation:** The Plaintiff's emotional distress, humiliation, and lasting psychological trauma directly resulted from the actions and representations made by the Defendants' employees during the course of their employment.

94. The Defendants' employees, representing highly reputable companies and acting within the scope of their employment, manipulated the Plaintiff into believing in the legitimacy of the job opportunity, entangled him in a fraudulent interview process, and ultimately caused harm through their actions and representations.

95. In summary, AT&T and Apex Systems are vicariously liable under California's Doctrine of Respondeat Superior due to their employees' actions and representations made within the scope of their employment, resulting in harm, emotional distress, humiliation, and lasting psychological trauma, lost wages, lower future earning potential, and suffering experienced by the Plaintiff.

**PRAYER FOR RELIEF**

96. WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

97. Compensatory damages, including economic damages of $500,000.

98. Punitive damages of $4,000,000.

99. Treble damages as provided by California Civil Code Section 3345.

99. Treble damages as provided by California Civil Code Section 3345.
100. Reasonable costs and attorneys' fees.
101. Prejudgment interest as allowed by law.
102. Postjudgment interest as allowed by law.
103. Any Other Appropriate Relief: Plaintiff reserves the right to request any other appropriate relief as deemed necessary by the Court to fully redress the injuries suffered.

## JURY DEMAND

104. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 13, 2023

Russell J Terry