NO CV30

Name: Russell J Terry

Address: 1717 N Street NW STE 1

Washington, DC 20036

Phone: 720-603-1872

Fax:

In Pro Per

**FILED**
CLERK, U.S. DISTRICT COURT

OCT 2 2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____EEE_____ DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Russell J Terry

Plaintiff

v.

Apex Systems, Inc., AT&T, DirecTV, Mehak Delawalla, Kim Chu, John Goulding, Oscar Montoya, Ian Hafkenschiel, Daniel Salt

Defendant(s).

CASE NUMBER:

CV23-7707-FMO(JCx)

To be supplied by the Clerk of
The United States District Court

**AMENDED VERIFIED COMPLAINT**

Plaintiff RUSSELL J TERRY (    Plaintiff    ) complains of Defendants APEX SYSTEMS, INC, AT&T, DIRECTV, MEHAK DELAWALLA, KIM CHU, JOHN GOULDING, OSCAR MONTOYA, IAN HAFKENSCHIEL and DANIEL SALT (    Defendants    ) and alleges as follows:

Page 1

CV-126 (09/09)                  PLEADING PAGE FOR A COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NATURE OF THE CAUSE

1. In this civil action, filed by Plaintiff Russell J. Terry against the Defendants, the aim is to secure damages and equitable relief stemming from a series of events characterized by fraudulent misrepresentation, stalking, and harassment. The Plaintiff, who had previously faced retaliation after reporting law enforcement misconduct, including harassment of his family, interference with work and school, found himself subjected to a coordinated campaign of harassment by the Defendants. They manipulated him into believing he was being offered a job, only to reveal their true intention to harass him and his parents, resulting in severe emotional distress and employment-related challenges.  These incidents as well as others were reported to the Office of Inspector General (OIG), who referred them to internal affairs at the FBI, the FBI Inspection Division.

PARTIES

2. Plaintiff: Russell J. Terry

 Defendants:

3. Apex Systems, Inc. is a corporation engaged in the business of recruitment and job placement with headquarters in Virginia.

4.  Mehak Delawalla, at the time of the incident, was a Recruiter at Apex Systems in Los Angeles, California.

5.  Kim Chu, at the time of the incident, was an Account Manager at Apex Systems in California.

6.   AT&T, Inc. (AT&T) is a multinational telecommunications conglomerate with a prominent presence in the telecommunications and entertainment industries. AT&T offers a wide range of services, including wireless communication, internet, and television broadcasting.

7. DirecTV a subsidiary of AT&T, operates as a leading satellite television provider, delivering a variety of programming to subscribers across the country.

8. Oscar Montoya, at the time of the incident, was the Senior Principal Software Engineer / Architect / Team Lead at AT&T / DirecTV.

9. Ian Hafkenschiel, at the time of the incident, was a Senior React Native Developer for DirecTV.

Page 2

10. Daniel Salt, who goes by the name of Daniel Morales, at the time of the incident, was a Software Engineer at AT&T.

JURISDICTION

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. Personal jurisdiction over the defendants is proper in this district as they conduct business within this jurisdiction and have registered agents for service of process in this state.

13. Diversity Jurisdiction, pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over the present matter due to the existence of diversity of citizenship between the plaintiff and the defendants. The plaintiff is a citizen of the United States and is residing in Brazil as a permanent resident. The defendants Apex Systems and AT&T / DirecTV have operations in Los Angeles, California. Defendants Mehak Delawalla, Kim Chu, Oscar Montoya, Ian Hafkenschiel, and John Goulding are citizens of California and defendant Daniel Salt is a citizen of Florida.

14. The amount in controversy exceeds $75,000, exclusive of interest and costs.

15. Personal jurisdiction over the defendants is proper in this district as they conduct substantial business activities within this jurisdiction. Specifically, the defendants operate and conduct business activities in Los Angeles, California and have registered agents for service of process within this state.

VENUE

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims alleged in this complaint occurred within this district. Additionally, a defendant resides in this district.

