1  Name: Russell J Terry

2  Address: 1717 N Street NW STE 1

3  Washington, DC 20036

4  Phone number: 720-603-1872

5  Plaintiff in Pro Per



FILED
CLERK, U.S. DISTRICT COURT

NOV 28 2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ rsm _____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Russell J Terry,<br><br>        Plaintiff,<br><br>   vs.<br><br>Apex Systems, LLC, AT&T, DirecTV, LLC, Mehak Delawalla, Kim Chu, John Goulding, Oscar Montoya, Ian Hafkenschiel, Daniel Salt<br><br>        Defendants. | Case No.: CV23-7707-FMO(JCx)<br>**THIRD AMENDED COMPLIANT** |

## THIRD AMENDED COMPLIANT

Plaintiff RUSSELL J TERRY ("Plaintiff") complains of Defendants APEX SYSTEMS, LLC, AT&T, DIRECTV, LLC, MEHAK DELAWALLA, KIM CHU, JOHN GOULDING, OSCAR MONTOYA, IAN HAFKENSCHIEL, DANIEL SALT ("Defendants") and alleges as follows:

Insert Title of Pleading

## Nature of the Cause

1. In this civil action, filed by Plaintiff Russell J. Terry against the Defendants, the aim is to secure damages and equitable relief stemming from a series of events characterized by fraudulent misrepresentation, stalking, and harassment. The Plaintiff had been facing retaliation due to submitting reports of law enforcement misconduct, including threats, acts of violence, harassment of his family as well as interference with work and school. The Plaintiff had stopped communicating with his family because he noticed them being harassed after he submitted tips to the FBI of FBI misconduct. Since then, he was sent fraudulent emails attempting to get him to contact his parents. The week after he testified of FBI misconduct the Defendants subjected him to a coordinated campaign of intentional misrepresentation, creating a sudden alarming situation that attempted to get him to contact his parents. Central to this lawsuit is the claim that the Defendants engaged in a campaign of intentional misrepresentation. While this specific action does not purport to prove the broader pattern of retaliation, it has resulted in severe emotional distress due to its resemblance to past experiences of retaliation. These incidents as well as others were reported to the Office of Inspector General (OIG), who referred them to internal affairs at the FBI, the FBI Inspection Division.

## PARTIES

2. Plaintiff: Russell J. Terry

   Defendants:

3. Apex Systems, LLC (Apex) is engaged in the business of recruitment and job placement with headquarters in Virginia and maintains a registered agent in California.

4.  Mehak Delawalla, at the time of the incident, was a Recruiter at Apex Systems in Los Angeles, California.

5.  Kim Chu, at the time of the incident, was an Account Manager at Apex Systems in California.

6.  AT&T is a multinational telecommunications conglomerate with a prominent presence in the telecommunications and entertainment industries. AT&T offers a wide range of services, including wireless communication, internet, and television broadcasting.

7.  DirecTV, LLC, (DirecTV) a subsidiary of AT&T, operates as a leading satellite television provider, delivering a variety of programming to subscribers across the country.

8.  Oscar Montoya, at the time of the incident, was the Senior Principal Software Engineer / Architect / Team Lead at AT&T / DirecTV.

9.  Ian Hafkenschiel, at the time of the incident, was a Senior React Native Developer for DirecTV.

10. Daniel Salt, who goes by the name of Daniel Morales, at the time of the incident, was a Software Engineer at AT&T.

11. John Goulding informed the Plaintiff he was a DirecTV employee.

## Jurisdiction

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Personal jurisdiction over the defendants is proper in this district as they conduct substantial business activities within this jurisdiction. Specifically, the defendants operate and conduct business activities in Los Angeles,

California and have registered agents for service of process within this state. Despite Daniel Salt residing in Florida, this court has personal jurisdiction over him under the 14th Amendment S1.7.1.4 Minimum Contact Requirements for Personal Jurisdiction due to his employment at the time of the incident at AT&T and DirecTV 2240 E. Imperial Hwy, El Segundo, CA 90245, and its relevance to the claims as he had an effect on the California companies that he represented.

14. Diversity Jurisdiction, pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over the present matter due to the existence of diversity of citizenship between the plaintiff and the defendants. The plaintiff is a citizen of the United States and is residing in Brazil as a permanent resident. The defendants Apex Systems and AT&T / DirecTV have operations in Los Angeles, California. Defendants Mehak Delawalla, Kim Chu, Oscar Montoya, Ian Hafkenschiel, and John Goulding are citizens of California and defendant Daniel Salt is a citizen of Florida.

15. The amount in controversy exceeds $75,000, exclusive of interest and costs.

## Venue

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims alleged in this complaint occurred within this district. Additionally, a defendant resides in this district.

## Statement of Facts

### Report of Law Enforcement Misconduct and Subsequent Actions:

17. The Plaintiff reported law enforcement misconduct, leading to a pattern of retaliation targeted at him, his family and his employment.

18. The Office of Inspection General (OIG) at the Department of Justice referred the Plaintiff's complaint to the FBI's Inspection Division in June 2022, (Exhibit A). While the FBI Inspection Division took action, they couldn't disclose specific details due to policy.

19. The Plaintiff reported an administrative claim of related incidents involving fraud, threats, violence and stalking that is currently being reviewed.

**Validation of the Complaint**:

20. Both the OIG and FBI Inspection Division showing interest in the Plaintiff's complaints shows the matters are credible and being taken seriously.

**Acts of Retaliation reported in the Complaints:**

21. As a result of the Plaintiff submitting complaints of law enforcement misconduct, between 2020 to 2022, the Plaintiff experienced distressing incidents, including threats, stalking, interference with work and school, and harassment of his family.

22. The Plaintiff observed his family's fear, frustration, and distress during Zoom calls following his reports of misconduct, prompting him to refrain from contacting his family to prevent further harassment, and heightening his anxiety pertaining to communication with his family, especially with his mother who was suffering from health issues due to having a brain tumor removed.

23. December 20, 2020, the Plaintiff was harassed as a result of submitting law enforcement misconduct complaints and gathering additional information to include in his complaints. He was followed and there was an attempt to hit him with a vehicle.

24. In February 2021, the DOJ Civil Rights Division emailed the Plaintiff that they were going to contact him to get more details of the situation.

25. The Plaintiff submitted another complaint to DOJ on May 12, 2021.

26. On May 20, 2021, the Plaintiff was drugged and robbed in his apartment, only the Plaintiff's electronic devices were stolen, and an email erased. The Plaintiff's money and other items of value were not targeted. Based on belief the robbery was retaliation for submitting the complaint to the DOJ and to destroy evidence.

27. In August 2021, before testifying about the robbery the Plaintiff unexpectedly lost his software developer job.

28. On September 8, 2021, the Plaintiff testified of harassment by law enforcement agents that originated in Los Angeles, California at the criminal proceedings of the robbery.

29. Prior to the Office of Inspector General (OIG) and Internal Affairs at the FBI getting involved in 2022, there was a clear pattern of retaliation after the Plaintiff reported law enforcement misconduct.

30. In August 2020 the Plaintiff informed his parents that he would stop contacting them to prevent them from being harassed. Immediately thereafter the Plaintiff began receiving fraudulent emails of false alarms attempting to get him to contact his parents.

31. Below details a series of intentional misrepresentations committed by the Defendants, ultimately creating a scenario of emotional distress that attempts to coerce the Plaintiff to contact his parents.

32. The Plaintiff views these actions by the Defendants as resembling past retaliatory tactics he experienced, particularly in their method of creating false alarms to induce contact with his family.

**Apex and AT&T / DirecTV**

33. On September 15, 2021, Defendant Mehak Delawalla, who is a recruiter at Apex, reached out to the Plaintiff stating that she had come across the Plaintiff's resume and believed he would be a fit for the remote React Native developer position at AT&T, as evidenced in (Exhibit B).  However, the Plaintiff had never applied for a position with Apex Systems, LLC.

34. The job description specifically mentioned proficiency in JavaScript programming language and knowledge of You.I.  The Plaintiff had recently finished a project using You.I, therefore he thought he would be a good fit for the position.

35. Prior to the interview, the Plaintiff completed a take-home test to prove he had the required skills to perform the job.  The take-home test shown in exhibit (Exhibit C).

36. The Plaintiff completed the test in React Native and decided not to complete the bonus task which required coding in programming languages, Kotlin or Objective C, programming languages unfamiliar to the Plaintiff and not required for the position.

37. Mehak conveyed AT&T/DirecTV interest in interviewing the Plaintiff, she scheduled the interview and subsequently emailed interview details, as seen in (Exhibit D). Including a link to the interview at https://attcorp.webex.com/meet/om951c, the interviewers and their LinkedIn profiles:

- Oscar Montoyahttps://www.linkedin.com/in/oscarmontoya/
- Ian https://www.linkedin.com/in/ihafkenschiel/
- Daniel Morales https://www.linkedin.com/in/daniel-morales-s96/
- Gagandeep Brar

38. The email also mentioned what to expect during the interview:

- React native questions
- React/javascript (redux)
- Going over the code you sent over
- Will ask about your video experience

39. Additionally, Mehak provided the Plaintiff with Apex System's Career Resource information to help prepare for the interview, as shown in (Exhibit E). The Plaintiff was never invited to create an account on the Apex Systems client portal.

40. The Plaintiff logged into the interview link about fifteen minutes prior to its scheduled start time.  When he entered, a man glared at him with a deceitful grin and did not say anything.  The Plaintiff, initially under the impression that he logged in too early began disconnecting, as he was disconnecting someone made a comment, that the Plaintiff arrived early but they could start the interview.

41. Upon rejoining the interview link, the man with the deceitful grin was not part of the interview.

42. The interviewers were AT&T / DirecTV employees Oscar Montoya, Ian Hafkenschiel, Daniel Salt, and Gagandeep Brar. The interview lasted about an hour and a half.

43. To the Plaintiff's surprise, Oscar changed the skills required for the job, mentioning the preference for developers with knowledge of other programming languages. Leaving the Plaintiff confused as to why he was interviewed for the position.

44. After the interview, shown in (Exhibit F), the Plaintiff informed Mehak that Oscar was looking for a candidate with knowledge of other programming languages and asked her to inform him of any jobs that matched his skill set.

45. By phone, Mehak convinced the Plaintiff that Oscar liked him and wanted to hire him if he showed he could apply other programming languages to the take-home test.

46. On September 22, the Plaintiff revised the take-home test as Oscar requested, incorporating Kotlin—a programming language not mentioned in the job description.

47. On September 23, also (Exhibit F), Mehak relayed that both Ian and Oscar were attempting to review the updated code. Then later that day, Mehak communicated that they had one more request for the take home test.

48. The updated take-home test was considerably more extensive than the original, displayed in (Exhibit G). The additions could be programmed in JavaScript and React.

49. Motivated by the prospect of landing the job, the Plaintiff diligently addressed the changes over the subsequent days, finalizing and submitting the assignment by September 27.

50. Unexpectedly, on September 28, (Exhibit I), Mehak introduced another modification: the creation of an iOS version of the app, a requirement neither in the job description nor in the updated take-home test requirements. iOS is a completely different programming language.

51. In response, the Plaintiff incorporated elements to make the app iOS compatible. However, he notified Mehak of his limitations in completing the task fully, as it necessitated a Mac computer, which he did not possess.

52. The next day, September 29, (Exhibit J), Mehak conveyed Oscar's dissatisfaction, indicating a desire for more sections of the code to utilize programming languages other than JavaScript, languages not included in the job description.

53. Determined to meet the evolving requirements, the Plaintiff conducted research to address Oscar's latest feedback, delivering the updated project by September 30.

54. On September 30, 2021, Mehak informed the Plaintiff he was going to get a job offer and requested his social security number and address as a formality to include on the contract. The Plaintiff provided his social security number by phone and parent's address in response to Mehak's email shown in (Exhibit K).

55. (Exhibit L), Mehak emailed the Plaintiff an offer letter, indicating, "offer is contingent upon your acceptance and signature of the Apex Systems Contract Employee Agreement (copy enclosed) and any other lawful requirements specified by AT&T/DirecTV, such as employment verification, security clearances, drug testing."

56. (Exhibit M), On October 1, 2021, Mehak emails the Plaintiff informing him that the contract and background check have been launched. She also informed him that although the position was remote, he would have to reside within the United States to fulfill the role.

