1   Wendy Sugg (SBN 223335)
    Sugg Law Group, a Professional Corporation
2   384 Forest Ave., Suite 15
    Laguna Beach, CA 92651
3   Telephone:(949) 260-9548
    Email:    wendy@sugglaw.com
4

5   Attorneys for Defendants
    Apex Systems, LLC, AT&T Corp.,
6   DIRECTV, LLC, Mehak Delawalla,
    Kim Chu, John Goulding, Ian
7   Hafkenschiel and Daniel Salt

8

              UNITED STATES DISTRICT COURT

9

              CENTRAL DISTRICT OF CALIFORNIA

10

11

Russell J Terry             )  Case No. 2:23-cv-07707-FMO (JCx)
12                         )
         Plaintiff,        )
13                         )  **MEMORANDUM OF POINTS AND**
                         )  **AUTHORITIES IN SUPPORT OF**
14      v.                )  **DEFENDANTS' MOTION TO**
                         )  **DISMISS THE THIRD AMENDED**
15   Apex Systems, Inc., AT&T, DirectTV,  )  **COMPLAINT PURSUANT TO**
     Mehak Delawalla, Kim Chu, John    )  **FEDERAL RULE OF CIVIL**
16   Goulding, Oscar Montoya, Ian      )  **PROCEDURE 12(b)(2) AND 12(b)(6)**
     Hafkenschiel, Daniel Salt        )
17                         )
         Defendants.     )  DATE: January 18, 2024
18                         )  TIME: 10:00 a.m.
                         )  JUDGE: Hon. Fernando M. Olguin
19  _____ )  CTRM: 6D

20

21

22

23

24

25

26

27

28

_____
         MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    STATEMENT OF FACTS ......................................................................... 2

III.   THE COURT LACKS PERSONAL JURISDICTION OVER
       MR. SALT ................................................................................................. 5

IV.    PLAINTIFF FAILS TO STATE VIABLE CLAIMS FOR
       RELIEF ..................................................................................................... 7

       A.    Plaintiff Fails to State a Claim for Fraud ..................................... 8

             1.    Defendants' Representations Were Not False ...................... 8

             2.    Plaintiff Does Not Plead Justifiable Reliance ................... 10

             3.    There is No Causal Connection Between the
                   Alleged Intent and the Alleged Harm ................................ 11

       B.    The Complaint Does Not State a Claim for Intentional
             Infliction of Emotional Distress ................................................. 13

       C.    Plaintiff Fails to State a Claim for Negligent Infliction of
             Emotional Distress ..................................................................... 15

       D.    Plaintiff Fails to State a Claim for Stalking ............................... 16

       E.    Plaintiff Fails to State a Claim for Intrusion in Private
             Affairs ....................................................................................... 18

       F.    Plaintiff's Derivative Claims Fail .............................................. 20

V.     CONCLUSION ....................................................................................... 21

- i -

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ado Finance, AG v. McDonnell Douglas Corp.,*
    931 F. Supp. 711 (C.D. Cal. 1996) ........................................................... 5

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,*
    7 Cal. 4th 503 (1994) ............................................................................. 20

*Arei II Cases,*
    216 Cal. App. 4th 1004 (2013) ............................................................... 20

*Ashcroft v. Iqbal,*
    556 U.S. 663 (2009) ................................................................................. 8

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1988) ................................................................... 7

*Beckwith v. Dahl,*
    205 Cal. App. 4th 1039 (2012) ............................................................... 11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................. 7

*Calder v. Jones,*
    465 U.S. 783 (1984) .............................................................................. 5, 6

*Chang v. Lederman,*
    172 Cal. App. 4th 67 (2009) ................................................................... 13

*Choate v. County of Orange,*
    86 Cal. App. 4th 312 (2000) ................................................................... 20

*Christensen v. Superior Court,*
    54 Cal. 3d 868 (1991) ........................................................................ 13, 14

*Core-Vent Corp. v. Nobel Industries AB,*
    11 F.3d 1482 (9th Cir. 1993) ................................................................... 6

*David v. Kazal,*
    142 S.Ct. 1674 (2022) ............................................................................ 17

*Dole Food Co. Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) ................................................................... 5

*Dyer v. Northbrook Property & Casualty Inc. Co.*,
    210 Cal. App. 3d 1540 (1989) .................................................................. 21

*Foster v. U.S. Dep't of Justice*,
    No. 21-cv-2273 (RCL), Mem. Order at 2, ECF. No. 20 (D.D.C. June
    21, 2022) .................................................................................................. 21

*Gu v. BMW of North America*,
    132 Cal. App. 4th 195 (2005) ................................................................... 15

*Hernandez v. Hillsides Inc.*,
    47 Cal. 4th 272 (2009) ............................................................................. 19

*Hill v. National Collegiate Athletic Assn.*,
    7 Cal. 4th 1 (1994) ................................................................................... 19

*In re Estate of Young*,
    160 Cal. App. 4th 62 (2008) ....................................................................... 8

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................... 8

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) .................................................................................... 6

*Kidron v. Movie Acquisition Corp.*,
    40 Cal. App. 4th 1571 (1995) ................................................................... 20

*Lovejoy v. AT&T Corp.*,
    92 Cal. App. 4th 85 (2001) ....................................................................... 11

*Luna v. Kemira Specialty, Inc.*,
    575 F. Supp. 2d 1166 (C.D. Cal. 2008) ...................................................... 7