Page 3

STATEMENT OF FACTS

Report of Law Enforcement Misconduct and Subsequent Actions:

17. The Plaintiff reported law enforcement misconduct, leading to a pattern of retaliation targeted at him, his family and his employment.

18. The Office of Inspection General (OIG) at the Department of Justice referred the Plaintiff's complaint to the FBI's Inspection Division in June 2022. While the FBI Inspection Division took action, they couldn't disclose specific details due to policy.

Validation of the Complaint:

19. Both the OIG and FBI Inspection Division showing interest in the Plaintiff's complaints shows the matters are being taken seriously.

Acts of Retaliation reported in the Complaint:

20. As a result of the Plaintiff submitting complaints of law enforcement misconduct, between 2020 to 2022, the Plaintiff experienced distressing incidents, including threats, stalking, interference with work and school, and harassment of his family.

21. The Plaintiff observed his family's fear, frustration, and distress during Zoom calls following his reports of misconduct, prompting him to refrain from contacting his family to prevent further harassment, and heightening his anxiety pertaining to communication with his family, especially with his mother who was suffering from health issues due to having a brain tumor removed.

22. December 20, 2020, the plaintiff was harassed as a result of submitting law enforcement misconduct and there was an attempt to hit him with a vehicle.

23. In February 2021 the DOJ Civil Rights Division began reviewing the Plaintiff's allegations.

24. In August 2021, before testifying about law enforcement retaliation in a criminal process, the Plaintiff unexpectedly lost his software developer job.

Page 4

Apex Systems and AT&T

25. On September 15, 2021, without applying for a position with Apex Systems, Mehak Delawalla, a recruiter from Apex Systems contacted the Plaintiff, with a remote opportunity at AT&T/ DirecTV that closely aligned with the Plaintiff's qualifications.

26. Prior to an interview with AT&T, the Plaintiff completed a take-home assignment to prove he had the required skills and was sent an email that prepared him for what to expect at the interview.

27. The Plaintiff was interviewed by AT&T / DirecTV employees Oscar Montoya, Ian Hafkenschiel, Daniel Salt, and Gagandeep Brar. The interview lasted about an hour and a half.

28. To the Plaintiff's surprise, Oscar changed the skills required for the job, mentioning the preference for developers with knowledge of other programming languages. Leaving the Plaintiff confused as to why he was interviewed for the position.

29. After the interview, the Plaintiff informed Mehak that Oscar was looking for a candidate with knowledge of other programming languages and asked her to inform him of any jobs that matched his skill set.

30. Mehak convinced the Plaintiff that Oscar liked him and wanted to hire him if he showed he could apply other programming languages to the take-home assignment.

31. The Plaintiff diligently updated the take-home assignment, as he completed it, Oscar continued to add more requirements to it. The Plaintiff completed the take-home assignment four times with updated requests from Oscar.

32. On September 30, 2021, Mehak informed the Plaintiff he was going to get a job offer and requested his social security number and address as a formality to include on the contract. The Plaintiff provided his parents address.

33. Mehak emailed the Plaintiff an offer letter and Confidentiality and Invention Agreement. She informed him the contract was being launched and to let her know when he received it.

Page 5

**PLEADING PAGE FOR A COMPLAINT**

34. On October 1, 2021, Mehak informed the Plaintiff that although the position was remote, he would have to reside within the United States to be contracted.

35. The Plaintiff never received a contract and did not sign and return the paperwork.

36. On October 11, 2021, Mehak informed the Plaintiff that AT&T / DirecTV mistakenly shipped a laptop to the Arizona address, for the job position, even though she told them to hold off on the shipment.

37. Mehak forwarded the Plaintiff a Fed Ex tracking number of the package sent to his parent's home. The Plaintiff found it strange AT&T would ship a laptop without notice, and not require a signature. He told Mehak to have the shipping company pick up the laptop where they left it.

38. Mehak started exerting pressure on the Plaintiff to contact his parents. The Plaintiff then realized the entire interview process and job offer were not genuine and were linked to previous acts of retaliation aimed at harassing him, his family, and disrupting his employment.