57. On October 3, (Exhibit N) shows that Mehak emailed a "Confidentiality and Invention Agreement." The agreement seems to be a printout from the Apex System portal, where a user was logged in, and it displayed the message, "Welcome Russell Terry Terry." The top left corner of the document indicates that both sections of the logged-in user, namely "Profile" and "Important Documents," were completed. There is a box, that indicates, "Insert name of AT&T company that worker will be doing work for:" Which Mehak instructed the Plaintiff to write "DirecTV" in the designated box on the form, as indicated in the email (Exhibit N).

58. The bottom of the agreement contains the Plaintiff's social security number and his parent's address that was provided to Mehak. The last line in the agreement says, "I have read, understand and agree to abide by this Agreement".  The bottom of the printout shows buttons "Previous", "Next" and "Save".  Buttons that indicate if the user were logged into the portal, they could virtually confirm receipt of the document and review other documents.  The top left of the document shows that both the Profile and Important Documents sections were completed under the Plaintiff's name.

59. The Plaintiff did not sign and return the Offer letter or Confidentiality and Invention Agreement.

60. In Exhibit M, Mehak informs the Plaintiff that the contract and background report were launched.  However, since the Plaintiff was never given access to the portal, he would have never been able to receive a contract if one were sent.

61. On October 8, Mehak reached out to the Plaintiff by email (Exhibit O) and Skype shown in (Exhibit P), inquiring about a possible start date.  However, the Plaintiff did not respond.

62. On October 11, 2021, (Exhibit P) on Skype, Mehak informed the Plaintiff that DirecTV sent a laptop to the Arizona address, even though she had told them to hold off on sending it.  This marked the first time anything was mentioned about DirecTV supplying a laptop for the position.

63. In (Exhibit Q), Mehak provided the Fed Ex tracking number of the package that was shipped from Defendant John Goulding to the Plaintiff's parent's address.

64. On October 12th, the Plaintiff questions Mehak in (Exhibit Q) if AT&T would ship a laptop without requiring a signature.  Mehak, confirms that

they did.  The Plaintiff suggests having the shipping company pick up the laptop where they left it.

65. Mehak then began to pressure the Plaintiff to contact his parents or someone in the neighborhood.  She responds as if arranging for the shipping company to pick up the package was an inconvenience, saying, "Ok will take time to get that requested…"

66. That's when the Plaintiff realized that the entire interview process and job offer were interconnected with prior acts of retaliation aimed at harassing the Plaintiff, his family and disrupting his employment.  The Plaintiff was forced to help Mehak get the laptop shipped back, because he realized the interview process and job offer were fraudulent with the intent to harass him and his family.  Therefore, his parents' well-being and safety was at risk, as they could be subject to harassment until the laptop was returned.

67. Then the Plaintiff received messages from John Goulding at DirecTV, requesting a call ASAP, shown (Exhibit R).

68. Subsequently, Kim Chu from Apex Systems got involved, she identified herself as the Account Manager at Apex Systems for DirecTV. Emails exchanged between her and the Plaintiff are displayed in (Exhibit S).  Kim stated she needed to speak directly with the Plaintiff and requested clarification regarding the address to which the laptop was shipped.

69. Mehak claimed they would have to email a shipping label to have the laptop returned.  The Plaintiff understood he had been set up over the previous three weeks and Mehak Delawalla, John Goulding and Kim Chu were suddenly pressuring him to contact his parent directly, which he knew would result in law enforcement harassing his parents as they had done previously.

Therefore, he provided his mother's email address so Kim could email her directly and have the laptop returned.

70. (Exhibit S) Kim Chu replies to the email, attempting to get the Plaintiff to contact his mother directly by pretending to be confused, commenting, "Loujuana has the laptop I believe, but we need it shipped back. Please assist with that. Do you have a phone number? Is that address your residence?"

71. The Plaintiff, being pressured to assist them out of concern for his family's well-being and in fear of directly contacting his parents, decided to share his mother's phone number with Kim Chu. This was done to allow her to facilitate the return of the package without contacting them directly.

72. However, Kim continued to pressure the Plaintiff to contact his mother. She even went as far as commenting (Exhibit S), "Is this your neighbor? Can you please help contact them as well? She opened the package yesterday and seemed confused."

73. Kim then included in the email, "Mehak – have you tried reaching Loujuana?", letting the Plaintiff know they were both contacting and harassing his mother.

74. In response, the Plaintiff expressed frustration and anger, attempting to put an end to the harassment directed at his elderly mother. He pointed out that she is old and has health issues, and questioned what additional information Kim would need to email a shipping label.

75. Kim continued to attempt to get the Plaintiff to contact his mother, by pretending she could not communicate with the Plaintiff's mother, informing the Plaintiff that his mother needs to seal the package.

76. (Exhibit S) Mehak makes another attempt to get the Plaintiff to contact his mother, by asking what is the best window to schedule the pickup.

77. (Exhibit T and attachment Exhibit U), Mehak emails a UPS Shipping label to pickup the package and return it to John Goulding at AT&T, 2240 E. IMPERIAL HWY, EL SEGUNDO CA 90245.

78. **Fraud, Violations of Federal and State Hiring Policies**:

    The fact that the Plaintiff was never granted access to the Apex client portal for receiving, signing, and submitting the necessary documents required by federal and state laws for hiring employees strongly suggests that there was no intent to hire him. Otherwise, Apex, AT&T, and DirecTV would have potentially been in violation of federal and state hiring policies.

79. (Exhibit N) displays the "Confidentiality and Invention Agreement," showing the Plaintiff's name logged into the Apex Systems portal. It reveals that the "Profile" and "Important Documents" sections were completed. At the bottom of the page, the Plaintiff's social security number and address, provided to Mehak for inclusion in the contract, are visible. Buttons labeled "Previous," "Next," and "Save" at the bottom of the page indicate that a virtual signature and confirmation within the portal were intended to complete the required documents for the hiring process.

80. This evidence substantiates Mehak's involvement in creating a fraudulent profile for the Plaintiff on the Apex portal using his personal information and completing apparent documents required by law in the "Important Documents" section.

81. In an email sent on September 30 (Exhibit M), Mehak writes, "Let me know if you haven't gotten the contract or BG check!"  Since the Plaintiff did not have access to the portal, there was no way for him to receive the background check or contract, and if Apex conducted a background check, it was done without the Plaintiff's consent.

82. According to the Fair Credit Reporting Act (FCRA) for running background checks, an employer must make a clear and conspicuous written disclosure to an applicant or employee and obtain their prior written authorization before acquiring a consumer report.

83. Based off information and belief, the Federal and State required forms would have been available on the portal along with completing other required documents such as the I-9 form.

84. According to the Department of Homeland Security, U.S. Citizenship and Immigration Services. Employment Eligibility Verification requires all U.S. employers must properly complete Form I-9 for every individual they hire for employment in the United States.  The Plaintiff was never presented with an I-9 form and Apex did not request any documentation to complete the I-9.

85. Furthermore, the Offer letter in (Exhibit L) also appears to be fraudulent as it was sent as a Word document susceptible to modification, the last sentences of the first and second paragraphs have grammatical errors.

86. A video available at https://www.youtube.com/watch?v=cLtjanesY8s&t=9s demonstrates how Apex Systems utilizes the platform. Tiffany Woolwine, Training and Development Specialist at Apex Systems, informs that all new recruits and recruiters have their own login to the platform for training and compliance document completion.

87. Based on information and belief, Ian Hafkenschiel and Daniel Salt who were part of the development team and hired by Apex, had access to the portal and completed all required state and federal forms prior to being shipped a laptop.

**Unlikelihood of DirecTV sending a Company Laptop**:

88. Given that the Plaintiff did not complete any steps in the hiring process, nor did he receive a contract, it is reasonable to believe AT&T / DirecTV did not receive any documentation to bring the Plaintiff onboard and therefore did not order John Goulding to ship a company laptop for the React Native developer position.

89. The offer letter in Exhibit L explicitly states, "This offer is contingent upon your acceptance and signature of the Apex Systems Contract Employee Agreement (copy enclosed) and any other lawful requirements specified by AT&T/DirecTV, such as employment verification, security clearances, drug testing." None of these steps were completed.

90. Shipping a laptop to an employee or contractor typically necessitates signed paperwork, not only from the Plaintiff but also from various staff members within DirecTV. This includes a hiring manager, an administrator for downloading proprietary software, a project manager for software required for the position, as well as personnel from supply and shipping.

91. Therefore, it is believed that John Goulding never received any AT&T internal paperwork to ship the laptop, nor did he receive the address the Plaintiff provided to Mehak through normal business circumstances. Mehak Delawalla's claim in Exhibit P, stating that DirecTV sent a laptop despite Apex Systems instructing them to hold off, is deceptive.

92. This suggests that John Goulding and Kim Chu conspired with Mehak to deceive the Plaintiff regarding a valid shipment of a DirecTV company laptop.

**Intentional Misrepresentation since the Initial Contact:**

93. Ian Hafkenschiel and Daniel Salt's LinkedIn profiles (Exhibit V) reveal the technologies used in their project, including the JavaScript programming

language, along with the utilization of React and Angular frameworks, and video technologies such as DTV Everywhere, DTV Stream, and Tizan.

94. These project summaries in (Exhibit V) differ significantly from the skills that Mehak Delawalla emailed to the Plaintiff in (Exhibit B). Required skills in her email closely resembled the Plaintiff's resume, which led him to believe that Apex reached out to him based on his experience.

95. Apex, the professional recruiting company, should have been well acquainted with the skills required by their client, AT&T/DirecTV, given their prior recruitment of Ian and Daniel for the project.

96. It becomes apparent that intentional misrepresentation occurred right from the start, as exemplified by Mehak's email sending job requirements that aligned with the Plaintiff's resume rather than the qualifications necessary for the React Native position.

97. Furthermore, as the interview process progressed, Oscar Montoya and Mehak Delawalla unexpectedly demanded that the Plaintiff prove his proficiency in iOS coding languages Objective C and Kotlin. These languages were neither used in the project nor within the skillsets of Ian Hafkenschiel or Daniel Salt.

98. This stark contrast between actual technologies used in the project, the ones Mehak initially mentioned to the Plaintiff and the ones he was tested on underscores the lack of genuine intent to assess his qualifications and reveal a pattern of manipulation and deception during the interview process.

**Deception leading to Emotional Distress**:

99. For almost a month, employees of well-respected companies engaged in a lengthy deception that deeply distressed the Plaintiff. Initially, he believed he was genuinely pursuing an ideal job opportunity, earnestly striving to meet

their ever-shifting demands. However, the harsh reality later emerged that their true intent was to inflict emotional distress on the Plaintiff and his family. This intensified the Plaintiff's emotional distress as he had stopped contacting his family the previous year upon witnessing them being harassed immediately after he reported law enforcement misconduct.

100. Consequently, the Plaintiff has experienced overwhelming emotional distress and severe anxiety, impacting both his job search efforts and his ability to maintain contact with his parents.

101. This distressing situation is believed to have been arranged as retaliation for the Plaintiff's testimony about law enforcement misconduct on September 8th, 2021. As it shares similar characteristics targeting the Plaintiff, his family and pursuit of employment.

## CAUSES OF ACTION

### Count I: Fraud and Misrepresentation

102. The Plaintiff incorporates by reference each of the allegations in all prior paragraphs in this complaint.

103. This cause of action is centered on a pattern of deceptive conduct perpetrated by Defendants Mehak Delawalla, Kim Chu, Oscar Montoya, Ian Hafkenschiel, and Daniel Salt, involving a series of false representations and misleading actions intended to deceive the Plaintiff. Pursuant to California Civil Code Section 1710, which defines actual fraud. The intentional misrepresentations were made orally, in writing and by nonverbal conduct.

104. **Series of false and misleading acts and statements by the Defendants that they knew were false:**

105.     **Deceptive Job Opportunity**: Defendant Apex Systems, a services firm that hires temporary employees to provide services to its clients, thoroughly knows all the required skills and details of the job opportunities they present to potential employees.  However, recruiter Mehak Delewalla, with emails and phone calls, intentionally made false representations that the Plaintiff was a good fit for a remote React Native Developer position with AT&T / DirecTV, based on his experience.