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) .................................................................... 7

*Mattel, Inc. v. Greiner & Hausser GmbH*,
    354 F.3d 857 (9th Cir. 2003) ...................................................................... 6

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ............................................................... 5

*Mezger v. Bick*,
  66 Cal. App. 5th 76 (2021) ............................................................... 18, 19

*Moncada v. West Coast Quartz Corp.*,
  221 Cal. App. 4th 768 (2013) ............................................................... 14

*OCM Principal Opportunities Fund v. CIBC World Markets Corp.*,
  157 Cal. App. 4th 835 (2007) ............................................................... 10

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................... 8

*People v. Pearson*,
  169 Cal. App. 3d 319 (1985) ........................................................... 16, 19

*Potter v. Firestone Tire & Rubber Co.*,
  6 Cal. 4th 965 (1993) ................................................................... 15, 16

*Quintero v. Weinkauf*,
  77 Cal. App. 5th 1 (2022) ............................................................... 18

*Small v. Fritz Companies, Inc.*,
  30 Cal. 4th 167 (2003) ................................................................... 11

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ......................................................... 7, 12

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ........................................................... 7

*Thunder Studios, Inc. v. Kazal*,
  13 F.4th 736 (9th Cir. 2021) ........................................................... 17

*Trerice v. Blue Cross of California*,
  209 Cal. App. 3d 878 (1989) ....................................................... 14, 15

*Unterberger v. Red Bull North America, Inc.*,
  162 Cal. App. 4th 414 (2008) ........................................................... 13

*Wong v. Tai Jing*,
  189 Cal. App. 4th 1354 (2010) ......................................................... 16

- iv -

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

**Statutes**

Cal. Civ. Code § 1708.7(a)(1) ................................................................. 16

Cal. Civ. Code § 1708.7(a)(2)(A) ........................................................... 16

Cal. Civ. Code § 1708.7(a)(2)(B) ........................................................... 16

Cal. Civ. Code § 1708.7(a)(3) ................................................................ 17

Fed. R. Civ. P. 9(b) ................................................................................. 8

# I.     INTRODUCTION

Plaintiff's Third Amended Complaint (the "Complaint") is based solely on speculation: Plaintiff believes Defendants contacted him about a job opportunity, engaged in an interview process, and made an employment offer so they could ask for his address as part of a targeted campaign of harassment of a man they had never met. Plaintiff presumes Defendants knew he would provide his parents' address in Arizona instead of his own in Brazil and then sent him a computer in anticipation of his employment as a ploy to either pressure Plaintiff to contact his parents or, alternatively, to harass his parents.

Plaintiff believes Defendants did this in retaliation for his testimony about law enforcement misconduct in another matter, though he alleges no connection between that testimony and Defendants or that Defendants were aware of this testimony. Plaintiff alleges that unnamed individuals previously harassed and retaliated against him for his law enforcement complaints and he believed those individuals would continue harassing him and his parents if he contacted his parents about the computer Defendants sent him.

The Complaint tells a rambling tale when the actual facts are simple: Plaintiff interviewed for a remote work position with Apex, falsely informed Apex that he lived in Arizona, received a job offer that was rescinded when Apex learned he did not live in the United States, and was asked to contact his parents to recover the company-provided laptop that was shipped to that address in anticipation of his hiring. None of these facts support the claims in the Complaint for fraud, conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, stalking, intrusion into private affairs, or vicarious liability. The Complaint is full of contradictory allegations that cannot support any claim for relief. Further, the Complaint provides no basis for jurisdiction over Defendant Daniel Salt, where neither Mr. Salt nor Plaintiff were in California and no actions

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

that Plaintiff complains of were directed at California. Defendants therefore respectfully ask the Court to dismiss the Complaint with prejudice.

## II.    STATEMENT OF FACTS

The Complaint lacks focus, attempts to connect random events, and ascribes intentions to parties with no factual support. Though Plaintiff's allegations should be viewed in the light most favorable to him on a motion to dismiss, there is no requirement to do so when the allegations consist of baseless conspiracy theories and lack any tether to reality.

Plaintiff's theory seems to be that Defendants engaged in a conspiracy concocted across three different companies to harass him because of prior law enforcement misconduct complaints he made to the Federal Bureau of Investigation between 2020 and 2022 that led to retaliation against him and his family. Third Amended Complaint ("TAC") ¶¶ 17-32. His family was allegedly distressed about the retaliation he faced, "prompting him to refrain from contacting his family to prevent further harassment, and heightening his anxiety pertaining to communication with his family…." TAC ¶ 22. Plaintiff does not allege that Defendants knew of the law enforcement complaints or the alleged retaliation, or that Defendants were involved in that retaliation. Plaintiff makes no connection at all between those prior events and Defendants' actions.

Similarly, Plaintiff alleges he testified about the retaliation he experienced for making the law enforcement complaints (TAC ¶ 28), but he does not – and cannot – allege that Defendants knew about this testimony. Nevertheless, he contends Defendants conspired to engage in fraud and wrongful conduct in retaliation for the testimony. TAC ¶ 101.

Despite the lack of any connection between these events, Plaintiff believes Defendants coordinated and conspired to retaliate against him for his testimony, seemingly because Defendants' alleged actions "share similar characteristics targeting the Plaintiff, his family and pursuit of employment" to other acts of

retaliation and harassment he allegedly suffered in 2020 and 2021 following his complaint of law enforcement misconduct." TAC ¶¶ 32, 101, 202.