39. Mehak and Kim Chu, and John Goulding bombarded the Plaintiff with calls and messages, urging him to get in contact with someone at his parent's home as if it were an emergency. They played helpless and pretended to be unable to have a shipping company retrieve the package.

40. The Plaintiff was forced to help them, because in realizing he was deceived during the interview, he feared his parents could be subject to harassment until the laptop was returned. Due to the fact they were pressuring him to contact his parents, he understood that was their goal, which would lead to his parents getting harassed. Therefore, he provided Kim Chu his mother's phone number and email address because they claimed they had to email her a shipping label.

41. Kim Chu alleged she had difficultly communicating with the Plaintiff's mother and that she had opened the package and was confused. They continued to pressure the Plaintiff to contact his mother. Finally, they sent a shipping label to have the package returned to John Goulding.

42. This led to severe emotional distress as the Plaintiff realized reputable companies spent almost a month misleading him to believe he was applying for a legitimate job, while their true intentions were to create a scenario of emotional distress with his parents and job search.

page 6

Expectations of Professionalism:

43. Apex Systems and AT&T are reputable companies, and they are generally expected to maintain high standards of professionalism and ethics in their recruitment processes.

Possibility that the job offer and laptop shipment were fraudulent:

44. Upon closer examination, the offer letter does not appear to be authentic. It lacks detail, was sent as a Word document susceptible to modification, and contained a punctuation error.

45. The Confidentiality and Invention Agreement seems unusual as it gives the appearance that the Plaintiff was logged into the Apex System platform. Apex Systems has an online platform for recruits, which the Plaintiff was not invited to join.

Lack of Paperwork and Signature Requirement:

46. It is highly implausible that AT&T would send a laptop for a software developer position to a candidate without requiring any paperwork or a signature for delivery.

47. Laptops used in software development contain proprietary software and sensitive information. AT&T, as a responsible employer, would likely have established internal processes requiring proper documentation and authorization to release such equipment.

Data Consent Policies:

48. The Plaintiff's address was not likely accessible to AT&T due to the data consent policies displayed on Apex's website.

49. These policies emphasize that the collection and processing of an individual's information are based on their consent. Since the Plaintiff did not complete any paperwork, AT&T should not have had access to the Plaintiff's address without proper consent or authorization.

Page  7

Questionable Employees:

50. Oscar Montoya was supposedly the lead developer with AT&T/ DirecTV, however when the Plaintiff contacted AT&T to verify his employment with the company, he was informed they did not have an Oscar Montoya, but did have an employee named Ian Hafkenschiel who was contracted through Apex Systems. The Plaintiff was unable to identify John Goulding as an AT&T employee, however in doing a background search, the phone number he called from linked to his name.

Allegations of Fraud and Misrepresentation:

51. The overall scenario raises suspicions of fraud and misrepresentation, suggesting an underline intent to cause emotional distress to the Plaintiff and his family, which was an ongoing pattern from 2019 through 2022.

Emphasizing the Impact on the Plaintiff:

52. The Plaintiff's dedication to the interview process, followed by the revelation of fraudulent actions, caused profound emotional distress and anxiety in seeking employment and contacting his parents.

53. The Plaintiff endured humiliation and emotional pain, particularly concerning the harassment of his elderly mother.

54. The ongoing distress left a lasting impact on the Plaintiff's emotional and psychological well-being.

CAUSES OF ACTION

COUNT I: FRAUD AND MISREPRSENTATION

55. The Plaintiff incorporates by reference each of the allegations in all prior paragraphs in this complaint.

56. Pursuant to California Civil Code Section 1710(1), which defines actual fraud, the Plaintiff alleges that the Defendants engaged in acts that constitute actual fraud within the meaning of this statute.

Page 8

False and misleading acts by the Defendants:

57. Defendant Apex Systems, a reputable company, misled the Plaintiff through its recruiter, Mehak, by using emails and phone calls to represent that he was a strong candidate for a remote React Native Developer position with AT&T/DirecTV, based on his experience.