106.      The job description, as shown in Exhibit B, mentions required skills including familiarity with You.I and Xcode. This was an intentional misrepresentation of the React Native Developer position. The technologies used in this project are showcased in Exhibits V on Daniel Salt and Ian Hafkenschiel's LinkedIn profiles.  The project that they worked did not involve You.I, and it was not an iOS project requiring Xcode. In fact, the job description emailed by Mehak does not mention many of the technologies the Defendants displayed on their LinkedIn profiles for this position including Angular, DTV Everywhere, DTV Stream, and Tizan.

107.     Defendant Apex and Mehak Delawalla, as professional recruiters, had the responsibility to be well-informed about the job requirements and to identify suitable candidates who could meet those requirements. They were already familiar with the job requirements because they had previously recruited at least two candidates, Defendants Ian and Daniel, for the same team.

108.     Mehak intentionally and knowingly misled the Plaintiff by sending a job description of the React Native developer position that reflected his resume, not the actual technologies used in the project according to

Defendants Ian and Daniel. This deceived the Plaintiff to believe he was a great fit for the position.

109.    The Plaintiff's decision to engage in the interview process was influenced by Mehak Delawalla's deliberate misrepresentation of the job requirements. Had Mehak initially informed the Plaintiff of iOS and Angular proficiency, the Plaintiff would not have responded to her initial email.

110.    This led to a deceptive interview process.

111.    **Deceitful Interview**: Defendants AT&T / DirecTV, through their employees Oscar Montoya, Ian Hafkenschiel, and Daniel Salt engaged in a deceitful interview that lasted well over an hour, creating a false impression that the Plaintiff was genuinely being considered for the position.

112.    During the interview, Oscar Montoya began to modify the job requirements to require proficiency in iOS coding languages such as Objective C and Kotlin. These requests are evident in the take-home tests, as shown in (Exhibits C and G), and in emails (Exhibit I), where Mehak requested the Plaintiff to rebuild the take-home test in iOS. Additionally, (Exhibit J) an email sent from Mehak, with comments from Oscar, requesting the Plaintiff to complete the take-home test in iOS.

113.    However, as demonstrated by (Exhibits V), neither iOS, Kotlin, nor Objective C were used in the project nor are they within Ian Hafkenschiel, and Daniel Salt's skillsets.

114.    Defendants Oscar Montoya, Ian Hafkenschiel, and Daniel Salt suppressed information as they knew they were not conducting a legitimate interview for the React Native developer position.

115.    The Plaintiff called AT&T regarding the fraud, the attendant said they did not have an Oscar Montoya that worked there, but they did have Ian

Hafkenschiel who was contracted through Apex Systems. Based off this phone call the Plaintiff believes Defendants intentionally misrepresented Oscar as being the lead developer of the project.

116.     They intended for the Plaintiff to believe he was participating in a real interview for the React Native Developer position, based on the duration and their participation in the interview. At the time, the Plaintiff believed he had participated in a genuine interview, therefore, he continued with the interview process.

117.     **Deceitful Requirements**: After the initial interview, from September 21 to the 30th, Defendants Mehak Delawalla and Oscar Montoya continued to manipulate and deceive the Plaintiff. They intentionally misrepresented that he would have to demonstrate his coding abilities in iOS, providing false encouragement that he was on the verge of securing the position.

118.     The Plaintiff, desperate for employment relied on these false statements by working hard to learn to code in iOS and by updating the take home assignment three additional times.

119.     The Defendants exploited their positions at reputable companies to take advantage of the Plaintiff's desperation for gainful employment by pushing him hard to apply new coding languages with no intention of offering him a position.

120.     **Deceived the Plaintiff to Provide Private Information:** Mehak Delawalla, Oscar Montoya, Ian Hafkenschiel, and Daniel Salt deceptively presented the Plaintiff with what appeared to be a legitimate interview process for the React Native Developer position.

121.     They intended the Plaintiff rely on their statements by updating the take-home test and giving him additional opportunities to prove his ability.

The Plaintiff stuck with the process because he relied on their statements and emails.

122.     Consequently, on September 30th, when Mehak Delawalla intentionally misrepresented that they would be offering the Plaintiff the React Native job and requested his personal information, he readily provided it, believing he had successfully passed the interview. Mehak Delawalla told the Plaintiff on the phone to provide an address just to put on the contract. He shared his social security number over the phone and disclosed his parent's address, as detailed in (Exhibit K).

123.     As a result of the Plaintiff's reliance on the interview process and Mehak's claim they would offer him a job, he provided Defendant Mehak Delawalla his private information.

124.     **Deceived Plaintiff he would receive a Contract:**  Defendant Mehak Delawalla intentionally deceived the Plaintiff to believe that he would receive a contract by providing his personal information. In the email titled 'Contract and BG check have been launched,' as presented in (Exhibit M), Defendant Mehak Delawalla stated, "Let me know if you haven't gotten the contract or background check."

125.     Mehak Delawalla had the deliberate intention of causing the Plaintiff to rely on the information she provided, even though she knew it would not be possible for him to receive a contract. She had fictitiously created and controlled an account under his name in the Apex portal, as evidenced in (Exhibit N). This manipulation was specifically designed to mislead the Plaintiff into believing he had been offered a job and that Apex was in the process of initiating paperwork to bring him onboard.  The Plaintiff was under the believe they were moving forward with the process.

126.    **Fraudulent Offer Letter**: Defendant Apex Systems, through its recruiter Mehak Delawalla, based on information and belief emailed the Plaintiff a fraudulent offer letter (Exhibit L).  She intentionally falsely represented that he was offered the position.

127.    Upon closer examination, the offer letter in question contains not only grammatical errors but also suspicious alterations. Specifically, in the conclusion of the second paragraph, it is evident that the text has been tampered with by the absence of the word 'and' and the omission of a period. Considering that it was not possible for the Plaintiff to receive a contract, along with the unprofessionalism displayed in the offer letter and the improper procedures throughout the entire hiring process, it is believed that Managing Director, Matthew Cheney did not offer the Plaintiff the React Native developer position with AT&T/DirecTV.

128.    Defendant Mehak Delawalla intended for the Plaintiff to believe he was offered a job. At the time, the Plaintiff was excited and did not recognize the errors in the offer letter, as well as the other false representations.

129.    **Fraudulent creation of Apex Account:** Mehak Delawalla emailed the Plaintiff a "Confidentiality and Invention Agreement" (Exhibit N), creating a false impression of a job offer and an ongoing hiring process.

130.    Exhibit N displays the "Confidentiality and Invention Agreement" with the Plaintiff's name logged into the Apex Systems portal. The "Profile" and "Important Documents" sections were completed, requiring electronic signatures for the Confidentiality and Invention Agreement and 'Appendix Y – Agreement Regarding Non-Employment Status with AT&T.' The Plaintiff's social security number and address, provided to Mehak, are

visible at the bottom. Buttons labeled "Previous," "Next," and "Save" indicate the intent to complete required documents for the hiring process within the portal.

131.     Mehak's Involvement: This evidence substantiates Mehak's involvement in creating a fraudulent profile for the Plaintiff on the Apex portal using his personal information and completing documents believed to be required by law in the "Important Documents" section.

132.     Deceptive Intent: The document was sent to the Plaintiff to deceive him into believing he had been offered a job, and that required hiring documents were being processed as mandated by law.

133.     Knowledge of Fraudulent Actions: Mehak Delawalla, as a professional recruiter, was well-aware that creating an account in the Plaintiff's name and completing the "Profile" and "Important Documents" sections is fraudulent. Such actions would put Apex in violation of federal and state employment laws, including the Fair Credit Reporting Act (FCRA) for background checks and Department of Homeland Security, U.S. Citizenship and Immigration Services regulations for employment eligibility verification.

134.     Background Check Disclosure: Mehak mentions in her email in Exhibit M that the background check was launched. According to the Fair Credit Reporting Act (FCRA) for background checks, an employer must make a clear and conspicuous written disclosure to an applicant or employee and obtain their prior written authorization before acquiring a consumer report, which the Plaintiff was never informed of or completed.

135.     Missing Required Forms: Based on information and belief, the Federal and State required forms, including the I-9, would have been

available on the portal along with completing other necessary documents, but the Plaintiff was not presented with an I-9 form, and Apex did not request any documentation to complete the I-9.

136.     Employment Eligibility Violation: According to the Department of Homeland Security, U.S. Citizenship and Immigration Services, all U.S. employers must complete Form I-9 for every individual they hire for employment in the United States. The Plaintiff was never provided with an I-9 form, indicating a violation of this requirement.

137.     Violation of Employment Laws: If Apex and Mehak Delawalla sent paperwork to AT&T confirming the Plaintiff's employment, they would be in serious violation of federal and state employment laws.

138.     Lack of Intent to Hire: These actions demonstrate that Defendants Mehak Delawalla and Apex had no intention of hiring the Plaintiff. He was never going to receive a contract, and the account created was to continue deceiving the Plaintiff about the onboarding process.  They intended for the Plaintiff to believe they were following federal and state hiring procedures by the law.

139.     At the time the Plaintiff believed they were legitimate documents for the hiring process.

140.     **Deception in shipping a DirecTV Laptop:**  Defendants Apex Systems, represented by Mehak Delawalla and Kim Chu, along with AT&T/DirecTV employee John Goulding, were involved in two intentional misrepresentations. They falsely claimed that John Goulding of AT&T/DirecTV had sent a company laptop to the Plaintiff's parent's home for the React Native developer position and created a false sense of urgency for its return once the package arrived at its destination.

141.    Mehak Delawalla actively participated in this intentional misrepresentation, both verbally through phone conversations and in writing, as evidenced in Exhibits P, Q, and R, and described in paragraphs 62 to 77 of the documentation.

142.    John Goulding was also part of this intentional misrepresentation by shipping the package from the AT&T/DirecTV facilities via Federal Express and prepaying for the return of the package to himself at the same address, as shown in Exhibit U. He further supported these false representations through phone communications insinuating urgency, as demonstrated in Exhibit R.

143.    Kim Chu, acting as the Account Manager of AT&T/DirecTV for Apex Systems, LLC, reiterated the intentional misrepresentation through emails, as displayed in Exhibit S and described in paragraphs 62 to 77.

144.    The proof that Mehak Delawalla, John Goulding, and Kim Chu knew these representations were false, lies in the fact that no hiring documents were completed as required by federal and state laws, a fictitious account was created in the Plaintiff's name on the Apex portal, and none of the hiring contingencies outlined in the offer letter (Exhibit L), including a drug test, employment verification, or signed agreements, were executed. Therefore, it is reasonable to assume that Apex did not forward any hiring documentation to AT&T/DirecTV regarding the Plaintiff, and AT&T/DirecTV did not prepare a laptop for the Plaintiff to use for the React Native developer position.

145.    As a result, John Goulding, under normal business circumstances could not have legally obtained the Plaintiff's address and personal information from Apex or internally within AT&T/DirecTV.

146.    Based on available information and belief, Kim Chu, in her capacity as an account manager for AT&T/DirecTV, should have had confirmation regarding the Plaintiff's hiring status if it were legitimate.

147.    **False Alarm to Return Package**: Defendants Mehak Delawalla, Kim Chu and John Goulding bombarded the Plaintiff with deceitful phone messages and emails pretending to be in a panic to have the laptop returned, as detailed in paragraphs 62 – 77 and Exhibits P - S.  This was done deceitfully and intentionally creating a scenario of emotional distress for the Plaintiff.

148.    Making their deception obvious, they implied unrealistic circumstances, such as AT&T sending a laptop when Apex Systems told them to hold off. The laptop was sent without requiring a signature at delivery. As soon as the laptop arrived at the destination, they suddenly began to panic, and Mehak made no attempt to have Federal Express stop the shipment or pick up the package where they left it. If Apex and DirecTV had made a legitimate hire and shipped a laptop to an employee who was recently hired, there would be no need to panic to have the laptop returned.

149.    The intent was malicious and displayed when the Defendants bombarded him with calls and emails, creating an alarming situation to coerce the Plaintiff to communicate with his parents. Mehak Delawalla and Kim Chu made multiple attempts to get the Plaintiff to contact his parents, even after they were given his mother's email and phone number. They continued to pretend not to be able to communicate with his mother, criticizing her and displaying that they were both contacting her. John Goulding intensified the situation with his attempts to contact the Plaintiff.