Plaintiff asserts that Apex Systems, LLC, a services firm that hires temporary employees to provide services to its clients, used employee Mehak Delawalla to contact him in September 2021 about applying for a placement at DIRECTV, LLC. TAC ¶¶ 3, 33. Plaintiff applied for the job, took an applicant test to show his programming skills, and remotely interviewed for the position. *Id.* at ¶¶ 35, 37, 42. Apex offered Plaintiff the job after completion of the interview process. *Id.* at ¶¶ 54-55, Ex. L.

Apex asked Plaintiff for his address and social security number as part of the expected onboarding process. TAC ¶ 54. Plaintiff provided his social security number and his parents' address in Arizona instead of the address in Brazil where he lived. *Id.* at ¶ 54, Ex. K. Apex then sent Plaintiff an offer letter. *Id.* at ¶ 55, Ex., L. In response, Plaintiff stated "I am in Brazil right now. Do I need to be in the US to do this job?" *Id.* at ¶ 56, Ex. M. After learning he had to be in the U.S., Plaintiff responded "Ok, let me see how soon I can get back." Request for Judicial Notice ("RJN"), Ex. C; *see also* TAC ¶ 56.

On October 11, 2021, Apex told Plaintiff that a laptop was shipped to the Arizona address he provided in anticipation of the start of his employment. TAC ¶¶ 62, 63, Ex. P. No one was at the house to pick up the package when it was delivered. TAC, Ex. Q. Believing the laptop was outside the home and subject to theft, Apex asked Plaintiff if there were "any neighbors or anyone you can ask to see" if the laptop package was still at the door. *Id.*

Because Plaintiff did not live at that address and was not in the United States, different Apex and AT&T employees contacted Plaintiff to confirm someone had received the laptop and to coordinate its return. The allegations and exhibits to the Complaint show Defendants' efforts to recover the laptop once it was known Plaintiff provided an address that was not his. An Apex employee emailed Plaintiff

asking for clarification on the address. TAC, Ex. S. Plaintiff responded and voluntarily provided his mother's email address. *Id.* Apex asked for a phone number and Plaintiff provided one without identifying whose number it was. In response, Apex asked "Is this your neighbor, can you please help contact them as well? She opened the package yesterday and seemed confused." *Id.* Apex also asked Plaintiff about the best time to schedule pickup of the package. TAC at ¶ 76, Ex. S. The Complaint alleges no communications after the computer was picked up.

Despite the lack of any communication with Defendants after return of the laptop, Plaintiff alleges Defendants' actions were illegitimate. When Apex asked whether there was a neighbor who could verify whether the laptop was delivered, "Plaintiff realized that the entire interview process and job offer were interconnected" with alleged prior acts of retaliation and harassment by third parties. TAC ¶ 66. Plaintiff apparently believes Defendants made up a fake job position to lure him into interviewing for it, made a false offer of employment, and falsely told him they shipped a computer to him. He contends Defendants' communications about the package were a coordinated campaign of harassment and an attempt to force Plaintiff contact his parents. TAC ¶¶ 1, 69-77.

To establish the job was fake, he alleges the interviewers asked him to show competency in programming languages that were not on the initial job description he received, even though they were listed on the initial competency screening test he completed. TAC ¶¶ 34-36, 45-46, Ex. C. He further alleges the job offer was somehow fraudulent because it contained a typographic error and was sent directly to him, instead of through an Apex portal. TAC ¶¶ 60, 126-128, Ex. L. And he alleges Defendants falsely claimed they sent a computer – despite a third-party tracking number showing delivery of the package – and created a false sense of urgency for its return. TAC ¶ 142, Ex. Q.

Plaintiff's theory lacks any connection to the truth. In fact, the allegations made against Defendants are nearly identical to the allegations in Plaintiff's

August 20, 2023 complaint filed in the District of Columbia against the FBI and the Bureau of Consular Affairs, alleging defendants in that action threatened, stalked, extorted, and retaliated against him for reporting FBI misconduct. He alleged defendants "engaged in extreme and outrageous behavior by using unlawful tactics to threaten, stalk, and intimidate him." RJN, Ex. A at p. 7. He alleged the agencies intentionally inflicted emotional distress, including "substantial emotional distress, affecting daily life, well-being, and relationships … anxiety from death threats and retaliation, loss of personal companionship, damage to reputation, financial losses, ongoing emotional trauma, fear of law enforcement retaliation and hindrances to personal and professional pursuits." RJN, Ex. A at pp. 7, 27.

On September 12, 2023, the court dismissed those claims *sua sponte* because his claims were fundamentally fanciful. RJN, Ex. B at p. 2. The court noted that "Plaintiff blame[d] every bad thing that has happened to him over the last 20 years on the U.S. government officials or agents …including …his issues obtaining employment…" *Id.* at p. 3. Plaintiff filed this action less than a month later. As with his complaint against government agencies, the Complaint in this action is fanciful and fails to state a viable claim for relief.