58. Defendants AT&T and DirecTV, through their employees Oscar Montoya, Ian Hafkenschiel, and Daniel Salt, further misled the Plaintiff by conducting an interview that lasted well over an hour, giving him the impression that he was genuinely being considered for the position. However, at the end of the interview, Oscar Montoya informed him that they were looking for a candidate with proficiency in other coding languages.

59. Defendant Apex Systems, through its recruiter Mehak, continued the deception by falsely leading the Plaintiff to believe, in a series of emails and phone calls, that if he completed the requested updates to the take-home assignment, he would be considered for the position with AT&T/DirecTV.

60. Defendant Apex Systems, through its recruiter Mehak, further misled the Plaintiff by falsely representing that he was offered the job and that a contract would be sent to him once he provided his social security number and address. She also emailed the Plaintiff an offer letter and a Confidentiality and Invention Agreement that are believed to be fraudulent..

61. The Confidentiality and Invention Agreement appeared as if the Plaintiff was logged into Apex System's client platform. However, the Plaintiff was never invited to create an account, and the Plaintiff's social security number also appeared on the contract.

62. Defendant Apex Systems, through recruiters Mehak and Kim Chu, and AT&T, through employee John Goulding, deceived the Plaintiff by claiming that AT&T had accidentally sent a company laptop to his parent's home for the job position and put pressure on him to contact his parents.

63. The Plaintiff had not signed any paperwork and did not receive a contract for the job position; therefore, Defendant John Goulding would not have received legitimate paperwork to ship the laptop.

Page 9

64. Defendant Apex Systems, through its Account Manager, Kim Chu, based on information and belief, deceived the Plaintiff to believe she had spoken to his mother and she had opened the package and was confused.

65.  Malicious Intent: The Defendants intentionally manipulated the Plaintiff throughout the interview process by frequently altering the required skills for the position. They systematically engaged him mentally and emotionally, leading him to believe that he was on the brink of securing the job. Once the Plaintiff was fully invested and optimistic about the job offer, the Defendants deceitfully requested his social security number and address, falsely representing it as a mere formality for paperwork. In reality, this request was part of their scheme to create a situation causing emotional distress and concern for the safety of his parents.

66. Justifiable Reliance: The credibility of the situation was bolstered by the active involvement of four AT&T employees who participated in an interview during business hours, in which they all prepared for the interview and asked the Plaintiff questions. As well as constant communication with Apex recruiter Mehak. These actions were orchestrated to induce the Plaintiff to rely on their statements and behaviors.

67. Defendant Mehak also emailed the Plaintiff a Federal Express Tracking number to show a package had been shipped from AT&T / DirecTV to his parent's home.

 68. Plaintiff's Reliance on False Representations: The Plaintiff reasonably relied on the false representations made by Defendants and, in good faith, prepared for interviews, revised assignments, provided his social security number and parents' address, and believed he would receive a job contract.  He also believed they shipped a laptop to his parent's home; therefore, he provided his mother's phone number and email address.

69. Damages: As a direct result of Defendants' fraudulent actions, as defined by California Civil Code Section 1710(1), the Plaintiff suffered severe emotional distress, including anxiety, depression, and a profound sense of hopelessness in pursuing gainful employment. These cumulative harms have had a profound and lasting impact on the Plaintiff's emotional and psychological well-being, as well as their ability to seek and maintain employment..

Page 10

Count II: Common Law Intentional Infliction of Emotional Distress

70. The Plaintiff incorporates by reference each of the allegations in all prior paragraphs in this complaint.

71. The defendants, including Apex Systems and employees Mehak Delawalla and Kim Chu, as well as AT&T/DirecTV and their employees Oscar Montoya, Ian Hafkenschiel, Daniel Salt, and John Goulding, engaged in a prolonged and orchestrated campaign that showed reckless disregard for the Plaintiff's emotional well-being.

72. Over the course of nearly a month, during business hours, the defendants intentionally excited the Plaintiff's hopes of securing a job, only to cruelly demoralize him when he discovered the entire process was a means to harass him and his family.

73. These reputable companies willfully dedicated company resources and employed seven individuals to participate in this campaign of harassment, a shocking and extreme abuse of their positions and resources.