150.     **Intentional Misrepresentation / Induced Reliance**: Based off the aforementioned facts, the Plaintiff alleges Defendants engaged in a series of false and misleading acts and statements to induce reliance, that the Plaintiff relied on and that caused him harm as follows:

- Mehak Delawalla intentionally misrepresented the React Native position to the Plaintiff. (paragraphs 105 - 110)

- Mehak Delawalla, Oscar Montoya, Ian Hafkenschiel and Daniel Salt intentionally misrepresented they were interviewing the Plaintiff for the React Native position, the job requirements and Oscar Montoya was the project lead. (paragraphs 111 - 119)

- Mehak Delawalla intentionally misrepresented the legitimacy of the hiring process to the Plaintiff by:

    i.   Requesting his social security number over the phone

    ii.  Sending him a fake job Offer Letter

    iii. Creating an account on the Apex portal with his information and completing the Profile and Important Document sections.

    iv.  Informing the Plaintiff to complete the Confidentiality and Invention Agreement off the portal.

    v.   Informing Apex launched the Contract and Background Check, that the Plaintiff would receive it.

    vi.  Acting as if they were following federal and state hiring procedures. (paragraphs 120 - 139)

- Mehak Delawalla and John Goulding intentionally misrepresented through their actions that Apex sent hiring paperwork to AT&T/DirecTV.  DirecTV then prepared a laptop for the Plaintiff to be used for the React Native position, and John Goulding was ordered

to ship the laptop for the position to the Plaintiff's parent's home.
(paragraphs 140 - 146)

- Mehak Delawalla, John Goulding and Kim Chu intentionally
misrepresented that John Goulding shipped a laptop for the React
Native position to the Plaintiff's parent's home, after Apex told him to
hold off and there was an urgent need to have the laptop returned.
(paragraphs 140 - 149)

- Mehak Delawalla and Kim Chu intentionally misrepresented they
were unable to communicate with the Plaintiff's mother and needed
him to call her. (147 - 149)

151.     **Plaintiff's Reliance on False Representations**: The Plaintiff
reasonably relied on the false representations made by Defendants Mehak
Delawalla, Kim Chu, John Goulding, Oscar Montoya, Ian Hafkenschiel, and
Daniel Salt and, in good faith, prepared for interviews, revised assignments,
provided his social security number and parents' address, and believed he
would receive a job contract.  He also believed they shipped a laptop to his
parent's home; therefore, he provided his mother's phone number and email
address.

**152.     The Plaintiff's reliance on the Defendants' representations was
undoubtedly a substantial factor in causing him harm**. Throughout the
deceptive hiring process, the Defendants Mehak Delawalla, Kim Chu, John
Goulding, Oscar Montoya, Ian Hafkenschiel, and Daniel Salt representing
highly reputable companies, deliberately misled the Plaintiff with false
promises of a job opportunity. They not only excited the Plaintiff with the
prospect of gainful employment but also compelled him to invest an
extensive amount of time and effort in preparing for interviews and

completing assignments. The Plaintiff, who was unemployed at the time, went to great lengths to meet AT&T/DirecTV's expectations, becoming emotionally and mentally invested in the process then was hit with a sudden shock of realizing the Defendant had misled him and were attempting to get him to contact his parents in a completely unrealistic situation.

153.    **Harm and Damages:** The harm stems directly from the Defendants' intentional and deceptive behavior. The foundation of the claim for recovery is firmly rooted in the Defendants' fraudulent actions expressed in paragraph 150.  The sudden shock of realizing that the Defendants, from well-respected companies, intentionally misrepresented the opportunity over the course of three weeks, leaving him in fear for the safety and well-being of his parents, and intimidating his efforts to obtain gainful employment, has had a lasting effect on the Plaintiff. This shocking revelation has resulted in lasting effects on the Plaintiff, encompassing not only emotional turmoil but also financial loss and significant harm.

154.    **Section: Emotional Distress and Mental Anguish:** The Plaintiff has experienced severe emotional distress and mental anguish due to the actions of the Defendants, which include:

155.    **Mental Anguish for Family Harassment**: The Plaintiff has suffered from mental anguish, knowing that his family is being subjected to harassment as a result of his situation, leading to a loss of companionship from the family relationship.

156.    **Embarrassment and Sadness**: The Plaintiff has endured embarrassment and profound sadness knowing that the harassment directed towards his family is connected to him, creating feelings of guilt and helplessness, which has resulted in a loss of enjoyment of life.

157.    **Fear of Gainful Employment**: The Plaintiff experiences fear when considering applying for gainful employment, as the Defendants' fraudulent actions have revealed that even reputable companies are willing to engage in fraudulent activities to harass him and his family, diminishing the overall enjoyment of life.

158.    **Fear of Contacting Family**: The Plaintiff remains in fear of contacting his family sensing they will again become targets of harassment, leading to a loss of companionship and enjoyment of family life.

159.    **Pain and Frustration**: The Plaintiff has experienced pain and frustration stemming from the knowledge that employees of reputable companies have taken pleasure in leading him on and participating in the harassment of both him and his family, further eroding the enjoyment of life.

**160.    Section: Severe Emotional Distress and Psychological Impact:** The Defendants' fraudulent actions have had a profound and lasting impact on the Plaintiff's emotional and psychological well-being, resulting in:

161.    **Anxiety**: The Plaintiff continues to suffer from severe anxiety as a direct result of the Defendants' actions, including anxiety related to seeking employment and potential future harassment, which has affected the enjoyment of life.

162.    **Depression**: The Plaintiff has experienced depression as a consequence of the Defendants' conduct, which has had a detrimental effect on his overall mental health and has significantly diminished the enjoyment of life.

163.    **Sense of Hopelessness**: The Plaintiff has developed a profound sense of hopelessness in pursuing gainful employment due to the Defendants'

actions, which has further exacerbated his emotional distress and has led to a loss of enjoyment of life.

164.    **Mental Anxiety from Intentional Harassment**: The intentional harassment inflicted upon the Plaintiff and his parents by the Defendants has caused severe mental anxiety, leading to ongoing emotional suffering and a decreased enjoyment of life.

**165.    Section: Economic Losses:** The Plaintiff has suffered and will continue to suffer substantial economic losses as a direct consequence of the Defendants' actions, including:

166.    **Current Unemployment**: Due to the emotional distress and harm caused by the Defendants, the Plaintiff has experienced a period of unemployment, resulting in financial hardship and lost wages.

167.    **Future Economic Losses**: The Plaintiff anticipates significant future economic losses. This includes the loss of valuable work experience and career advancement opportunities that would have been available had it not been for the Defendants' fraudulent actions.

168.    **Diminished Earning Capacity**: The Defendants' actions have directly diminished the Plaintiff's earning capacity by impairing his ability to secure and maintain gainful employment in his field of expertise.

169.    **Loss of Potential Income**: The Plaintiff has suffered a loss of potential income and career growth due to the adverse impact of the Defendants' actions on his employment prospects and professional development.

170.    **Career Stagnation**: The Plaintiff's forced unemployment has caused career stagnation, preventing him from gaining valuable skills, experiences, and earning potential.

171.     These economic losses are a direct result of the Defendants' actions and have had a profound and lasting impact on the Plaintiff's financial well-being and future prospects. They should be considered when calculating the total damages sought in this civil lawsuit.

**Count II: Common Law Intentional Infliction of Emotional Distress**

172.     The Plaintiff incorporates by reference each of the allegations in all prior paragraphs in this complaint.

173.     **Reckless Disregard**: The defendants, including Apex Systems and its employees Mehak Delawalla and Kim Chu, as well as AT&T and DirecTV and their employees Oscar Montoya, Ian Hafkenschiel, Daniel Salt, and John Goulding, engaged in a prolonged and orchestrated campaign of deceit that showed reckless disregard for the emotional well-being of the Plaintiff, as detailed in Count I.

174.     **Intentions to Cause Distress**: The intentions of their actions were to excite the Plaintiff about a potential job opportunity over the course of three weeks, then they created a scenario of emotional distress when he discovered the opportunity and offer were fraudulent and he was suddenly in a situation where he felt they were threatening the well-being of his elderly parents.

175.     **Outrageous Conduct:** The Defendants consisting of six employees from three different reputable companies conspiring over the course of three weeks to make the Plaintiff think he was close to securing a job, only then to put him in a situation of fear for his parent's safety and well-being, as well as his ability to pursue employment is considered outrageous conduct.

176.     Not only did the Defendants exhibit reckless disregard for the probability that the Plaintiff would suffer emotional distress, but the

fraudulent creation of an account on Apex System's portal by Mehak Delawalla to present deceptive documents to the Plaintiff, along with the intentional harassment of the Plaintiff and his mother by Mehak Delawalla and Kim Chu, constituted outrageous conduct by representatives from a professional recruiting company.

177.    The conduct was done intentionally to create emotional distress for the Plaintiff and his family.

178.    **Severe Emotional Distress**: The emotional distress inflicted upon the Plaintiff has been severe and profound, encompassing suffering, anguish, fright, nervousness, grief, anxiety, worry, shock, humiliation, and shame. This severe emotional distress was not mild or brief; it has been substantial and long-lasting, to the extent that he still remains in fear of contacting his family and seeking gainful employment.

179.    The defendants' deliberate targeting of the Plaintiff and his elderly parents, along with the calculated and malicious nature of their actions, resulted in severe emotional harm beyond what any reasonable person should endure.

180.    The Plaintiff's fear of further harassment has significantly impacted his mental and emotional well-being, leading to wage losses and a reluctance to seek gainful employment due to the traumatic experience inflicted upon him and his family.

181.    Furthermore, the Plaintiff continues to live in fear of contacting his family, fearing that any communication may lead to further harassment, demonstrating the ongoing and lasting psychological impact of the defendants' actions. Harm detailed in Count I paragraphs 155 - 173.

### Count III: Conspiracy to Commit Fraud and Intentional Infliction of Emotional Distress

182.     The Plaintiff reasserts and incorporates by reference all prior allegations in this complaint.

183.     **Definition & Overview**:

184.     The Defendants, in unison and with shared intent, conspired to deceive the Plaintiff and inflict emotional distress.

185.     Conspiracy involves an agreement by two or more parties to commit an unlawful act. In this context, the wrongful act is fraud and Intentional Infliction of Emotional Distress.

186.     **Parties Involved**:

187.     Defendants encompass Apex Systems, LLC, AT&T, DirecTV, LLC, Mehak Delawalla, Kim Chu, John Goulding, Oscar Montoya, Ian Hafkenschiel, and Daniel Salt.

188.     Collectively, they conspired with explicit intent to commit fraudulent acts causing the Plaintiff significant emotional distress and other damages.

189.     **Nature of Deception**:

190.     The nature of the deception perpetrated by the Defendants was multifaceted and deliberate, as outlined in Cause of Actions I and II. It encompassed a coordinated effort to target and capture the Plaintiff's interest by misrepresenting a job opportunity and orchestrating a deceptive interview process.  Furthermore, the Plaintiff was deceived with fraudulent hiring process and documents provided by Mehak Delawalla. Then was also falsely led to believe that a laptop had been shipped to his parent's residence for the React Native developer position. However, when the laptop reached its destination, Defendants Mehak Delawalla, Kim Chu, and John Goulding

created a panic to have the laptop returned, pressuring the Plaintiff to contact his parents. It became apparent that the entire interview and hiring process was fraudulent, designed with the intention of creating a scenario of emotional distress for the Plaintiff. This resulted in harassment, intimidation aimed at the Plaintiff and his parents, and obstruction of his pursuit of gainful employment. The Defendants' actions collectively demonstrated a malicious intent to harm the Plaintiff through deceit and manipulation.

191.     **Specific Actions by Defendants**:

192.     Defendant Mehak Delawalla played a central and deliberate role in the deceptive actions detailed in Cause of Action I and II, conspiring with all other Defendants over nearly a month-long period. She initiated the deception by intentionally misrepresenting the job opportunity and its requirements to the Plaintiff. Collaborating with Oscar Montoya, Ian Hafkenschiel, and Daniel Salt, she contributed to the misrepresentation of a genuine interview. Later, Mehak and Oscar Montoya falsely conveyed that the Plaintiff needed to demonstrate his iOS coding abilities for the position. Subsequently, she provided the Plaintiff with false information about the intent to hire him and obtained his social security number and address, furthering the deception. During the onboarding process, Mehak Delawalla created a fraudulent account on Apex's client portal using the Plaintiff's information and completed the "Important Documents" section to simulate legitimate hiring. She also sent the Plaintiff a fraudulent offer letter and Confidentiality and Invention Agreement to create an illusion of legal compliance. In a final act of deception, Defendant Mehak Delawalla conspired with John Goulding and Kim Chu to fabricate a scenario of urgency, claiming that AT&T/DirecTV had shipped a laptop. They then

pressured the Plaintiff to contact his parents for its return. Her extensive involvement throughout the entire deceptive process solidified her role as a key figure in the conspiracy to deceive and harm the Plaintiff.