## III.    THE COURT LACKS PERSONAL JURISDICTION OVER MR. SALT

"Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate." *Dole Food Co. Inc. v Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). The Court may consider affidavits and may not assume the truth of allegations contradicted by affidavit. *Ado Finance, AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 714 (C.D. Cal. 1996); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

A Court may have personal jurisdiction over a defendant in any State with which the defendant has minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Calder v.*

*Jones*, 465 U.S. 783, 788 (1984). "'[S]pecific' jurisdiction exists if (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 863 (9th Cir. 2003) *quoting Bancroft Masters v. Augusta Nat'l Inc*., 223 F.3d 1082, 1086 (9th Cir. 2000) *overruled on other grounds*.

Personal jurisdiction over a corporation does not necessarily create personal jurisdiction over the corporation's employees. *See Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 n.13 (1984) ("jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him"); *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 n.3 (9th Cir. 1993) quoting *Keeton*. "Each defendant's contacts with the forum State must be assessed individually." *Calder*, 465 U.S. at 790.

Mr. Salt does not have sufficient contacts with California to subject him to jurisdiction in California. Plaintiff alleges that Mr. Salt resides in Florida and contends the Court has jurisdiction over him "due to his employment at the time of the incident at AT&T and DirecTV 2240 E. Imperial Hwy, El Segundo, CA 90245…." TAC ¶ 13. However, Mr. Salt did not work in California. Declaration of Daniel Salt ("Salt Decl.") ¶¶ 3, 6. At all relevant times, he worked in, and from, Florida. *Id.*

Plaintiff further contends the Court has jurisdiction over Mr. Salt because "he had an effect on the California companies that he represented." TAC ¶ 13. Mr. Salt's only alleged conduct is his participation in Plaintiff's remote interview. *Id.* ¶¶ 37, 42, Ex. D. Mr. Salt participated in the remote interview from Florida, and Plaintiff participated in the interview from Brazil. Salt Decl. ¶ 4; *see* TAC ¶¶ 14, 37.

Mr. Salt has performed no act in California and has no connection to California. Plaintiff cannot establish personal jurisdiction and cannot allege facts

that establish this Court's jurisdiction. Defendants respectfully ask the Court to dismiss Mr. Salt from this action with prejudice.

## IV.   PLAINTIFF FAILS TO STATE VIABLE CLAIMS FOR RELIEF

A motion to dismiss for failure to state a claim may be based on either (1) the "lack of a cognizable legal theory" or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). On a motion to dismiss, the Court may consider allegations in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

In considering whether to dismiss a complaint under Rule 12(b)(6), the Court must only accept the plaintiff's non-conclusory allegations and view them in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Conclusory allegations need not be considered because they are insufficient as a matter of law. *See Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009). Similarly, the "court need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[W]here a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1175 (C.D. Cal. 2008) *citing Thompson v. Illinois Dep't of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002).

Factual allegations are not enough to support a claim for relief where they do not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft*, 556 U.S. at 678 (citations omitted).

## A.     Plaintiff Fails to State a Claim for Fraud

Under California law, a claim of fraud must state the following elements: "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *In re Estate of Young*, 160 Cal. App. 4th 62, 79 (2008) *quoting Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (internal quotation marks omitted).

Federal Rule of Civil Procedure, Rule 9(b)'s requirement that allegations of fraud be pled with particularity applies to state-law causes of action before a federal court. *Oestreicher v. Alienware Corp*., 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008); Fed. R. Civ. P. 9(b) ("a party must state with particularity the circumstances constituting fraud or mistake"). Rule 9(b) serves three purposes: (1) to give defendants adequate notice to let them defend the charge and deter plaintiffs from filing complaints "as a pretext for the discovery of unknown wrongs"; (2) to protect those whose reputation would be harmed because of being subject to fraud charges; and (3) "to prohibit plaintiff from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis" *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009).

### 1.     Defendants' Representations Were Not False

Plaintiff alleges three false representations by Defendants: (1) that they were interviewing him for a job position (TAC ¶¶ 105, 108, 111, 150); (2) that he was offered the position (TAC ¶¶ 124, 126, 132, 150); and (3) that they shipped a laptop

to the address he provided and needed help with its return (TAC ¶¶ 140, 150). The Complaint and its attachments instead show that each representation was true.

An Apex recruiter contacted Plaintiff about a possible job opening and told Plaintiff to contact her if he was interested in applying for the position. TAC ¶ 33, Ex. B. Plaintiff replied he was interested and received an application test including a "bonus" request for programming in Kotlin or Objective C. TAC, Ex. C. Plaintiff now contends the job position was fake because those "bonus" programming languages were not included in the initial job description. TAC ¶¶ 34-36, 43-53. He further alleges that the position was fake because two of the interviewer's LinkedIn profiles do not list a project with some of the skills mentioned in the job description he received. TAC ¶¶ 106, 113, Ex. V. These allegations do not plausibly provide a basis to conclude that the position he interviewed for did not exist.

The Complaint and its exhibits contradict Plaintiff's speculation that the job offer was fraudulent. Plaintiff admits he was emailed an offer letter and attaches the job offer he received from Apex. TAC ¶ 55, Ex. L. Plaintiff also attaches various communications as exhibits to the Complaint showing Plaintiff confirmed receipt of the employment offer, Defendants told Plaintiff to let them know if he did not receive the required documents, and they asked about Plaintiff's possible start dates. TAC ¶ 61, Exs., M, O, P. Plaintiff speculates that the job offer was fraudulent because it had a typographical error and because it was sent to him directly instead of through an Apex portal. TAC ¶¶ 55, 60, 126, 127. He contends Defendants created an account for him in their system (instead of having him create an account) and sent him a confidentiality agreement "to deceive him into believing he had been offered a job." TAC ¶ 129-132. But his allegations are speculative and do not support a conclusion that the offer was fraudulent.