74. The emotional distress inflicted upon the Plaintiff was severe and profound. It encompassed suffering, anguish, fright, nervousness, grief, anxiety, worry, shock, humiliation, and shame. This severe emotional distress was not mild or brief; it was substantial and long-lasting. It continues to affect him to the extent that he still remains in fear of contacting his mother until the truth is uncovered.

75.  The defendants' deliberate targeting of the Plaintiff and his elderly parents, along with the calculated and malicious nature of their actions, resulted in severe emotional harm far beyond what any reasonable person should endure.

76. The Plaintiff's fear of further harassment significantly impacted his mental and emotional well-being, leading to wage losses and a reluctance to seek gainful employment due to the traumatic experience inflicted upon him and his family.

77. Furthermore, the Plaintiff continues to refrain from contacting his mother, fearing that any communication may lead to further harassment, demonstrating the ongoing and lasting psychological impact of the defendants' actions.

Page 11

Count III: Stalking

78. The Plaintiff incorporates by reference each of the allegations in all prior paragraphs in this complaint.

79. Pattern of Conduct with Intent to Follow, Alarm, and Harass: Defendants, employees of Apex Systems and AT&T / DirecTV, orchestrated a disturbing pattern of behavior with the deliberate intent to distress and harass the Plaintiff, in violation of California Civil Code Section 1708.7.

80. Acting through its representative Mehak, Apex Systems initiated contact with the Plaintiff under the guise of a genuine employment opportunity tailored to his qualifications.

81. Defendants initially provided insights into the skills required for the position, only to change them during the interview.

82. Defendants persisted in coercing the Plaintiff to invest additional time and effort into securing the job, fully engaging him and leading him to believe he was a competitive candidate.

83. The Plaintiff was notified of geographical requirements and never received an employment contract; therefore, he stopped engaging in communications with Apex Systems.

84. When Mehak informed the Plaintiff that AT&T had shipped a laptop to his parent's home he was forced to engage in communication with them for fear of harassing his parents.

85. Defendants then claimed an inability to have a shipping company retrieve the laptop, they pressured him to contact his mother.

86. The Plaintiff was then forced to give Kim Chu his mother's contact information, because he was terrified, they were trying to get him to contact his mother, which would lead to harassment.

87. Kim Chu then claimed not to be able to communicate with his mother and pressured the Plaintiff to contact her.

88. The combined circumstances show a sustained effort to follow, harass, and alarm the Plaintiff, from the changing of job requirements to the updates of the take-home assignment, the fraudulent Apex paperwork to shipping the laptop and pretending to be helpless in retrieving it or communicating with the Plaintiff's mother.

Page 12

89. Instilling Credible Threat and Fear for Safety: Due to recent events of harassment directed at the Plaintiff and his family, including an attempt to run the Plaintiff over and a drug-induced robbery, the Defendants' actions created a credible threat, evoking genuine fear for the safety of the Plaintiff's parents if he did not respond.

90. Substantial Emotional Distress and Consequent Anxiety:  The Plaintiff suffered substantial emotional distress from being maliciously set up by highly reputable companies that applied their company resources over the course of almost a month, resulting in heightened anxiety and depression especially relating to his parents and ability to secure employment.

91. Plaintiff's communication to stop harassment and Fear of Retaliation: The Plaintiff made numerous complaints to the FBI and DOJ prior to interaction with Apex Systems, clearly aimed to halt a pattern of harassment directed towards him and his family.

92. After the interview with AT&T, the Plaintiff explicitly informed Mehak he would seek job opportunities within his skill set. However, Mehak and Oscar persisted in capturing his interests by leading him to believe he was close securing the position.

93. After the Defendants involved his parents, it became obvious these were continued acts of retaliation that the Plaintiff previously reported.  Considering the ongoing harassment and his vulnerable position, the Plaintiff was forced to communicate directly with the Defendants due to a legitimate fear of escalating retaliation.

94. In summary, the Defendants orchestrated a calculated and sustained campaign to manipulate, distress, and harass the Plaintiff, impacting his emotional well-being, career prospects, and family relationships.