193.     Oscar Montoya, Ian Hafkenschiel, and Daniel Salt collaborated with Mehak Delawalla to misrepresent a genuine interview for the React Native developer position.

194.     Oscar Montoya and Mehak Delawalla then conspired to convince the Plaintiff he would have to show the ability to program in Objective C or Kotlin.

195.     John Goulding conspired with Mehak Delawalla and Kim Chu falsely confirming the shipment of a laptop and sudden need to pressure the Plaintiff for its return.  He shipped a package from the AT&T / DirecTV facility insinuating it was a laptop for the React Native developer position, then he prepaid for its return.

196.     Kim Chu conspired with Mehak Delawalla and John Goulding, reinforcing the purported laptop shipment narrative, and pressuring the Plaintiff to contact his parents, making claims she could not communicate with his mother and demonstrating that both Kim Chu and Mehak Delawalla were harassing the Plaintiff's elderly mother.

197.     **Evidence of Conspiracy**:

198.     The conspiracy among the Defendants is inferred from the intertwined nature of their deceptive acts, their professional relationships, and the collective actions that were detrimental to the Plaintiff.

199.     One act of intentional misrepresentation led to another act until they were able to create a scenario of emotional distress for the Plaintiff. Defendants Mehak Delawlla, Oscar Montoya, Ian Hafkenschiel, and Daniel

Salt misled the Plaintiff into believing he was participating in a genuine interview process, which subsequently led to Mehak Delawalla's creation of fraudulent documents and false statements during the hiring process to seem believable at the time, followed by Mehak Delawalla, Kim Chu and John Goulding falsely alarming the Plaintiff they shipped a laptop which created a situation enabling them to harass the Plaintiff and his family.

200.    **Intent & Motivation**:

201.    The actions of the Defendants were not incidental but were executed with deliberate intent to make false representations.  The Defendants actions show they were not motivated in fulfilling their work responsibilities because there was no intent to hire the Plaintiff, their intentions were to deceive the Plaintiff then subject him to a situation of severe emotional distress involving his parents, as detailed in paragraph 152.

202.    These events are like other events of retaliation and harassment the Plaintiff suffered in 2020 and 2021 immediately following the reporting of corruption by law enforcement that originated in Los Angeles, California.

203.    **Resultant Damages**:

204.    As a direct consequence of this conspiracy, the Plaintiff endured considerable emotional suffering, manifesting as anxiety, depression, and other harms detailed in Count I paragraphs 155 - 173.

## Count IV: Stalking California Civil Code 1708.7

205.    The Plaintiff incorporates by reference each of the allegations in all prior paragraphs in this complaint.

**206.    Pattern of Conduct with Intent to Follow, Alarm, and Harass:**

Defendants, employees of Apex Systems Mehak Delawalla and Kim Chu as well as AT&T / DirecTV employees Oscar Montoya, Ian Hafkenschiel and

Daniel Salt participated in an ongoing disturbing pattern of behavior with the deliberate intent to distress and harass the Plaintiff, in violation of California Civil Code Section 1708.7.

207.     Prior to contact with the Defendants, similar acts were reported to the FBI, Department of Justice (DOJ), US Consulate and police. These acts included threats, violence and harassment targeting the Plaintiff, his family members, and his pursuit of employment.

208.     The acts of the Defendants are similar to other incidents that occurred in 2020 and 2021. The Plaintiff received emails that intentionally misrepresented facts attempting to alarm him to contact his parents. Which began after the Plaintiff informed his parents that he would stop communicating with them, so that they would not be harassed by law enforcement.

209.     As displayed in Exhibit A, the Office of Inspector General (OIG) has viewed the allegations as credible. The FBI's Ethics and Integrity Program Policy Directive and Policy Guide § 45.11 mandates all allegations of FBI misconduct be reported to the OIG. Therefore, they are the subject matter experts and have viewed the allegations as credible.

210.     Many acts of retaliation occurred after reporting law enforcement misconduct. The week prior to being contacted by Defendant Mehak Delawalla the Plaintiff testified regarding law enforcement misconduct on September 8, 2021.

211.     On September 15, 2021, Mehak Delawalla a recruiter from Apex Systems initiated contact with the Plaintiff, proposing a software developer job that perfectly matched the Plaintiff's skill set and interests. This clearly caught the Plaintiff's attention and seemed like the perfect job opportunity.

Later it was discovered that the technologies listed in the job requirements were not the technologies used in the actual project. Showing false representation of the job to capture the Plaintiff's attention.

212.    At the interview the team lead Oscar Montoya mentioned he had a preference for developers that could code in other languages, unrelated to what Mehak informed the Plaintiff was required for the position.

213.    Due to the requirement changes at the interview, the Plaintiff was under the impression he was not qualified for the position and advised Mehak Delawalla to inform him of opportunities that matched his skills.

214.    However, Mehak persisted in keeping the Plaintiff interested in the position, by making false statements that Oscar wanted to hire him if he could show he could code in the other programming languages requested by Oscar in the take-home test.

215.    The Plaintiff excited about the opportunity of working for AT&T / DirecTV, did what it took to meet Oscar's requirements in the take-home test. However, as he updated the take-home test, Mehak and Oscar continued to add requirements, toying with the Plaintiff as felt he was on the brink of securing the position.

216.    Unknown to the Plaintiff at the time, he was being asked to code in languages that were not used in the project and unknown by the developers Ian Hafkenschiel and Daniel Salt, proving they were deceiving the Plaintiff to maintain his interest in the position and were not serious about bringing him onboard.

217.    The Plaintiff was notified he would have to be in the United States to be hired and never received an employment contract. The Plaintiff was contacted by Mehak on October 8, 2021, but did not respond.

218.    The Plaintiff was then forced to engage in communication with the Defendants, when they alarmed him DirecTV sent a laptop to his parent's home for the position even though Apex Systems told them to hold off. They pretended being helpless in stopping the shipment or recovering the package and bombarded the Plaintiff with messages.

219.    The Plaintiff realized the entire situation was a fraud and was related to previous acts of retaliation after reporting law enforcement misconduct. The Plaintiff was forced to help them in concern for his parents' safety and well-being.

220.    Defendants continued to harass the Plaintiff as he was compelled to respond to them because they involved his parents.

221.    The combined circumstances show a sustained effort to capture the Plaintiff's attention then follow, alarm and harass him with deceiving circumstances that played into his interests and compelled him to respond in concern for the safety and well-being of his parents.

222.    **Instilling Credible Threat and Fear for Safety:** Due to threats of violence and recent events of harassment directed at the Plaintiff and his family, including an attempt to run the Plaintiff over, and a drug-induced robbery. The Defendants' actions created a credible threat as a pattern of conduct, evoking genuine fear for the safety of the Plaintiff's parents if he did not respond.

223.    The pattern of conduct was to make intentional misrepresentations to alarm the Plaintiff to coerce him to contact his parents.  The Plaintiff in fear of contacting his parents realizing they were being harassed because of the Plaintiff reporting corruption.  Considering recent acts of violence, the Plaintiff was in fear for the safety of his parents.

224.    **Substantial Emotional Distress and Consequent Anxiety:**  The Plaintiff has endured significant emotional distress resulting in heightened anxiety and depression due to the malicious actions of highly reputable companies, AT&T, DirecTV, and Apex Systems LLC, who conspired to harass him for almost a month.

225.    The confidence, joy and empowerment displayed by Mehak Delawalla, Kim Chu and Oscar Montoya in abusing their positions within these reputable companies to harass the Plaintiff and his family has intensified his emotional distress.

226.    These circumstances collectively would reasonably cause emotional distress to any person as detailed in Count I paragraphs 155 – 173 and Count II paragraphs 180 – 183.

227.    **Plaintiff's Communication to Stop Harassment and Circumstances that made Immediate Demand Unsafe:**

228.    **Complaints to stop:** After the interview with AT&T, the Plaintiff explicitly informed Mehak he would seek job opportunities within his skill set, shown in emails displayed on September 21st, displayed in Exhibit F. However, Mehak and Oscar persisted in capturing his interests by leading him to believe he was a viable candidate and close to securing the position.

229.    Despite never receiving a contract or even having access to the Apex Systems platform to receive a contract, the Defendants continued harassing him by sending a laptop to his parent's address, compelling him to respond, criticizing and harassing his mother and instilling fear that his parents would be subject to harassment.

230.    **Unsafe Circumstances**: The Defendants intentionally involved the Plaintiff's parents by sending a laptop to their home.  Considering the

ongoing harassment and his vulnerable position, the Plaintiff was forced to communicate directly with the Defendants due to a legitimate fear of escalating retaliation. At that moment, if the Plaintiff accused them of harassing his parents, demanded they stop or did not assist them, the situation would have gotten much worse considering the threats, harassment and previous acts of violence that occurred within the past year.

231.     In summary, the Defendants orchestrated a calculated and sustained campaign to manipulate, distress, and harass the Plaintiff, impacting his emotional well-being, career prospects, and family relationships.

### Count V: Intrusion into Private Affairs

**232.**     The Plaintiff claims that Defendants Apex Systems LLC, through its recruiter Mehak Delawalla, along with DirecTV employee John Goulding, violated his right to privacy.

**233.**     The Plaintiff had a reasonable expectation of privacy for his personal data, including his social security number, address and mother's phone number, and would only provide it in absolutely necessary scenarios.

**234.**     Mehak Delawalla intentionally intruded upon his privacy by misleading him into believing he was going to receive a job offer and contract if he provided his social security number and address.

**235.**     The Plaintiff's information was used to falsify an Apex Systems account under the Plaintiff's name and led him to believe he was going to be presented with a contract. Exhibit N shows that both the Plaintiff's profile information and the "Important Document" sections were completed by someone other than the Plaintiff.

236.     After the Plaintiff provided his information to Apex Systems LLC, he had a reasonable expectation of privacy, assuming they would not distribute it without his consent.

237.      Mehak then provided the Plaintiff's private information to John Goulding at DirecTV without the Plaintiff's knowledge or consent.

238.     John Goulding used the address to fake the shipment of a company laptop from DirecTV to create a situation of emotional distress for the Plaintiff and his elderly parents.

239.     Mehak Delawalla and Kim Chu claimed to need the Plaintiff to contact his parents to have the laptop returned.  The Plaintiff in fear if he did not assist them would result in further harassment of his parents provided his mother's email address.

240.     Kim Chu pretended not to be able facilitate the return of the laptop communicating by email, the Plaintiff felt forced to provide her phone number.

241.     Kim Chu and Mehak Delawalla used the phone number to display to the Plaintiff they were harassing his parents.

242.     This type of intrusion of data is neither common nor expected when seeking employment and would be highly offensive to anyone, especially when the violations of privacy come from reputable companies.

243.     The Plaintiff suffered harm, as detailed in Count I paragraphs 155 – 173 and Count II paragraphs 180 – 183.

244.     Mehak Delawalla, Kim Chu and John Goulding's conduct were substantial factors in causing the Plaintiff's harm.

### Count VI: Vicarious Liability under California's Doctrine of Respondeat Superior

245.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

**246.     Employment Relationship and Scope of Employment:**  AT&T, DirecTV and Apex Systems employed the individuals involved in the Plaintiff's case.

247.     Mehak Delawalla, an agent/employee of Apex Systems, initiated contact with the Plaintiff regarding a remote job opportunity at AT&T, clearly acting within her employment scope. During business hours, on behalf of Apex Systems, she conducted official communications, including arranging the interview, updating the Plaintiff on take-home test, requesting his private information to include on a contract, sending the offer letter, and the Confidentiality and Invention Agreement on behalf of Apex Systems. Mehak Delawalla also assumed responsibility for the Plaintiff's paperwork and communication within Apex and with AT&T.  She claims that she informed AT&T to hold off on shipping the laptop, then pressured the Plaintiff to contact his parents.

248.     Kim Chu, an Account Manager at Apex Systems assigned to AT&T and DirecTV, also engaged in communication within the scope of her employment utilizing Apex System email, she claimed to have spoken with the Plaintiff's mother and put pressure on the Plaintiff to contact his mother.