Plaintiff provides no basis for his assertion that Defendants "falsely claimed that [] AT&T/DirecTV had sent a company laptop to the Plaintiff's parent's home [] and created a false sense of urgency for its return once the package arrived." TAC

¶ 140. Exhibit Q shows Apex gave Plaintiff a tracking number for the package, and Plaintiff looked up the shipping and delivery details. Plaintiff reviewed the tracking details which he stated showed "the package was delivered and did not require a signature." TAC, Ex. Q. Plaintiff does not allege that a third-party tracking number was fraudulent or contained false information.

Plaintiff's allegations do not support a claim that Defendants made any false representations. Nor does Plaintiff allege that Defendants knew any of their statements were false. Accordingly, Plaintiff cannot state a claim for fraud because he cannot allege the existence of any false statements.

### 2. Plaintiff Does Not Plead Justifiable Reliance

To the extent Plaintiff's fraud claim is based on alleged representations that Defendants shipped a laptop and sought its retrieval, Plaintiff cannot plead actual reliance. A fraud claim requires that the plaintiff actually believed and relied on defendants' assertions. "A plaintiff asserting fraud by misrepresentation is obliged to plead and prove actual reliance," a component of 'justifiable reliance. *OCM Principal Opportunities Fund v. CIBC World Markets Corp*., 157 Cal. App. 4th 835, 864 (2007). Plaintiff must plead that he actually relied on Defendants' misrepresentations and that he was reasonable in doing so. *Id.* at 863.

Here, Plaintiff alleges that he suspected Defendants' statements were false, stating "On October 12th, the Plaintiff questions Mehak in (Exhibit Q) if AT&T would ship a laptop without requiring a signature." TAC ¶ 64. When Ms. Delawalla confirmed the laptop was sent and asked whether there was a neighbor who could verify its delivery, he asserts "[t]hat's when the Plaintiff realized" the alleged fraud. TAC ¶ 66. Rather than relying on the alleged false statements, Plaintiff pleads that he knew the statements were false but was "forced" to help return the laptop – by providing an email address for the person who lived at the address he misrepresented as his own – "because he realized the interview process and job offer were fraudulent with the intent to harass him and his family." *Id.* "Plaintiff

- 10 -

understood he had been set up …" so he gave Defendants his mother's contact information. TAC ¶ 69. Even though Plaintiff alleges he believed the statements were false and believed Defendants intended to harass him and his mother, he provided her contact information to facilitate the alleged harassment. These allegations preclude him from alleging a viable fraud claim because he admits he knew the statements were false and nevertheless took action. Plaintiff has amended his Complaint three times; as Plaintiff does not and cannot plead the necessary elements, Defendants ask the Court to dismiss the fraud claim with prejudice.

### 3. There is No Causal Connection Between the Alleged Intent and the Alleged Harm

Plaintiff need only plead an intent to induce reliance. *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93 (2001). But a "complete causal relationship between the fraud or deceit and the plaintiff's damages is required." *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 202 (2003) (citations and quotations omitted). Here, Plaintiff does not, and cannot, allege a causal relationship between Defendants' alleged fraudulent intent and the alleged harm.

Plaintiff alleges that Defendants' actions were intended to excite him about the prospect of employment, "compel[] him to invest an extensive amount of time and effort in preparing for interviews and completing assignments" (TAC ¶ 152) and induce him to provide his social security number and address so Defendants could create "an alarming situation to coerce the Plaintiff to communicate with his parents." TAC ¶ 149; *see also* TAC ¶¶ 122-123. He alleges Defendants' "true intent was to inflict emotional distress on the Plaintiff and his family." TAC ¶¶ 99, 177.

Plaintiff cannot bring a claim for alleged harm or emotional distress to his family. *See Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1064 (2012) (fraud plaintiff must "allege *his* damages were caused by the actions he took in reliance on the defendant's misrepresentations") (emphasis added). Plaintiff's allegations and theories also cannot be taken at face value, as he has filed contradictory pleadings

about the Defendants' alleged intent. *Sprewell*, 266 F.3d at 988 (the "court need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.") For example, in his Request for Court Order to Preserve and Release Electronically Stored Data, he states that he is accusing Defendants of "sending false alarms to get [him] to contact [his] family." RJN, Ex. F. Here, Plaintiff alleges that Defendants intended to inflict emotional distress on him and his family.

For all of Plaintiff's theories, there is no casual connection between Defendants' conduct, or alleged intent to acquire contact information, and the alleged harm. First, merely being excited about prospective employment and engaging in an interview process cannot support damages for fraud. Second, Plaintiff alleges no harm to him from providing his social security number and does not allege that Defendants did anything with that information. Third, the alleged harm was caused by Plaintiff providing his parents' address as his own and his fear of contacting his parents, both of which were unknown to Defendants.

Plaintiff's theory that Defendants induced him to apply for a job so they could ship his parents a package and ask him to contact his parents, or contact his parents themselves, requires that Defendants knew these key facts: (1) Plaintiff made complaints about law enforcement misconduct; (2) Defendants knew Plaintiff testified about law enforcement harassment in 2021; (3) Plaintiff would participate in the interview process; (4) Plaintiff did not live in the United States; (5) Plaintiff would falsely represent he lived in the United States; (6) Plaintiff would falsely provide his parents' address as his own; (7) Plaintiff would find a request to contact his parents as harassing; and (8) Plaintiff would find communications to his parents about a package delivered to their address to be harassing. But the TAC fails to allege Defendants knew any of these facts.