Count IV: Vicarious Liability under California's Doctrine of Respondeat Superior

95. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

Employment Relationship and Scope of Employment:

96.   AT&T and Apex Systems employed the individuals involved in the Plaintiff's case.

Page 13

97. Mehak Delawalla, an agent/employee of Apex Systems, initiated contact with the Plaintiff regarding a remote job opportunity at AT&T, clearly acting within her employment scope. During business hours, on behalf of Apex Systems, she conducted official communications. This included arranging the interview, updating the Plaintiff on take-home assignments, sending the offer letter, and the Confidentiality and Invention Agreement on behalf of Apex Systems.

98. Kim Chu, an Account Manager at Apex Systems assigned to AT&T, also engaged in communication within the scope of her employment utilizing Apex System email.

99. AT&T / DirecTV employees and Apex Systems contractors, including Oscar Montoya, Ian Hafkenschiel, and Daniel Salt, conducted interviews and made representations while acting in their roles as employees and contractors. These interviews occurred during business hours, utilizing AT&T conference link, and followed a clear employment framework.  Oscar Montoya continuously updated the Plaintiff    s take home assignment.

100. AT&T / DirecTV employee John Goulding shipped a company laptop from AT&T / DirecTV to the Plaintiff's parent's home to be used for employment purposes.  He received communications to ship the laptop and was working within the scope of his employment.  He also pressured the Plaintiff through messages.

101. Harm or Injury:  The Plaintiff endured severe emotional distress, humiliation, and lasting psychological trauma that has also resulted in economic damages of lost wages and reduced earning capacity.

102. This distress stemmed from the Defendants' actions; he came to realize employees of reputable companies had manipulated him over nearly a month. The defendants' deliberate strategy of inducing excitement for the job opportunity, only to deliver a sudden emotional shock aimed at demoralizing him with the threat of harassing his elderly parents has taken a toll on his psychological well-being. Furthermore, their actions resulted in tangible losses of wages and future earnings, as the plaintiff's demoralization and fear of potential harassment have deterred him from seeking gainful employment.

Page 14

103. Causation: The Plaintiff's emotional distress, humiliation, and lasting psychological trauma directly resulted from willful and negligent actions and representations made by the Defendants' employees in the course of their employment.

104. Employees of the Defendants, representing highly reputable companies and acting within the scope of their employment, willfully and negligently manipulated the Plaintiff. They led him to believe in the legitimacy of the job opportunity, entangled him in a fraudulent interview process, presented a job offer, and ultimately created an environment of intense emotional distress.

105. Precedence of Vicarious Liability under California's Doctrine of Respondeat Superior includes; "It is also settled that an employer's vicarious liability may extend to willful and malicious torts of an employee as well as negligence. (Mary M., supra, 54 Cal.3d at p. 209; John R., supra, 48 Cal.3d at p. 447.) Finally, an employee's tortious act may be within the scope of employment even if it contravenes an express company rule and confers no benefit to the employer. (Mary M., supra, 54 Cal.3d at p. 209; Perez, supra, 41 Cal.3d at pp. 969-970.)

106. In summary, AT&T, DirecTV, and Apex Systems are vicariously liable under California's Doctrine of Respondeat Superior due to the actions and representations of their employees made within the scope of their employment. These actions resulted in harm, emotional distress, humiliation, lasting psychological trauma, lost wages, lower future earning potential, and suffering experienced by the Plaintiff.

Page 15

## PRAYER FOR RELIEF

107. WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

108. Compensatory damages, including economic damages of $500,000.

109. Punitive damages of $4,000,000.

110. Treble damages as provided by California Civil Code Section 3345.

111. Reasonable costs and attorneys' fees.

112. Prejudgment interest as allowed by law.

113. Postjudgment interest as allowed by law.

114. Any Other Appropriate Relief:  Plaintiff reserves the right to request any other appropriate relief as deemed necessary by the Court to fully redress the injuries suffered.

## JURY DEMAND

115. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 2, 2023

/s/ Russell Terry
_____

Russell J Terry

Page 16