249.     AT&T / DirecTV employees and Apex Systems contractors, including Oscar Montoya, Ian Hafkenschiel, and Daniel Salt, conducted interviews and made representations while acting in their roles as employees and contractors. These interviews occurred during business hours, utilizing an AT&T conference link, and followed a clear employment framework,

leading the Plaintiff to believe he was participating in a legitimate interview process. Oscar Montoya continuously updated the Plaintiff's take home test.

250.    AT&T / DirecTV employee John Goulding shipped a company laptop from AT&T / DirecTV to the Plaintiff's parent's home to be used for employment purposes. He received communications to ship the laptop and was working within the scope of his employment. He also pressured the Plaintiff through messages.

251.    **Harm or Injury:** The Plaintiff suffered harm, as detailed in Count I paragraphs 155 – 173 and Count II paragraphs 180 – 183.

252.    **Causation:** The Plaintiff's emotional distress, humiliation, and lasting psychological trauma directly resulted from willful and negligent actions and representations made by the Defendants' employees during the course of their employment.

253.    Employees of the Defendants, representing highly reputable companies and acting within the scope of their employment, willfully and negligently manipulated the Plaintiff. They led him to believe in the legitimacy of the job opportunity, entangled him in a fraudulent interview process, presented a job offer, solicited his social security number and address based off the fraudulent job offer and ultimately created an environment of intense emotional distress.

254.    In summary, AT&T, DirecTV, and Apex Systems are vicariously liable under California's Doctrine of Respondeat Superior due to their employees' actions and representations made within the scope of their employment, resulting in harm, emotional distress, humiliation, and lasting psychological trauma, lost wages, lower future earning potential, and suffering experienced by the Plaintiff.

## Count VII: Negligent Infliction of Emotional Distress (NIED)

255.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

256.     **Duty of Care:** Apex Systems, AT&T, and DirecTV owed a duty of care to the Plaintiff, which includes protecting private data and ensuring that their hiring and job offer process was conducted reasonably, professionally, and without causing undue emotional distress to potential employees.

257.     **Breach of Duty:** The Defendants breached their duty of care by engaging in a hiring and job offer process that was deceptive, misleading, abused the Plaintiff's data privacy and ultimately was designed to induce severe emotional distress for the Plaintiff.

258.     **Causation:** The actions and representations made by the Defendants directly and proximately caused the Plaintiff to suffer severe emotional distress. The Plaintiff's emotional distress was a foreseeable consequence of the Defendants' breach of duty.

259.     **Severe Emotional Distress:** As a result of the Defendants' actions, the Plaintiff endured severe emotional distress as detailed in Count I paragraphs 155 – 173 and Count II paragraphs 180 – 183.

**260.     Negligence in Hiring and Job Offer Process:**  Apex Systems and AT&T/DirecTV acted negligently in their hiring and job offer process by:

- Failing to Follow Employment Laws: Defendants failed to adhere to federal and state employment laws when running background checks and sharing information without proper consent, demonstrating negligence in complying with legal requirements.

- Failure to Provide Access to Portal: The Plaintiff was never granted access to the Apex client portal for receiving, signing, and submitting

the necessary documents required by federal and state laws for hiring employees, further illustrating negligence in following proper procedures.

- Background Check Violation: The Defendants conducted background checks without obtaining the Plaintiff's prior written authorization, a violation of the Fair Credit Reporting Act (FCRA).

- Form I-9 Violation: Failure to provide the Plaintiff with an I-9 form, required by the Department of Homeland Security for verifying employment eligibility, constitutes negligence in compliance with essential employment verification requirements.

- Suspect Offer Letter: The authenticity of the offer letter in Exhibit L is questionable, with grammatical errors and susceptibility to modification, raising doubts about its legitimacy and the Defendants' commitment to lawful hiring processes.

**261.**   **Foreseeability:**  The Defendants knew or should have known that their actions and representations could reasonably lead to emotional distress for the Plaintiff. It was foreseeable that their deceptive conduct would cause severe emotional harm.

262.   **Damages:** As a direct result of the Defendants' negligence, the Plaintiff suffered harm, as detailed in Count I paragraphs 155 – 173 and Count II paragraphs 180 – 183.

263.   **Conclusion**: Based on the aforementioned elements, the Plaintiff asserts a cause of action for Negligent Infliction of Emotional Distress against Apex Systems and AT&T/DirecTV. The Defendants' negligent conduct in the hiring and job offer process directly led to the Plaintiff's

severe emotional distress and economic damages, making them liable for the harm suffered.

## PRAYER FOR RELIEF

264.    WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

265.    Compensatory damages, including economic damages of $500,000.

266.    Punitive damages of $4,000,000.

267.    Treble damages as provided by California Civil Code Section 3345.

268.    Reasonable costs and attorneys' fees.

269.    Prejudgment interest as allowed by law.

270.    Postjudgment interest as allowed by law.

271.    Any Other Appropriate Relief:  Plaintiff reserves the right to request any other appropriate relief as deemed necessary by the Court to fully redress the injuries suffered.

## JURY DEMAND

272.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

1

2   I, Russell J Terry, declare as follows: I have personal knowledge of the facts set out

3   in the foregoing Third Amended Complaint except as to those matters stated upon

4   the basis of information and belief, and if called on to testify, I would competently

5   testify as to the matters stated herein. I verify under penalty of perjury under the

6   laws of the United States of America that the factual statements in the Verified

7   Complaint concerning myself, my activities and my experiences are true and

8   correct. 28 U.S.C. item 1746.

9                    Dated: November 28, 2023

10

11

12   _____

13   Russell J Terry

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**DEPARTMENT OF JUSTICE | OFFICE OF THE INSPECTOR GENERAL**

June 16, 2022

Russell Terry
r2dat@yahoo.com

Dear Mr. Terry:

Thank you for your correspondence dated June 3, 2022. The U.S. Department of Justice (DOJ), Office of the Inspector General, investigates allegations of misconduct by employees and contractors of DOJ, as well as waste, fraud and abuse affecting DOJ programs and operations.  After reviewing your complaint, we have determined that the matters that you raised are more appropriate for review by another office within the DOJ.  Therefore, we have forwarded your correspondence to:

> Federal Bureau of Investigation
> Inspection Division
> 935 Pennsylvania Avenue, NW
> Washington, DC 20535
> Telephone Number: (202) 324-3000

Please direct any further correspondence regarding this matter to that office.

Of course, if you have information that involves other allegations or issues regarding DOJ employees, contractors, programs or operations, please feel free to submit that information to us.

Thank you for giving us the opportunity to review your concerns.


Sincerely,



Office of the Inspector General
Investigations Division

950 Pennsylvania Avenue, NW, Washington, DC 20530-0001

10/31/23, 8:29 PM                                    (10025) All mail | surfsol@protonmail.com | Proton Mail

## REMOTE React Native Opening with AT&T

| | |
|---|---|
| From | Mehak Delawalla <mdelawalla@apexsystems.com> |
| To | surfsol@protonmail.com |
| Date | Wednesday, September 15th, 2021 at 12:02 AM |

Hi!

My name is Mehak and I am a recruiter with Apex Systems. I came across your resume and have a REMOTE opportunity for you that could be a fit! Please see the details below and let me know if you are interested!

React Native Opening with AT&T supporting a new team that supports the streaming platforms! REMOTE after Covid!

Job Description:

**Skills**

· Firm grasp of the JavaScript

· Knowledge of functional / object-oriented programming.

· Ability to write well-documented, clean Javascript code.

· Rock solid at working with third-party dependencies and debugging dependency conflicts.

· Familiarity with native build tools, like Xcode, Gradle (Android Studio/ IntelliJ).

· Familiarity with You.I.

· Understanding of REST APIs, the document request model, and offline storage

10/31/23, 8:29 PM                                    (10025) All mail | surfsol@protonmail.com | Proton Mail

· Experience with automated testing suites, like (Jest / Mocha)

· 2+ years of software development experience; minimum of 1 year of ReactNative experience.

· Deep understanding of React and its core principles.

· Strong proficiency in JavaScript.

· Experiencing with React workflows (i.e. Flux, Redux).

· Strong ability to lead and mentor engineers. Great communication skills. Comfortable writing technical specs to document and explain ideas, story writing, etc.

· Highly product-oriented, analytical, and deep thinker.

· Experience working in a rapid, Agile environment.

· Have Github project(s) and open source contributions.

· Have worked in a Test Driven Development (TDD) environment before.

· Have Continuous Integration And Continuous Delivery (CI/CD) experience in an Agile Environment.

**Mehak Delawalla | Professional Recruiter**

**Apex Systems**

Mobile: 310-382-0855 | Office: 310-421-2384

mdelawalla@apexsystems.com  |  www.apexsystems.com | Privacy Policy



▶ Learn more about what sets us apart in the industry in our Year in Review

**Connect with me on LinkedIn**

Exhibit B
page 52

# Applicant Take-home Test
# for DirecTV Disrupters' Team

Create a simple REST API consuming frontend with a menu list of videos to stream and when you click one, it shows a streaming video player with controls and a back button to go back to the menu page.

Do this in the framework you know best of the following: React Native, Kotlin, and/or Swift/Objective-C. If using React Native, use React Navigation v6 for switching pages and Flexbox for layout.

Bonus points if you can build part of it in Kotlin or Objective C and write a bridge to make it work in React Native.

Use the Youtube Streaming Video API for content:
https://developers.google.com/youtube/v3/live/getting-started

To submit your code, either upload it to a PRIVATE BitBucket repo and add ih143f@us.att.com and oscar.montoya@directv.com with Read Access or email it in a zip file to your recruiter to share with us (do not include your node modules folder).

Exhibit C
page 53

## React Native Interview with DirecTV

| | |
|---|---|
| From | Mehak Delawalla <mdelawalla@apexsystems.com> |
| To | surfsol@protonmail.com |
| Date | Monday, September 20th, 2021 at 5:42 PM |

==**Date and Time: 9/21/2021 at 2 PM MT**==

*Link:* **https://attcorp.webex.com/meet/om951c**

**-Make sure to download webex and that audio and video is working**

*Who:*

**-Oscar Montoya https://www.linkedin.com/in/oscarmontoya/**

**-Ian https://www.linkedin.com/in/ihafkenschiel/**

**-Daniel Morales https://www.linkedin.com/in/daniel-morales-s96/**

**-Gagandeep Brar**

*What to expect:*

**-React native questions**

**-React/javascript (redux)**

**-Going over the code you sent over**

**-Will ask about your video experience**

*This e-mail communication (including any attachments) may contain confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.*

**2.43 KB**    1 file attached

calendar.ics 2.43 KB

Exhibit D
page 54

## Check out these Resources from Apex!

From Mehak Delawalla <mdelawalla@apexsystems.com>
To surfsol@protonmail.com
Date Tuesday, September 21st, 2021 at 10:00 AM

APEX SYSTEMS

We want to ensure you're aware of all of our Career, Job Search and Interview Preparation Resources, which can help you get in the right mindset, prepare questions, ease any jitters, give you a leg up amongst other applicants, and more. As we partner with you on your job search, effective interview preparation can really have a positive influence on getting an offer. Check out all of our Apex Career Resources here!

**Here are 4 of our top interview preparation resources:**

Your Interview Prep Action Item List
WEBINARS & WORKSHOPS

Body Language Hacks for Phone & Video Interviews
WEBINARS & WORKSHOPS

Stop, Drop, and Roll - How to Avoid Your Interview from Going Up in Flames
ARTICLES

Applying "Candidate Risk Management" to the Interview Process
ARTICLES

Exhibit E
page 55

**Re: Finished assignment**

From    Mehak Delawalla <mdelawalla@apexsystems.com>

To      surfsol@protonmail.com

Date    Thursday, September 23rd, 2021 at 5:33 PM

Thanks! Sorry they have one more request for the code. Will send you the instructions.

Sent from my iPhone

> On Sep 23, 2021, at 1:14 PM, surfsol <surfsol@protonmail.com> wrote:
>
> They can just see it here on my github : https://github.com/Surfsol/YouTube_Stream
>
> Sent with ProtonMail Secure Email.
>
> ------- Original Message -------
> On Thursday, September 23rd, 2021 at 1:56 PM, Mehak Delawalla <mdelawalla@apexsystems.com> wrote:

Yes so they accepted the invite and still having trouble accessing it. Could you please send it another way?

Thanks!