As a result, Plaintiff cannot establish a causal connection between the alleged misrepresentations, an intent to deceive, and any harm to Plaintiff. The alleged harm

was caused by the fact that Plaintiff provided his parents' address instead of his own during the application process. Thus, Plaintiff cannot state a viable fraud claim.

## B.     The Complaint Does Not State a Claim for Intentional Infliction of Emotional Distress

As with Plaintiff's fraud claim, his cause of action for intentional infliction of emotional distress fails to state a claim. Plaintiff must plausibly allege Defendants intentionally or recklessly caused severe emotional distress by extreme and outrageous conduct. *See Unterberger v. Red Bull North America, Inc*., 162 Cal. App. 4th 414 (2008). To support such a claim, a plaintiff must allege: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe or extreme emotional distress by the plaintiff; and (3) the plaintiff's emotional distress is actually and proximately the result of defendant's outrageous conduct. *See Chang v. Lederman*, 172 Cal. App. 4th 67, 86 (2009). The conduct must be so outrageous or extreme that it exceeds all bounds of conduct tolerated in a civilized community. *See Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). And the conduct must be directed to the Plaintiff or occur in his presence; it cannot be based on Defendants' communications with his family. *Id.* Here, the alleged conduct is neither extreme nor outrageous: Defendants interacted with Plaintiff about a possible job. They lacked any knowledge or indication that their actions would cause Plaintiff to suffer harm, and the alleged conduct was not the cause Plaintiff's alleged harm.

Plaintiff contends that Defendants engaged in extreme and outrageous conduct by "mak[ing] the Plaintiff think he was close to securing a job, only then to put him in a situation of fear for his parents' safety and well-being, as well as his ability to pursue employment," presenting allegedly deceptive paperwork regarding the job offer, and "intentional harassment of the Plaintiff and his mother." TAC

¶¶ 175, 176. However, the Complaint does not plausibly allege Defendants engaged in that conduct.

Defendants' alleged conduct – interviewing Plaintiff for a position, offering him the job, mailing a computer, and asking for his help in returning the shipment when Defendants learned that he provided false information about his residence – is neither extreme nor outrageous. For example, in *Trerice v. Blue Cross of California*, the plaintiff accused the defendants of "presenting [plaintiff] with a termination package which she accepted, (2) withdrawing that package the following day and telling [plaintiff] that she was still employed, (3) 7 days later telling [plaintiff] that her position would, in fact be eliminated effective in 30 days, (4) providing [plaintiff] with a termination package which was less advantageous than that which she had previously been offered, and (5) 'forcing' [plaintiff] to work during her last 30 days as a receptionist, answer phones and assist secretaries who had previously been of a lower rank." 209 Cal. App. 3d 878, 883-884 (1989). The court held that defendants' alleged conduct "certainly does not qualify as the kind of 'outrageous' conduct necessary in order to support an action for intentional infliction of emotional distress." *Id.* Similarly, allegations that defendants misled plaintiffs into believing they would be compensated in an amount that would let them retire if they continued to work for the defendants until the company was sold was not extreme or outrageous conduct sufficient to support a claim for intentional infliction of emotional distress. *Moncada v. West Coast Quartz Corp.*, 221 Cal. App. 4th 768, 780-781 (2013). Similarly, the alleged conduct here does not rise to the level of being so outrageous or extreme that it exceeds all bounds of conduct tolerated in a civilized community.

Plaintiff fails to plead the conduct was "intended to inflict injury or engaged in with the realization that injury will result" because the Complaint does not allege Defendants knew Plaintiff initially provided his parents' address or that contacting his parents would cause him emotional distress. *Christensen*, 54 Cal. 3d at 903

*quoting Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982). Moreover, Defendants' alleged conduct must be the actual and proximate cause of Plaintiff's severe emotional distress. *Trerice,* 209 Cal. App. 3d at 883. Here, Plaintiff's similar claims against the FBI prevent him from alleging that Defendants' conduct caused his emotional distress. In his claims against the FBI, he accused the FBI and Consular Affairs of intentionally causing him "severe emotional distress" including "substantial emotional distress, affecting daily life, well-being, and relationships … including anxiety from death threats and retaliation, loss of personal companionship, damage to reputation, financial losses, ongoing emotional trauma, fear of law enforcement retaliation and hindrances to personal and professional pursuits." RJN, Ex. A at p. 7. He simultaneously alleges Defendants' actions caused similar or the same damages, including emotional distress, lost wages, reluctance to seek employment, and fear of harassment from contacting his family. TAC ¶¶ 153-171.

Plaintiff's intentional infliction of emotional distress claim cannot proceed because Defendants' actions were neither extreme nor outrageous, were based on false representations made by Plaintiff, and contradict Plaintiff's allegations that governmental agencies caused his alleged injuries.