Mehak

**Mehak Delawalla | Professional Recruiter | Apex Systems**

Mobile: 310-382-0855

**From:** surfsol <surfsol@protonmail.com>
**Sent:** Wednesday, September 22, 2021 1:29 PM
**To:** Mehak Delawalla <mdelawalla@apexsystems.com>
**Subject:** RE: Finished assignment

Ask them if they accepted the invite.  If they did and they cannot view it, I can send it to them another way.

Sent with ProtonMail Secure Email.

------- Original Message -------
On Wednesday, September 22nd, 2021 at 2:26 PM, Mehak Delawalla <mdelawalla@apexsystems.com> wrote:

Exhibit F
page 56

So let me check with them if they can access. It wasn't letting them view.

**Mehak Delawalla** | Professional Recruiter | Apex Systems

Mobile: 310-382-0855

**From:** surfsol <surfsol@protonmail.com>
**Sent:** Wednesday, September 22, 2021 1:26 PM
**To:** Mehak Delawalla <mdelawalla@apexsystems.com>
**Subject:** RE: Finished assignment

I just resent the invitations.

You can see the attached pdf.

Sent with ProtonMail Secure Email.

------- Original Message -------
On Wednesday, September 22nd, 2021 at 2:13 PM, Mehak Delawalla <mdelawalla@apexsystems.com> wrote:

> Ian and Oscar are trying to view it put need permission to access. Can you grant that?
>
> **Mehak Delawalla** | Professional Recruiter | Apex Systems
>
> Mobile: 310-382-0855

**From:** surfsol <surfsol@protonmail.com>
**Sent:** Wednesday, September 22, 2021 10:25 AM
**To:** Mehak Delawalla <mdelawalla@apexsystems.com>
**Subject:** Finished assignment

Hello,

I sent you this email, very early in the morning.  Just making sure you did not miss it.

I have updated the project, to create a bridge with React-Native and Kotlin.

https://bitbucket.org/surfsol/youtube_stream_kotlin/admin/access

I added the emails to the bitbucket as well.

Thanks,

Russell

Sent with ProtonMail Secure Email.

------- Original Message -------
On Wednesday, September 22nd, 2021 at 4:07 AM, surfsol <surfsol@protonmail.com> wrote:

> Hello,

I have updated the project, to create a bridge with React-Native and Kotlin.

https://bitbucket.org/surfsol/youtube_stream_kotlin/admin/access

I added the emails to the bitbucket as well.

Thanks,

Russell

Sent with ProtonMail Secure Email.

------- Original Message -------
On Tuesday, September 21st, 2021 at 3:47 PM, surfsol <surfsol@protonmail.com> wrote:

> I could answer most of the interview questions, which were about react and javascript.  However, he expected the homework
> assignment to be partially done in kotlin, Objective C or Java.  I thought that was just a bonus part of the project.
>
> He said, they are looking for someone who knows React and some of the other languages.
>
> Sent with ProtonMail Secure Email.

------- Original Message -------
On Tuesday, September 21st, 2021 at 3:43 PM, Mehak Delawalla <mdelawalla@apexsystems.com> wrote:

> Could you answer the questions they were asking or no because they said they were looking for kotlin and objective c
>
> **Mehak** Delawalla | Professional Recruiter | Apex Systems
>
> Mobile: 310-382-0855
>
> **From:** surfsol <surfsol@protonmail.com>
> **Sent:** Tuesday, September 21, 2021 2:41 PM
> **To:** Mehak Delawalla <mdelawalla@apexsystems.com>
> **Subject:** Re: Check out these Resources from Apex!
>
> Hi Mehak,
>
> Thanks for getting me the interview, however, I don't think it went well.  I was told they are looking for people with experience
> in Kotlin and Objective C.
>
> If you come across any React, React-Native and or Node.js opportunities. Please let me know.
>
> Thanks,
>
> Russell

Exhibit F
page 58

## Applicant Take-home Test
## for DirecTV Disrupters' Team

Create a simple REST API consuming frontend with a menu list of videos to
stream and when you click one, it shows a streaming video player with
controls and a back button to go back to the menu page.

Use React Native with React Navigation v6 for switching pages and Flexbox for
layout. Then build part of it in Kotlin or Objective C and write a bridge to
make it work in React Native. Then write a simple Jest unit test and have
Jenkins trigger that test whenever you push to master branch on your repo.

Bonus: have Jenkins trigger an email if the test passed or failed.

Use the Youtube Streaming Video API for content:
https://developers.google.com/youtube/v3/live/getting-started

To submit your code, either upload it to a PRIVATE BitBucket repo and add
ih143f@us.att.com and oscar.montoya@directv.com with Read Access or email it
in a zip file to your recruiter to share with us (do not include your node
modules folder).

npx pod-install ios

pod install

** in order to run these commands the project would have needed to be started in XCode on a mac.  If its necessary for me to use a mac, I will get one.


Thanks,

Russell


they would link r.

Sent with ProtonMail Secure Email.


------- Original Message -------
On Tuesday, September 28th, 2021 at 2:20 PM, Mehak Delawalla <mdelawalla@apexsystems.com> wrote:

> Hi!
>
>
> Just need to build iOS counterpart and then if you could zip it and resend as Ian is having trouble accessing it. Basically, Oscar just wants to see if you were able to use android and iOS.
>
>
> Thanks!
>
> Mehak
>
>
> **Mehak Delawalla | Professional Recruiter**
>
> **Apex Systems**
>
> Mobile: 310-382-0855 | Office: 310-421-2384
>
> mdelawalla@apexsystems.com | www.apexsystems.com | Privacy Policy
>
> [LinkedIn] [Twitter] [Facebook] [Instagram] [YouTube]
>
> **Connect with me on LinkedIn**

Exhibit I
page 60

Case 2:23-cv-07707-FMO-JC   Document 80   Filed 11/28/23   Page 61 of 77   Page ID #:600

# Note from Oscar on iOS portion

From    Mehak Delawalla <mdelawalla@apexsystems.com>

To      surfsol@protonmail.com

Date    Wednesday, September 29th, 2021 at 4:30 PM

Hi Russell!

Here is a note from Oscar on iOS portion of the project.

Those changes are the pure JavaScript side not Native code. I am interested in seeing if he can do native code not being his subject. We already know his level on the JavaScript / Typescript. I want to see how he stretches himself on new technologies. He did the Android part. Not the IOS.

**Mehak Delawalla | Professional Recruiter**

**Apex Systems**

Mobile: 310-382-0855 | Office: 310-421-2384

mdelawalla@apexsystems.com  |  www.apexsystems.com |  Privacy Policy



**Connect with me on LinkedIn**

*This e-mail communication (including any attachments) may contain confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.*

10/31/23, 8:58 PM                    (10026) All mail | surfsol@protonmail.com | Proton Mail

**Re: Address for Contract**

| From | surfsol@protonmail.com <surfsol@protonmail.com> |
| --- | --- |
| To | ==Mehak== Delawalla <mdelawalla@apexsystems.com> |
| Date | Thursday, September 30th, 2021 at 6:16 PM |

████████████a Ave.
████████297

Sent with ProtonMail Secure Email.

------- Original Message -------
On Thursday, September 30th, 2021 at 5:58 PM, Mehak Delawalla <mdelawalla@apexsystems.com> wrote:

10/31/23, 8:58 PM                    (10026) All mail | surfsol@protonmail.com | Proton Mail

Hi,

Please send me your address for the contract!

Thanks!

Mehak

**Mehak Delawalla | Professional Recruiter**

**Apex Systems**

Mobile: 310-382-0855 | Office: 310-421-2384

mdelawalla@apexsystems.com | www.apexsystems.com | Privacy Policy



▶ Learn more about what sets us apart in the industry in our Year in Review

**Connect with me on LinkedIn**



2100 E Grand Ave El Segundo, CA 90245
Tel: 310-421-2384 Fax: 310-421-2385
E-Mail: losangeles@apexsystems.com

09/30/2021
Russell Terry


Re: Employment Offer


Dear Russell Terry,

Apex Systems would like to extend you an offer for the React Native at AT&T/DirecTV position. The position is paying our previously agreed upon rate of $ 60 pay rate per/hour.

This offer is contingent upon your acceptance and signature of the Apex Systems Contract Employee Agreement (copy enclosed) and any other lawful requirements specified by AT&T/DirecTV, such as employment verification, security clearances, drug testing

Additionally, this offer is made with the explicit understanding that the length of the assignment is subject to the will of AT&T/DirecTV, and as such, is not to be construed as a guarantee of initial or continued employment.

If you have any questions, please contact me at 310-421-2384!


Thank you and congratulations,

DocuSigned by:

*Matt Cheney*

1471763EC58D4E9...

Matthew Cheney
Managing Director
Apex Systems, LLC



Please signify your acceptance of this offer letter:



_____          _____

Signature                                Date

Exhibit L
page 63

**Re: Contract and BG check have been launched**

| | |
|---|---|
| From | Mehak Delawalla <mdelawalla@apexsystems.com> |
| To | surfsol@protonmail.com |
| Date | Friday, October 1st, 2021 at 11:23 AM |

Yes need to be in US for this job because they provide equipment and VPN doesn't connect outside the US. Double checked with them

Sent from my iPhone

> On Oct 1, 2021, at 6:52 AM, surfsol <surfsol@protonmail.com> wrote:
>
> Hi,
>
> I see there is a drug test.  I am in Brazil right now.  Do I need to be in the US to do this job?
>
> Sent with ProtonMail Secure Email.
>
> ------- Original Message -------
>
>> On Thursday, September 30th, 2021 at 8:54 PM, Mehak Delawalla <mdelawalla@apexsystems.com> wrote:
>>
>> Perfect! Let me know if you have any questions!
>>
>> Mehak Delawalla | Professional Recruiter | Apex Systems
>>
>> Mobile: 310-382-0855
>>
>> -----Original Message-----
>>
>> From: surfsol surfsol@protonmail.com
>>
>> Sent: Thursday, September 30, 2021 4:47 PM

>>
>> To: Mehak Delawalla mdelawalla@apexsystems.com
>>
>> Subject: Re: Contract and BG check have been launched
>>
>> Got it, Thanks!
>>
>> Sent with ProtonMail Secure Email.
>>
>> ------- Original Message -------
>>
>>> On Thursday, September 30th, 2021 at 8:28 PM, Mehak Delawalla mdelawalla@apexsystems.com wrote:
>>>
>>> Hi!
>>>
>>> Let me know if you haven't gotten the contract or BG check!
>>>
>>> Thanks!
>>>
>>> Mehak
>>>
>>> This e-mail communication (including any attachments) may contain confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.
>>
>> This e-mail communication (including any attachments) may contain confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.
This e-mail communication (including any attachments) may contain confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.



Welcome Russell Terry Terry | Contact Us | Sign Out

*Support: 1-866-357-4358*

My Dashboard > Client Forms Packet

- ✓ Profile
- ✓ Important Documents
- ⚠ **Appendix I - Confidentiality and Invention Agreement** ▶
- ⚠ Appendix Y - Agreement Regarding Non-Employment Status with AT&T
- ○ eSign Forms

*Send A Message*

## Appendix I - Confidentiality and Invention Agreement

This Agreement ("Agreement") date is made by the individual named below ("I" or "me"), who is engaged to perform work at

**Insert name of AT&T company that worker will be doing work for: ***

[                    ]

*Insert name of AT&T company that worker will be doing work for: is required*

, as a worker of Apex Systems ("Supplier") under the terms and conditions of the agreement named below, between Supplier and AT&T Mobility .

**I. Background**
I have been engaged by Supplier to provide services to AT&T Company. I may be hired by Supplier as a full or part-time employee, a temporary worker, or as an independent contractor

**II. Information.** I agree and understand that the term "Information" means any technical, customer or business information in written, graphical, oral or other tangible or intangible forms, including but not limited to, specifications, records, data, computer programs, tax returns, tax workpapers, drawings, models and secrets which AT&T Company may have in its possession or be legally obligated to keep confidential. I understand that during the course of my work at AT&T Company, I may have access to Information that belongs to AT&T Company, its customers or other parties, or may be subject to privacy laws and laws regarding secrecy of communications, and that unauthorized disclosure of such Information may be harmful or prejudicial to the interests of AT&T Company. I agree not to disclose, copy, publish, or any way use, directly or indirectly, such Information for my purposes or the purposes of others, unless such disclosure or use is expressly authorized in writing by AT&T Company. I agree to keep such Information in a secure environment to prevent the inadvertent disclosure of such Information to others. I acknowledge and agree that all such Information remains the exclusive property of AT&T Company and I agree not to remove such Information from AT&T Company's possession or premises by physical removal or electronic transmission unless I have written authorization from
AT&T Company to do so.