## C.   Plaintiff Fails to State a Claim for Negligent Infliction of Emotional Distress

Similarly, Plaintiff fails to state a claim for alleged negligent infliction of emotional distress. Although there is no independent tort of negligent infliction of emotional distress, California recognizes a right to recover damages in a negligence action for serious emotional distress. *Gu v. BMW of North America*, 132 Cal. App. 4th 195, 204 (2005). Since the tort is negligence, duty is an essential element. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993). However, there is no duty to avoid negligently causing emotional distress to another. *Id.* Therefore, "unless the defendant assumed a duty to plaintiff in which the emotional distress of the plaintiff is an object, recovery is available only if the emotional distress arises

out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." *Id.* at 985. The requisite duty "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Potter*, 6 Cal. 4th at 985.

Defendants did not assume a duty to Plaintiff. Plaintiff alleges Defendants breached a duty to conduct a professional hiring process and to protect his private data. TAC ¶¶ 256-257, 260. These allegations are insufficient because there is no actionable duty to conduct a hiring process "professionally," Plaintiff voluntarily provided his address to Defendants during that process, and "a person has no legitimate expectation of privacy in information voluntarily disclosed." *People v. Pearson*, 169 Cal. App. 3d 319, 323 (1985).

Further, "to recover damages for emotional distress on a claim of negligence where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was 'serious.'" *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1377 (2010). "[S]erious emotional distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Id.* at 1377-78. Here, Plaintiff's allegations that he suffered severe emotional distress because of Defendants' recruitment process and shipment of a computer cannot meet this standard. Thus, Plaintiff does not, and cannot, state a cause of action for negligent infliction of emotional distress.

### D.   Plaintiff Fails to State a Claim for Stalking

A defendant commits the tort of stalking by "engag[ing] in a pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass the plaintiff." Cal. Civ. Code § 1708.7(a)(1). The pattern of conduct must lead the plaintiff either to "reasonably fear[ ]" for his own safety or that of an immediate family member, or to "suffer substantial emotional distress" when a *reasonable person* would also suffer substantial emotional distress. *Id.* § 1708.7(a)(2)(A), (B).

The pattern of conduct must include a credible threat and the intent to put the plaintiff in *reasonable* fear for his safety or the safety of an immediate family member or reckless disregard for the safety of the plaintiff or an immediate family member. *Id.* § 1708.7(a)(3). Plaintiff must have "on at least one occasion, clearly and definitively demanded that the defendant cease and abate his or her pattern of conduct" unless "exigent circumstances" make it impractical or unsafe for the plaintiff to communicate that demand, and defendant must have persisted in the conduct. *Id.*

The statute proscribes only conduct occurring in California. *Thunder Studios, Inc. v. Kazal* (9th Cir. 2021) 13 F.4th 736, 743, cert. denied sub nom. *David v. Kazal* (2022) 142 S.Ct. 1674. Here, there is little to no conduct alleged in California. Plaintiff was in Brazil and his parents' home was in Arizona. The only connection to California is that Defendants Delawalla, Montoya, and Chu were allegedly employed in California when they contacted Plaintiff about the position and retrieving the package sent to him. *See* TAC ¶¶ 4, 5, 8, 14, 211-212, 218, 220. There is insufficient conduct in California to support a claim for stalking.

Plaintiff also fails to allege any threats – let alone credible threats – that would put a reasonable person in fear for their safety or the safety of their family members. Plaintiff alleges Defendants shipped a laptop to him based on his representation he was in Arizona and asked for his help with coordinating its return. TAC ¶¶ 217-220. Instead of alleging any threat by Defendants, he alleges that actions by third parties caused his fear: "Due to threats and recent events of harassment directed at the Plaintiff and his family [regarding his law enforcement misconduct complaints], including an attempt to run the Plaintiff over, and a drug-induced robbery," Plaintiff feared for the safety of his parents if he did not respond to Defendants' communications. TAC ¶¶ 222-223. Third-party actions cannot support a claim against Defendants.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Even if Defendants' communications could create a "pattern of conduct" falling within the statute, Plaintiff made no request to Defendants asking them to cease communications or stop the alleged conduct. He only alleges that he "explicitly informed Mehak he would seek job opportunities within his skill set [but Defendants] persisted in capturing his interests by leading him to believe he was a viable candidate and close to securing the position." TAC ¶ 228. The communication he references – "If you come across any React, React-Native and or Node.js opportunities. Please let me know" – cannot be construed as a request to cease communication or stop any conduct. TAC ¶ 228, Ex. F.

Plaintiff does not and cannot allege "exigent circumstances" made it unsafe for him to demand Defendants stop any conduct. Exigent circumstances are those that make a demand to stop conduct "impractical or unsafe," such as when a deadly weapon is being shot at a person or the building they work in. *Quintero v. Weinkauf*, 77 Cal. App. 5th 1, 5 (2022), *as modified on denial of reh'g* (Apr. 1, 2022). Plaintiff alleges only that if he "accused them of harassing his parents, demanded they stop or did not assist them, the situation would have gotten much worse considering the threats, harassment and previous acts of violence that occurred within the past year." TAC ¶ 230. His speculation that Defendants' communications would have "gotten much worse" based on unrelated prior conduct by a third party cannot relieve him of the duty to demand that Defendants cease communications.

Defendants made no threats to Plaintiff, took no actions that would create a credible threat, and Plaintiff did not ask Defendants to stop their conduct. Thus, Plaintiff cannot maintain a stalking cause of action.