**III. Innovations**
1. I understand that during and incident to my work at AT&T Company, I may create inventions, discoveries, improvements, computer or other apparatus programs, and related documentation and other works of authorship ("Innovations"), whether or not patentable, copyrightable, or subject to other forms of legal protection. I assign to AT&T Company all of my rights, title and interest (including
rights in copyright) in and to all Innovations I make, create or develop, either solely or jointly with others, during my work at AT&T Company for which Supplier was paid by AT&T Company for my work or for which I used AT&T Company's materials or facilities. I agree that the above assignment is binding upon my estate, administrators, or other legal representatives or assigns.

2. I agree to promptly notify AT&T Company of all such Innovations. Whenever requested by AT&T Company, I shall promptly execute, without additional compensation, any and all instruments which AT&T Company may deem necessary to assign and convey to AT&T Company all of my rights, title and interest in and to all such Innovations. In addition, I agree to assist AT&T Company in preparing copyright or patent applications and to execute such applications and all documents required to obtain
copyrights or patents for such Innovation, all at AT&T Company's expense including compensation to me at the rates specified in the agreement named below. I agree that my obligation to execute such instruments shall continue after the expiration of my work with AT&T Company.

3. THIS AGREEMENT DOES NOT APPLY TO ANY INVENTION MADE IN THE STATE OF KANSAS FOR WHICH NO
EQUIPMENT, SUPPLIES, FACILITIES OR TRADE SECRET INFORMATION OF AT&T COMPANY WAS USED AND
WHICH WAS DEVELOPED ENTIRELEY ON MY OWN TIME, UNLESS (1) THE INVENTION RELATES TO THE
BUSINESS OF THE AT&T COMPANY OR THE AT&T COMPANY'S ACTUAL OR DEMONSTRABLY ANTICIPATED
RESEARCH OR DEVELOPMENT OR (2) THE INVENTION RESULTS FROM ANY WORK PERFORMED BY

Exhibit N
page 65

ME FOR
AT&T COMPANY. THIS AGREEMENT DOES NOT APPLY TO AN INVENTION MADE IN CALIFORNIA WHICH
QUALIFIES FULLY UNDER THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 2870. Section III, Paragraphs 1
and 2 do not apply to any Innovation which, under the provisions in the Agreement named below, is to be other than the sole and
exclusive property of AT&T Company; the title provisions of said agreement apply to any such above Innovation.

## IV. Administrative Terms

1. This Agreement shall be effective as of the date executed below, and shall remain in effect notwithstanding my termination of
employment with Supplier or termination of my work at AT&T Company.

2. In the event that any provision of this Agreement is held to be invalid or unenforceable, then such invalid or enforceable
provisions shall be severed, and the remaining provisions shall remain in full force and effect to the fullest extent permitted by
law.

Full Name: Russell Terry

Social Security Number:

Address:  Gilbert AZ

I have read, understand and agree to abide by this Agreement. *

Previous    Next                                              Save

**Company Links**    **Connect with us!**    **Contact Support**
Homepage                                     1-866-357-4358 ✉
My Apex
Important Notices Regarding Your
Employment
                                            Privacy Notice | © 2021 Sterling Talent Solutions

Exhibit N
page 66

# Update on Start Date

From   Mehak Delawalla <mdelawalla@apexsystems.com>

To      surfsol@protonmail.com

Date   Friday, October 8th, 2021 at 12:51 PM

Hi Russell!

Can you please give me a call when you get a chance at 310 382 0855?

Thanks!

Mehak

Sent from my iPhone

This e-mail communication (including any attachments) may contain confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

Exhibit P
page 68

**+1 310-382-0855** ⚙

Friday, October 8, 2021

12:58 PM
Missed call

+13103820855, 12:59 PM

Hi Russell it's Mehak

Just give me a call when you get a chance

Just wanted to get update from your on start date

1:44 PM
Call 4m 58s

Monday, October 11, 2021

12:05 PM
Missed call

+13103820855, 12:28 PM

Hi Russell! It's Mehak! So directv sent over the laptop to the Arizona address even though we told them to hold off. Is anyone there or trying to see if we can just have them hold the equipment at a FedEx local to the area. Please let me know

4:09 PM
Call 6s

4:10 PM
Call 1m 45s

## Re: 774926544400

| From | Mehak Delawalla <mdelawalla@apexsystems.com> |
|------|-----------------------------------------------|
| To   | surfsol@protonmail.com                        |
| Date | Tuesday, October 12th, 2021 at 9:57 AM        |

Ok will take time to get that requested so if I'm the meantime you can check and see with anyone in the neighborhood maybe if it's still there.

Sent from my iPhone

> On Oct 12, 2021, at 5:46 AM, surfsol <surfsol@protonmail.com> wrote:
>
> I am not sure about that.  I will try, but the best thing to do now, is to have fed ex go back out there and pick up the package where they left it.
>
> Sent with ProtonMail Secure Email.
>
> ------- Original Message -------
>
>> On Tuesday, October 12th, 2021 at 9:04 AM, Mehak Delawalla <mdelawalla@apexsystems.com> wrote:
>>
>> Yes they sent a laptop without requiring a signature. Is there any neighbors or anyone you can ask to see. It was definitely delivered
>>
>> Sent from my iPhone
>>
>>> On Oct 12, 2021, at 4:13 AM, surfsol surfsol@protonmail.com wrote:
>>>
>>> Hi,
>>>
>>> No one was at the house to receive the package. The only details on the website is that the package was delivered and did not require a signature. Are you sure they sent a laptop without requiring a signature?
>>>
>>> Sent with ProtonMail Secure Email.
>>>
>>> ------- Original Message -------
>>>
>>>> On Monday, October 11th, 2021 at 4:11 PM, Mehak Delawalla mdelawalla@apexsystems.com wrote:
>>>>
>>>> Tracking number: 774926544400
>>>>
>>>> Sent from my iPhone

Exhibit  Q
page 69

>>>> This e-mail communication (including any attachments) may contain confidential information intended solely



# RE: Please call - APEX?DIRECTV

| | |
|---|---|
| From | Mehak Delawalla <mdelawalla@apexsystems.com> |
| To | Kim Chu<kchu@apexsystems.com>, surfsol@protonmail.com |
| Date | Wednesday, October 13th, 2021 at 3:52 PM |

Russell,

What is the best window of time to schedule for pick up?

**Mehak Delawalla | Professional Recruiter | Apex Systems**

Mobile: 310-382-0855

---

**From:** Kim Chu <kchu@apexsystems.com>
**Sent:** Wednesday, October 13, 2021 11:29 AM
**To:** surfsol <surfsol@protonmail.com>
**Cc:** Mehak Delawalla <mdelawalla@apexsystems.com>
**Subject:** Re: Please call - APEX?DIRECTV

We can email her a shipping label to send everything back and schedule a UPS or FedEx pick up for her. She just needs to seal the package.

Sent from my iPhone

> On Oct 13, 2021, at 11:24 AM, surfsol <surfsol@protonmail.com> wrote:
>
>
> Kim,
>
>
> She is old and has health issues.
>
> What other information do you need in order to email her a shipping label??

Exhibit S
page 71

Sent with [ProtonMail](#) Secure Email.

------- Original Message -------
On Wednesday, October 13th, 2021 at 3:01 PM, Kim Chu <[kchu@apexsystems.com](#)> wrote:

> Is this your neighbor, can you please help contact them as well? She opened the package yesterday and seemed confused.
>
> Mehak – have you tried reaching Loujuana?
>
> **Kim Chu**
>
> Cell: 714-883-8527
>
> ---
>
> **From:** surfsol <[surfsol@protonmail.com](#)>
> **Sent:** Wednesday, October 13, 2021 10:59 AM
> **To:** Kim Chu <[kchu@apexsystems.com](#)>
> **Subject:** RE: Please call - APEX?DIRECTV
>
>     (phone redacted)
>
> Sent with [ProtonMail](#) Secure Email.
>
> ------- Original Message -------
> On Wednesday, October 13th, 2021 at 2:55 PM, Kim Chu <[kchu@apexsystems.com](#)> wrote:
>
>> Hi Russell,
>>
>> Loujuana has the laptop I believe, but we need it shipped back. Please assist with that. Do you have a phone number?
>>
>> Is that address your residence?
>>
>> Thank you!

Exhibit  S
page 72

Kim

**Kim Chu**

Cell: 714-883-8527

---

**From:** surfsol <surfsol@protonmail.com>
**Sent:** Wednesday, October 13, 2021 10:45 AM
**To:** Kim Chu <kchu@apexsystems.com>
**Subject:** Re: Please call - APEX?DIRECTV

Hi Kim,

When you make the label please email it to: loujuana1000@gmail.com

I am traveling at the moment.

I am not able to call at the moment.

Tracking # 774926544400

address:

████████████e Gilbert, AZ

Any additional info needed?

Sent with ProtonMail Secure Email.

Exhibit S
page 73

------- Original Message -------
On Wednesday, October 13th, 2021 at 2:41 PM, surfsol <surfsol@protonmail.com> wrote:

Hi Kim,

I am not able to call at the moment.

Tracking # 774926544400

address:

⬛⬛⬛E A⬛⬛⬛ Ave ⬛⬛⬛, AZ

Any additional info needed?

Sent with [ProtonMail](#) Secure Email.

------- Original Message -------
On Wednesday, October 13th, 2021 at 12:40 PM, Kim Chu <[kchu@apexsystems.com](#)> wrote:

> Hi Russell,
>
> I'm the Account Manager for DIRECTV. I need to talk to you directly. Can you please give me a call at 714-883-8527. I need some clarification on your address and the laptop that was shipped to you.
>
> Thank you!
>
> Kim
>
> **Kim Chu | Account Executive**
>
> **Apex Systems**
>
> 2100 East Grand Ave., Suite 525, El Segundo, California 90245
>
> Cell: 714-883-8527 | Office: 310-421-2384
>
> [kchu@apexsystems.com](#) | [www.apexsystems.com](#) | [Privacy Policy](#)
>
> <image001.png>

Exhibit S
page 74

## RE: Shipping Label for DirecTV

From  Kim Chu <kchu@apexsystems.com>
To     Mehak Dellavalla <mdellavalla@apexsystems.com>, loujuana1000@gmail.com
CC    surfxi8@protonmail.com
Date   Wednesday, October 13th, 2021 at 5:48 PM

Loujuana -- can you please confirm receipt of this shipping label by replying to this email.

Thanks!

Kim

**Kim Chu**

Cell: 714-883-6527

**From:** Mehak Dellavalla <mdellavalla@apexsystems.com>
**Sent:** Wednesday, October 13, 2021 12:39 PM
**To:** loujuana1000@gmail.com
**Cc:** surfxi8 <surfxi8@protonmail.com>; Kim Chu <kchu@apexsystems.com>
**Subject:** Shipping Label for DirecTV

Attached is the **UPS Shipping Label** for **Loujuana Terry**. Tracking information will be towards the bottom of this email. Kim will receive a confirmation email from UPS when the shipment has been delivered.

The contents inside should be protected using bubble wrap, or something similar, so they do not shift during transit.

The **shipping label** will need to be printed, folded in half, and adhered to the box.

**Tracking Information:**

Tracking Number: 1ZT16W8301954958O9
Pickup Request Number: 29CNJGIQ65C
Pickup Time: **Thursday 10/14, Between 8:00AM-12:00PM**
Pickup Location: Front Door, 3035 E Athena Ave, Gilbert AZ 85297

Service: UPS Next Day Air

You can check the Pickup Status here.

**Mehak Dellavalla | Professional Recruiter**

**Apex Systems**

Mobile: 310-382-0055 | Office: 315-421-2384

mdellavalla@apexsystems.com | www.apexsystems.com | Privacy Policy

Learn more about what sets us apart in the industry in our Year in Review

Connect with me on LinkedIn

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.**   Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.**   Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| MICHAELS STORE # 5701 | THE UPS STORE | CVS STORE # 1719 |
| 3771 S GILBERT RD | 3317 S HIGLEY RD | 7587 S POWER RD |
| GILBERT ,AZ 85297 | GILBERT ,AZ 85297 | QUEEN CREEK ,AZ 85142 |

FOLD HERE





Exhibit  V
page 77