### E.   Plaintiff Fails to State a Claim for Intrusion in Private Affairs

A common law invasion of privacy claim requires a plaintiff to plead "intrusion into a private place, conversation, or matter, in a manner highly offensive to a reasonable person." *Mezger v. Bick*, 66 Cal. App. 5th 76, 86 (2021). First, Plaintiff must plead a legally protected privacy interest, which includes interests

such as "conducting personal activities without observation, intrusion, or interference" as determined by social norms, common law, and statutes. *Hill v. National Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (1994); *Hernandez v. Hillsides Inc.*, 47 Cal. 4th 272, 287 (2009). Second, plaintiff's expectations of privacy must be reasonable. *Hernandez*, 47 Cal. 4th at 287 (2009). Third, the alleged invasion of privacy must have been highly offensive. In determining the existence of "offensiveness," one must consider: "(1) the degree of intrusion; (2) the context, conduct and circumstances surrounding the intrusion; (3) the intruder's motives and objectives; (4) the setting into which the intrusion occurs; and (5) the expectations of those whose privacy is invaded." *Id. quoting Sanchez-Scott v. Alza Pharms.*, 86 Cal. App. 4th 365, 377 (2001). "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37. The impact on the plaintiff's privacy rights must be more than "slight or trivial." *Id.*

Plaintiff alleges Defendants intruded into his privacy by obtaining his address and/or his parents' address. TAC ¶¶ 232-233. But Plaintiff fails to allege that he has a privacy interest in the address, which was not his. He does not allege that he took any action to keep the information private or out of the public record. In fact, Plaintiff included the address multiple times in his action, which is a matter of public record. RJN Exs. D, E.

He cannot allege a reasonable expectation in the privacy of the address with respect to Defendants because he voluntarily disclosed the address to them when they asked for it. TAC ¶ 54; *Pearson*, 169 Cal. App. 3d 319, 323. Defendants did not wrongfully or intrusively obtain the information and did not obtain the information in highly offensive manner. *Mezger*, 66 Cal. App. 5th at 86.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Plaintiff's claim for intrusion into private affairs therefore fails because Plaintiff does not allege the privacy of his address and does not allege an intrusion into his private information – let alone a highly offensive intrusion.

### F.   Plaintiff's Derivative Claims Fail

Plaintiff also asserts causes of action for conspiracy and vicarious liability. Both are derivative of Plaintiff's other claims and allegations. Because Plaintiff cannot maintain the underlying causes of action, these claims also fail.

Conspiracy is not a standalone cause of action; it is a legal mechanism to hold multiple defendants liable for another legal violation. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–511 (1994). A civil conspiracy "must be activated by the commission of an actual tort." *Id.* at 511. Plaintiff seeks to allege a conspiracy to commit fraud and intentional infliction of emotional distress, but the Complaint fails to state a cause of action for either underlying claim.

Even if the Complaint stated an underlying claim, Plaintiff must allege the following elements to state a conspiracy: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581(1995); *see also Applied Equipment*, 7 Cal. 4th at 511. Plaintiff "must show that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it. [Citation.] It is not enough that the [conspirators] knew of an intended wrongful act, they must agree—expressly or tacitly—to achieve it." *Choate v. County of Orange*, 86 Cal. App. 4th 312, 333 (2000). Bare allegations and rank conjecture are not enough. *Arei II Cases*, 216 Cal. App. 4th 1004, 1021-22 (2013). The alleged conspiracy here – Defendants somehow conspired with the government in a years long campaign of targeted harassment – lacks any basis and has already been dismissed by one court as fanciful.

Further, "where no underlying cause of action exists, no vicarious liability can exist either." *Dyer v. Northbrook Property & Casualty Ins. Co*., 210 Cal. App. 3d 1540, 1553 (1989). Because Plaintiff does not sufficiently plead underlying wrongs, the claim for vicarious liability also fails.

## V.    CONCLUSION

The Complaint consists of baseless and speculative allegations of a conspiracy to harass and retaliate against Plaintiff for unrelated law enforcement complaints unknown to Defendants. Plaintiff's previous complaint against government agencies was dismissed *sua sponte* because of its fanciful and baseless allegations. Here, too, Plaintiff's theory of being targeted and wronged is speculative and tenuous. Plaintiff cannot transform his speculations into viable claims against Defendants where he lacks any facts supporting his allegations. *See Foster v. U.S. Dep't of Justice*, No. 21-cv-2273 (RCL), Mem. Order at 2, ECF No. 20 (D.D.C. June 21, 2022) (dismissing complaint where plaintiff failed to "tie his allegations . . . to an actual claim against any one of the defendants . . . [,] let alone one that entitles him to relief"). Thus, Defendants respectfully request the Court to dismiss this action with prejudice.

Dated:  December 14, 2023                    SUGG LAW GROUP

By:            */s/ Wendy Sugg*
Wendy Sugg
Attorneys for Defendants
Apex Systems, Inc., AT&T Corp.,
DirecTV, LLC, Mehak Delawalla,
Kim Chu, John Goulding, Ian
Hafkenschiel and Daniel Salt

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,949 words, which complies with the word limit of L.R. 11-6.1.

Dated:  December 14, 2023                    SUGG LAW GROUP


                                             By:_____/s/ Wendy Sugg_____
                                                Wendy Sugg
                                                Attorneys for Defendants
                                                Apex Systems, LLC, AT&T Corp.,
                                                DIRECTV, LLC, Mehak Delawalla,
                                                Kim Chu, John Goulding, Ian
                                                Hafkenschiel and Daniel Salt