FILED
CLERK, U.S. DISTRICT COURT

12/28/23

CENTRAL DISTRICT OF CALIFORNIA
BY: CS          DEPUTY

Name: Russell J Terry

Address: 1717 N Street NW STE 1

Washington, DC 20036

Phone number: 720-603-1872

Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Russell J Terry,<br><br>            Plaintiff,<br><br>      vs.<br><br>Apex Systems, LLC, AT&T, DirecTV, LLC, Mehak Delawalla, Kim Chu, John Goulding, Oscar Montoya, Ian Hafkenschiel, Daniel Salt<br><br>            Defendants. | Case No.: CV23-7707-FMO(JCx)<br><br>**MEMORANDUM AND POINTS OF AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date: January 18, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Fernando M. Olguin<br>Courtroom: 6D |

# MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO

# DEFENDANTS' MOTION TO DISMISS

i

Insert Title of Pleading

# TABLE OF CONTENTS

INTRODUCTION ……………………………………………...…….. 1

FACTUAL BACKGROUND …………………………………………1

PERSONAL JURISDICTION OVER MR. SALT ……………………... 4

CLAIMS FOR RELIEF …………………………………………....… 5

   A. Fraud ………………………………………………………..… 5

     1.  Defendant's Representations Were False …………………… 5

     2.  Justifiable Reliance ……………………………………… 10

     3.  Connect Between Alleged Intent and the Alleged Harm ……..11

   B. Intentional Infliction of Emotional Distress …………………………12

   C. Stalking ……………………………………………………... 15

   D. Intrusion in Private Affairs ……………………………………..18

   E. Derivative Claims …………………………………………….19

CONCLUSION ……………………………………………..… 20

# TABLE OF AUTHORITIES

Cases

Choate v. County of Orange ……………………………………………19

*Diamond Multimedia Sys., Inc. v. Superior Ct*..……………………………. 16

Fletcher v. Western Life Insurance Co. (1970) 10 Cal.App.3d 376 ………… 13

International Shoe Co. v. Washington*, 326 U. S. 310, 326 U. S. 316 ……….. 5

Manzarek v. Marine, 519 F.3d 1025, 1031 (9th Cir. 2008) ………………   2, 5

*Shaffer v. Heitner,* 433 U. S. 186, 433 U. S. 204. P. 465 U. S. 788 …………. 5

Tenet Healthsystem Desert, Inc. v. Blue Cross of California (2016) 245….…. 9

*Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021) …………..16

Wyatt v. Union Mortgage Co., ………………………………………… 20

Warren v. Fox Family World-wide, Inc., 328 F.3d 1136 (9th Cir. 2003)…….. 2

Statutes:

California Civil Code 1708.7 ………………………………………… 16, 17

Cal. Civil Procedure 9(b) …………………………..……………………   11

Abbreviations:

DMPA = Defenses Memorandum of Points and Authorities

PD = Plaintiff's Declaration

TAC = Third Amended Complaint

Insert Title of Pleading

**INTRODUCTION**: This motion firmly opposes the Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), contending that it is predicated on bad faith and characterized by intentional misrepresentation of the Plaintiff's allegations while insulting the Plaintiff by stating he facilitated the harassment of his mother. The defense's motion to dismiss, through Defendant Mr. Salt's personal declaration, reveals that he falsely represented himself as an AT&T employee, conspiring with his colleagues from Apex Systems.  While the grounds for dismissal under rule 12(b)(6) relies on intentional misrepresentations of the Plaintiff's factual allegations and evidence, rendering the motion to dismiss inherently frivolous.

## I.  Factual Background

**Defense Council unwilling to discuss Allegations and Evidence:** During the initial meet and confer call, the defense counsel explicitly stated they would not discuss the specifics of the case.

On November 24th, the Defendants filed a motion to dismiss that significantly misrepresented the Plaintiff's allegations and evidence.  The week of December 4th the Plaintiff attempts to clarify the factual basis used in the motion to dismiss but the defense counsel refused to engage in discussion until discovery. (PD #1) The Plaintiff also made comments correcting the defense's analysis of the facts and allegations to set the record straight, but the defense would not engage in conversation.  The defense then claims to have attempted to call the Plaintiff, however, no messages or missed calls were received from the defense (PD #3).

On December 14th, the defense counsel filed a new motion to dismiss, maintaining the erroneous facts and omission of key allegations.  The same allegations the Plaintiff inquired about the week of December 4th.

**Statement of Facts**: The defense wrote, "actual facts are simple: Plaintiff interviewed for a remote work position with Apex, falsely informed Apex that he

1

lived in Arizona, received a job offer that was rescinded when Apex learned he did not live in the United States, and was asked to contact his parents to recover the company-provided laptop that was shipped to that address in anticipation of his hiring." (DMPA page 1 lines 17 - 22)

The week of December 4th the Plaintiff communicated with the defense council that these facts contradict the allegations and the evidence. First, the Plaintiff alleged the interview was a fraud and not a genuine interview for the React Native position.  Also, the Plaintiff did not falsely inform Ms. Delawalla he lived in Arizona.  Ms. Delawalla informed him the job was remote and requested an address to put on the contract, as shown in (TAC Ex. K), email titled "Address for Contract."  Then on October 1st, Exhibit M, Plaintiff informs he is in Brazil, Ms. Delawalla checks to see if the VPN works in Brazil, so that he could work from Brazil.  The defense implys the defendants did not realize he was not living in Arizona when they sent the laptop, which clearly contradicts (TAC Exhibit P). Exhibit P is a message from Ms. Delawalla, she informs the Plaintiff that DirecTV shipped a laptop when she told them to hold off, and she wanted someone to take the laptop to a FedEx location to have it returned, proving Ms. Delawalla knew the Plaintiff was not in Arizona, she made no effort to stop the delivery of the laptop by calling FedEx and began alarming the Plaintiff.   The defense then finishes with an implausible statement, that DirecTV shipped a laptop in anticipation of hiring. No company would ship a laptop, with proprietary software to someone who had not provided identification, nor completed any steps in the hiring process.

The defense, completely aware they have made false statements regarding the Plaintiff's allegation, concludes, "None of these facts support the claims in the Complaint for fraud, conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, stalking, intrusion into private affairs, or vicarious liability."  (DMPA page 1 lines 22-24).

Despite the Plaintiff pointing out these misrepresentations the week of December 4th, December 15th and 19th, the defense counsel declined to withdraw their motion. (PD #1 and #2) Therefore, the foundation of the motion to dismiss under Rule 12(b)(6) is not built on the Plaintiff's allegations nor is it supported by any substantive evidence that the Plaintiff's allegations and evidence is conclusory, rendering the motion to dismiss frivolous.

**No evidence of Conclusory Allegations:** The defense maintained the position that the court is not obliged to assign value to conclusory allegations mentioning they have supplied judicial notices to support the facts.

Based on precedent, the court need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint. Warren v. Fox Family World-wide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003)" Manzarek v. Marine, 519 F.3d 1025, 1031 (9th Cir. 2008). The defense has intentionally misrepresented the Plaintiff's allegations in all claims under Rule 12(b)(6), but has not mentioned the allegations they perceive as conclusory or presented any documents to contradict the Plaintiff's allegations.

In response to the defense's Request for Judicial Notice Exhibits A and B, it is important to emphasize they are irrelevant in supporting the Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) and (6) and irrelevant to the case. The Plaintiff previously sought a preliminary injunction to prevent intimidation and interference. The judge in that matter dismissed the claim for lack of subject matter jurisdiction, notably without allowing the Plaintiff to submit a complaint according to the FRCP, without reviewing the Memorandum of Points and Authorities and 232 pages of evidence or considering the involvement of the FBI's Internal Affairs.

Following the dismissal, the Plaintiff filed a motion for reconsideration. (PD #4) The denial of this motion was accompanied by the judge's remark that nothing

in their memorandum and order would prevent the Plaintiff from filing a new case. (PD #5)

Despite the Defendant's extensive discussion of this prior decision in their motion, it fails to demonstrate any of the Plaintiff's evidence or allegations as being conclusory, nor does it provide a valid basis for dismissing the current action under Rule 12(b)(6).  These exhibits should be stricken from the record.

In summary, the plaintiff's complaint articulates a clear, plausible claim for relief, supported by detailed allegations and evidence. The defense's failure to specifically identify contradictory evidence in the complaint, coupled with their intentional misrepresentation and omission of key facts, invalidates their argument for dismissal under Rule 12(b)(6).

**II.      Personal Jurisdiction over Daniel Salt:**  The court does possess jurisdiction over Daniel because he was is employed by a California company, Apex Systems, LLC. He, also conspired with his California colleagues to intentionally misrepresent himself as an AT&T representative while conducting a deceptive interview for an AT&T job at El Segundo, CA.

**California Employer**:  In Mr. Salt's Personal Declaration he states, "I have been employed by Apex Systems, LLC since July 2021," and does not deny being employed by a California company.  Apex Systems, is a California company, his LinkedIn profile displays Oscar Montoya was his direct manager (PD #6), who worked out of El Segundo, CA (PD #7).  The Offer Letter (TAC Ex. L) is from Apex Systems, El Segundo, CA.

**Conspired to commit fraud with his California colleagues**: Ms. Delawalla emailed the Plaintiff about an opening at AT&T (TAC Exhibit B), she then directed him to view Mr. Salt's LinkedIn profile prior to the interview (TAC Exhibit D).  Mr. Salt's LinkedIn profile displays he is an AT&T employee and reported directly to Oscar Montoya (PD #6). However, according to Mr. Salt's

Declaration, he works for Apex Systems, LLC, not AT&T. Therefore, he has admitted to intentionally misrepresenting himself as an AT&T representative who interviewed the Plaintiff for an AT&T position in California.

This concludes Mr. Salt has minimum contacts with California with his employment.  Based on *International Shoe Co. v. Washington,* 326 U. S. 310, 326 U. S. 316. In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U. S. 186, 433 U. S. 204. P. 465 U. S. 788.  Here the relationship with the forum is that Mr. Salt works for Apex Systems, a California company.  His relationship with defendants and litigation is that he conspired with his California colleagues Ms. Delawalla, Mr. Montoya and Mr. Hafkenschiel to misrepresent himself as an AT&T employee and gave a deceitful interview to the Plaintiff regarding an AT&T position at El Segundo, CA.   Therefore, this court has personal jurisdiction over Mr. Salt.

### III.   CLAIMS FOR RELIEF

Contrary to the defense's assertion, the plaintiff's allegations are non-conclusory, detailed, and substantiated by factual information. The allegations are framed in a manner that clearly outlines the defendant's purported misconduct, thereby satisfying the requirement for non-conclusory allegations as stipulated in the precedent Manzarek v. Marine, 519 F.3d 1025, 1031 (9th Cir. 2008).  As stated in the Factual Background the defense council has intentionally misrepresented the Plaintiff's allegations without any supporting evidence.

**A Fraud: 1. <u>Defendant's Representations Were False</u>** The defense council intends to deceive the court by referencing (TAC ¶150) then grossly misrepresenting the content of the allegations.  Defense wrote, "Plaintiff alleges three false representations by Defendants: (1) that they were interviewing him for a job position (TAC ¶¶ 105, 108, 111, 150); (2) that he was offered the position

(TAC ¶¶ 124, 126, 132, 150); and (3) that they shipped a laptop to the address he provided and needed help with its return (TAC ¶¶ 140, 150). The Complaint and its attachments instead show that each representation was true." (DMPA pages 8-9).

The actual allegations in (TAC ¶ 150) are that (1) Mehak Delawalla intentionally misrepresented the React Native position to the Plaintiff, (2) Mehak Delawalla, Oscar Montoya, Ian Hafkenschiel and Daniel Salt intentionally misrepresented they were interviewing the Plaintiff for the React Native position, the job requirements and Oscar Montoya was the project lead, (3) Mehak Delawalla intentionally misrepresented the legitimacy of the hiring process, (4) Mehak Delawalla and John Goulding intentionally misrepresented through their actions that Apex sent hiring paperwork to AT&T/DirecTV. DirecTV then prepared a laptop for the Plaintiff to be used for the React Native position, and John Goulding was ordered to ship the laptop for the position to the Plaintiff's parent's home. (5) Mehak Delawalla, John Goulding and Kim Chu intentionally misrepresented that John Goulding shipped a laptop for the React Native position to the Plaintiff's parent's home, after Apex told him to hold off and there was an urgent need to have the laptop returned. (6) Mehak Delawalla and Kim Chu intentionally misrepresented they were unable to communicate with the Plaintiff's mother and needed him to call her.

The defense did not provide any evidence to contradict these allegations for Fraud.  The defense then omits and misrepresents the Plaintiff's evidence to support the fraud claims.

**Allegations and evidence of fraud during the hiring process**: (TAC ¶¶ 105 - 119) The allegations are that Apex Systems, hires employees for short term projects, therefore, they know exactly what skills are required for the position and what technologies are going to be used.  Mehak reached out to the Plaintiff presenting an AT&T job opportunity that closely resembled his resume, with a

technology the Plaintiff had recently used such as You.I. (TAC Exhibit B).  In (SAC Exhibit D) Mehak provided the Plaintiff the LinkedIn profiles of the interviewers Oscar Montoya, Ian Hafkenschiel and Daniel Salt.  However, the skills and technologies they reported using significantly differ from those in the job description initially presented to the plaintiff. (TAC Exhibit V)

Throughout the interview process, Mr. Montoya, communicated through Ms. Delawalla, repeatedly requesting the plaintiff to update the take-home assignment, incorporating programming languages like iOS, Kotlin, and Objective C, as evidenced by (SAC Exhibits C, G, and I). These requirements were neither part of the project nor included in the skill sets of Mr. Salt or Mr. Hafkenschiel, according to their LinkedIn profiles. (TAC Ex. V) This suggests the defendants exploited the plaintiff's belief that he was close to securing the position, pressuring him to rapidly learn and apply new coding languages.

The Plaintiff called AT&T regarding the fraud and was unable to verify Mr. Montoya as an AT&T employee, whereas Ian Hafkenschiel was identified as hired through Apex Systems, raising questions about Mr. Montoya being the project lead. Also previously mentioned, Mr. Salt revealed in his Personal Declaration, that he was an Apex employee not an AT&T representative as shown in his LinkedIn profile (PD #6), misrepresenting himself at an interview.

The fact that the job requirements continued to change throughout the interview process, including the use of programming languages that were not within the skill set of the interviewers, combined with the fact Mr. Salt admits to misrepresenting himself as an AT&T representative and the Plaintiff was unable to verify Mr. Montoya as an AT&T employee leads to a plausible basis there were intentional misrepresentations during the interview, which is further supported by the acts of deceit that followed the interview.

7

**Misrepresentation of the hiring process and Offer Letter**: The defense argues, "The Complaint and its exhibits contradict Plaintiff's speculation that the job offer was fraudulent," (DMPA page 9, 13-14) but does cite any exhibits that conclude the offer was valid.

The defense attempts to mislead the court that the Plaintiff was promised and received an 'offer letter.' Ms. Delawalla requested the Plaintiff's social security number and address over the phone, informing that they were needed to put on the contract. The Plaintiff was promised a 'contract' not an 'offer letter,' which is supported by email (TAC Ex. M) that is titled "Contract and BG have been launched," Furthermore, the offer letter (TAC Exhibit L), states that it is, "contingent upon acceptance and signature of the Apex Systems Contract." The Plaintiff never received a contract, nor would he have been able to receive one because he never had access to the client portal.

The allegations (TAC ¶¶ 124-139) regarding the hiring process and documents not being legitimate is substantiated by the evidence presented in (TAC Exhibit N), which shows a user logged into the Apex Portal utilizing the Plaintiff's name, social security number and address, with the 'Profile' and 'Important Document' sections already completed and displaying a requirement for e-signature. This is further supported by an Apex Systems training video (TAC ¶ 86), which states that new hires receive individual logins for the Apex Portal to complete compliance documents. However, the Plaintiff was never given access to the portal or presented with compliance documents. This violates the Department of Homeland Security's requirements for identity verification via an I-9 form and the Fair Credit Reporting Act's stipulations for conducting background checks. Ms. Delawalla informed she ordered a background check in (TAC Exhibit M), but the Plaintiff was never presented with any consent forms for the background check.

This further proves the deceptive nature of the interview and hiring process.

**Misrepresentation of Laptop Shipment and Urgency of its return:**

As express in (TAC ¶¶ 140-149) the claim that AT&T/DirecTV falsely alleged the shipment of a laptop for the React Native position and created a false sense of urgency for its return is substantiated by several key points:

Lack of Signed Hiring Documents: The Plaintiff did not sign any hiring documentation or present his identification, which means Apex Systems could not have officially forwarded any documents to DirecTV that would prompt them to prepare and ship a laptop for the React Native position.  Therefore, John Goulding acquired the Plaintiff's contact information through means outside of standard business practices, suggesting an irregular process was at play.

Insecure Shipment of the Package: The package claimed to be a laptop was sent under conditions that compromised its security. As per (PD #8), Mr. Goulding took an extra step to authorize the delivery without a signature requirement, deviating from FedEx shipping policy that items of value require a signature (PD #9). This action indicates an intention to create confusion regarding the package's security at the time of delivery.

Furthermore, Mehak Delawalla knew the Plaintiff was not in the United States.  After the package was shipped by John Goulding on October 8th, Mehak informed the Plaintiff that DirecTV shipped a laptop when Apex told them to hold off on October 11th, and sought to have someone secure the laptop and return it (TAC Exhibit P).  Tracking information of the package reveals Ms. Delawalla contacted the Plaintiff over two hours prior to the delivery of the package, therefore she had plenty of time to stop the delivery and didn't (PD #10). After the package arrived at its destination, they began bombarding the plaintiff with emails, calls and messages attempting to get him to contact his parents.

Fraud is not only verbal and written, but may also arise from non-verbal actions.  "[T]he trial court failed to consider that a cause of action based in fraud

9

may arise from conduct that is designed to mislead, and not only from verbal or written statements." (Tenet Healthsystem Desert, Inc. v. Blue Cross of California (2016) 245 Cal.App.4th 821, 839 [199 Cal.Rptr.3d 901].)  The actions of the defendants were clearly meant to deceive the Plaintiff that DirecTV had an order to ship a laptop for the React Native position to the Plaintiff, Apex told them to hold off but DirecTV sent it anyway.  Furthermore, they deceived the Plaintiff about the urgency of securing the laptop and having it returned, although they purposely shipped it to create a stressful situation.

**2. <u>Plaintiff Does Plead Justifiable Reliance</u>**: The defense intentionally excludes the Plaintiff's allegations of reliance stated in (TAC ¶ 151).  The plaintiff initially relied on the defendants' false representations, which included preparing for interviews, revising assignments, and providing personal information, including his social security number and parents' address, Plaintiff also believed they shipped a laptop because of the tracking number.

The plaintiff's eventual suspicion and realization of the alleged fraud, as mentioned in the defense's argument, does not negate the period of initial reliance.

The defense also misinforms the court, "When Ms. Delawalla confirmed the laptop was sent and asked whether there was a neighbor who could verify its delivery." (DMPA page 10, 21-22).  Ms. Delawalla did not need to verify if the package was delivered, she had the tracking number and informed the Plaintiff the package was delivered. (TAC Ex. Q).

The defense insults the Plaintiff by stating, "Even though Plaintiff alleges he believed the statements were false and believed Defendants intended to harass him and his mother, he provided her contact information to facilitate the alleged harassment." (DMPA page 11, 2-4) Contrary to the defense's insults, the Plaintiff alleged, he was trying to avoid his parents from being harassed by not speaking with them directly. (TAC ¶ 69)

Insert Title of Pleading

The defense's selective representation of the plaintiff's allegations of reliance does not provide a complete picture of the circumstances leading to the plaintiff's actions.

**3. Causal Connection Between Alleged Intent and the Alleged Harm:** The plaintiff's allegations, as detailed in (TAC ¶¶ 152 to 171), demonstrate a clear causal connection between the defendants' intent and the harm caused. This connection spans from the initial contact to the ongoing harassment, contradicting the defense's claim of a lack of causality.

The defense incorrectly asserts that the plaintiff seeks relief for harm to his family. In contrast, the plaintiff clearly outlines the personal harm he suffered due to the defendants' actions. The focus on personal harm is consistent with the legal requirement to allege damages caused by reliance on the defendants' misrepresentations.

The Plaintiff's allegations have been consistent, allegations of sending false alarms have been used to create a situation of emotional distress.

Alignment with Federal Rules of Civil Procedure 9(b):  The defense's expectation in (DMPA page 12, 15-25) for detailed allegations regarding the defendants' knowledge of the plaintiff's circumstances is not in line with the Federal Rules of Civil Procedure 9(b), which allows general allegations of intent, knowledge, and other mental states in fraud cases.  The defendants intentionally made false representations to cause harm to the Plaintiff, their knowledge of the Plaintiff's prior testimony and their ability to predict the Plaintiff's responses to their actions is not a requirement.

Contrary to the defense's conclusion, the harm was not a result of the plaintiff providing his parents' address. (TAC Exhibits M and P) indicates that Mehak Delawalla was aware of the plaintiff's location in Brazil and acknowledged that the laptop shipment was inappropriate.  New evidence shows Mr. Goulding

Insert Title of Pleading

authorized the release of the package without signature, and Ms. Delawalla made no attempt to stop the delivery even though she had plenty of time, as detailed in (PD #8 - 10). They arranged for the package to be delivered insecurely, then pressured the Plaintiff to contact his parents creating an emotionally stressful situation.

Conclusion: In conclusion, the plaintiff has established a viable fraud claim by demonstrating a causal connection between the defendants' deceitful actions and the personal harm he suffered. The defense's argument fails to account for this connection and incorrectly interprets the nature of the plaintiff's allegations.

**B. Claim for Intentional Infliction of Emotional Distress**

Misrepresentation by Defense: (DMPA pages 13-14) The defense council changes the alleged conduct three times in the first three paragraphs. On (DMPA page 14, 3-5) the defense misrepresents the Plaintiffs allegations, by stating, "Defendants' alleged conduct – interviewing Plaintiff for a position, offering him the job, mailing a computer, and asking for his help in returning the shipment when Defendants learned that he provided false information about his residence."

The defense continues to contradict evidence. Evidence shows (TAC Exhibit M), Mehak understands the Plaintiff is in Brazil on Oct. 1st, and double checks to see if the VPN would work in Brazil. The defendants knew the Plaintiff was in Brazil one week before the laptop was shipped. The Plaintiff never provided false information of his address, (TAC Exhibit K) the email is titled 'Address for Contract,' the Plaintiff provided an address to put on the contract. Not only are these facts explained in the complaint, but the Plaintiff has explained this to the defense via email.

Based off of these erroneous allegations, the defense claims the conduct is not extreme or outrageous.

Insert Title of Pleading

Actual alleged conduct (TAC ¶ 173-175) is that the Defendants consisting of six employees from three different reputable companies, conspired over the course of three weeks to make the Plaintiff think he was close to securing a job, only then to put him in a situation of fear for his elderly parent's safety and well-being, as well as his ability to pursue employment.  Which is extreme outrageous and inline with the precedent. "Severe emotional distress [is] emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." (Fletcher v. Western Life Insurance Co. (1970) 10 Cal.App.3d 376, 397 [89 Cal.Rptr. 78].)

**Intentional**: Plaintiff also pleads intentional actions in (TAC ¶ 174), to excite the Plaintiff about a potential job opportunity over the course of three weeks, then they created a scenario of emotional distress when he discovered the opportunity and offer were fraudulent and he was suddenly in a situation where he felt they were threatening the well-being of his elderly parents.

**Conduct actual and proximate cause:**  Plaintiff pleads the defendants' actions have been actual and direct cause of severe emotional distress. (TAC ¶ 179-180) The defendants' deliberate targeting of the Plaintiff and his elderly parents, along with the calculated and malicious nature of their actions, resulted in severe emotional harm beyond what any reasonable person should endure.

Impact on Mental and Emotional Well-Being (Paragraphs 180, 181): The distress inflicted by the defendants has had a lasting impact on the plaintiff's mental and emotional well-being, leading to wage losses, reluctance to seek gainful employment, and ongoing fear of harassment. This demonstrates the long-term consequences of the defendants' actions.

The defense's claim that allegations against the FBI and Consular Affairs negate the defendants' liability is unfounded. The allegations are consistent, each

13

Insert Title of Pleading

party's actions contribute independently to the Plaintiff's emotional distress, and each must be held accountable for their impact.

**C. Negligent Infliction of Emotional Distress:  Duty**: The defense's argument in their motion to dismiss, focusing on the purported lack of an actionable duty to conduct a hiring process "professionally," fails to acknowledge the full scope of the plaintiff's allegations in (TAC ¶260). These allegations are not merely about a lack of professionalism but specifically cite legal violations and negligent actions that amount to a breach of duty.

Emphasis on Legal Violations and Negligent Actions: TAC ¶260 details specific legal breaches by the defendants, including their failure to provide access to the Apex Systems client portal, which is a necessary step in complying with federal and state employment policies. This includes adherence to the Fair Credit Reporting Act for background checks and the provision of Form I-9 as required by the Department of Homeland Security. Neglecting these critical aspects of the hiring process constitutes a clear breach of duty.

Fraudulent Job Offer and Package Shipment: The defense overlooks the context in which these actions occurred. The plaintiff's provision of his address and subsequent emotional distress were directly related to a fraudulent job offer and the manipulative shipment of a package. This was not a routine hiring process but one marked by deceit and manipulation, intended to cause emotional distress.

Misrepresentation of Plaintiff's Voluntary Disclosure: The defense's assertion that the plaintiff voluntarily provided his address fails to account for the fraudulent circumstances under which this information was solicited. The plaintiff supplied his personal data under a coerced and deceptive pretense, believing he was partaking in a legitimate hiring process.

Fraudulent Nature of Defendants' Conduct: The plaintiff's emotional distress is inextricably linked to the defendants' fraudulent conduct, including deceptive

14

hiring practices and the intentional shipment of a package designed to create distress.

In conclusion, the plaintiff's allegations in TAC ¶260 and related paragraphs establish a clear breach of duty by the defendants, consisting of legal violations and negligent conduct. These actions directly caused the plaintiff's severe emotional distress, justifying the claim for NIED. The defense's motion to dismiss overlooks key aspects of these allegations and fails to recognize the substantial emotional impact of the defendants' actions.

**D. Stalking: Alleged Conduct**: The defense contends that there is no alleged conduct in California. On the contrary, all alleged stalking conduct occurred in California. Once again, the defense omits the Plaintiff's allegations, which are in the (TAC ¶¶ 211-212). In summary, defendants Mehak Delawalla, Kim Chu, John Goulding, and Oscar Montoya, committed a chain of incidents in California to follow, harass and alarm the Plaintiff over the course of almost a month. They used intentional misrepresentations to make the Plaintiff believe he was close to securing a position with AT&T, even when the Plaintiff believed he was not qualified, then convinced him he was close to securing the position and harassed him with take home tests over the course of two weeks. Ms. Delawalla misrepresented that he was being offered a job utilizing fraudulent documentation. Mr. Goulding coordinated with Ms. Delawalla to ship a package to his parents' address insecurely knowing the Plaintiff was not at the address, in order to create a situation of emotional distress pressuring the Plaintiff to contact his parents. When the Plaintiff realized, the entire situation was related to previous acts of stalking, which had become violent over the past year, he was forced to comply with the defendants demands. However, they continued to harass him to contact his parents. The entire chain of incidents was committed by the defendants in California, aligning with statute. "The statute proscribes only conduct occurring in

Insert Title of Pleading

California. *See Diamond Multimedia Sys., Inc. v. Superior Ct.* , <u>19 Cal.4th</u> <u>1036</u>, <u>80 Cal.Rptr.2d 828</u>, <u>968 P.2d 539, 554</u> n.20 (1999)" *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021).

**Credible Threats**: Contrary to the defense's contention, the Plaintiff's allegations of credible threats are consistent with California Civil Code 1708.7(a)(3)(A). This law encompasses threats implied by a pattern of conduct, which may include actions by third parties.

The Defendants' conduct, particularly the shipment of the laptop and related communications, contributed to an ongoing pattern of stalking, as defined in Code 1708.7(b)(2). This pattern, established through prior unrelated incidents of harassment and violence, was arguably perpetuated by the Defendants' actions.

The crux of the Plaintiff's claim is that the Defendants' actions, viewed in the context of previous experiences with harassment, constitute a credible threat within the broader pattern of stalking. This interpretation aligns with the legal framework recognizing the cumulative impact of various acts over time.

Thus, the involvement of third parties in related incidents does not diminish the potential for the Defendants' actions to be part of a credible threat. The Plaintiff's allegations, when considered under the legal definition of credible threats in stalking cases, suggest that the Defendants' conduct could be perceived as contributing to a pattern of behavior threatening the Plaintiff and his family's safety.

**Cease harassment / Exigent Circumstances**: California Civil Code 1708.7 requires either a clear communication to cease harassment or the exigent circumstances that make communication unsafe.  The Plaintiff provided clear communication to cease the overall pattern of stalking and was put into unsafe circumstances with the defendants.

16

Insert Title of Pleading

The Plaintiff had submitted several complaints to the FBI, DOJ and testified in court regarding the stalking and retaliation, which is clear communication to cease harassment (TAC ¶¶ 1, 21 - 28).   Furthermore, after the interview, the plaintiff informed Mehak of his intention to seek job opportunities within his skill set, but defendants Mehak and Oscar continued to deceive the Plaintiff to believe he was close to securing the position.  Although the Plaintiff did not realize at the time he was being deceived, this should have served as a cue for the defendants to discontinue their misleading practices. The deception enabled them to continue to follow and harass the Plaintiff with homework assignments unrelated to the job and fraudulent hiring documents.

**Exigent circumstances** The defense's argument that exigent circumstances did not exist overlooks the broader context of the Plaintiff's ongoing experiences of stalking and harassment, which according California Civil Code 1708.7 involves conduct by third parties.  As explained in (TAC ¶ 230-231) by the time the Plaintiff realized the Defendants were involved with the overall pattern of stalking the circumstances were unsafe to give clear warning because they had already involved his elderly parents as explained in (TAC ¶ 228-229).   By giving a clear warning the situation would have escalated, and considering the life threatening acts that had occurred within the past year including an attempt to run over the Plaintiff and a drug induced robbery, the circumstances were unsafe and the Plaintiff was forced to comply with the Defendants.

In essence, the Plaintiff's situation aligns with the legal understanding of stalking, where a victim's safety concerns are evaluated in light of the entire pattern of conduct, not just isolated incidents. The ongoing nature of threats and intimidation constitutes exigent circumstances in this case.

**E. Intrusion into Private Affairs:** Legally Protected Privacy Interest described in (TAC ¶¶ 236-239):  Contrary to the defense's assertion, the plaintiff

17

had a reasonable expectation of privacy regarding his personal data, including his social security number and address. This expectation extends to scenarios where such data is provided under the pretense of employment necessity, as alleged in (TAC ¶¶ 236 and 237). Defendant Mehak Delawalla wrongfully obtained his private information, under the false pretense that he was to receive a job offer and contract if he provided this information underlines this expectation.

Reasonable Expectation of Privacy (TAC ¶¶ 239-240): After providing his information to Apex Systems, the plaintiff reasonably expected that his data would not be distributed without his consent. The defense's claim that the plaintiff lacks a privacy interest is refuted by the fact that the data was provided under specific, employment-related circumstances, as detailed in (TAC ¶¶ 239 and 240).

Highly Offensive Intrusion (TAC ¶¶ 241-245):  The defense's claim of non-offensiveness is countered by the nature of the intrusion. Mehak Delawalla and John Goulding's fraudulent acquisition, unauthorized use and distribution of the plaintiff's personal information, including the orchestrated laptop shipment, constitute highly offensive intrusions. This is exacerbated by the subsequent emotional distress inflicted upon the plaintiff and his elderly parents, as outlined in (TAC ¶¶ 241-245).

The intrusion into the plaintiff's private affairs was neither common nor expected in the context of employment. The resulting harm, as detailed in Count I (paragraphs 155-173) and Count II (paragraphs 180-183), underscores the egregiousness of the defendants' actions.

**F. Plaintiff's Derivative Claims:**  Contrary to the defense's assertion, the complaint does contain valid claims for both fraud and intentional infliction of emotional distress (IIED). As previously demonstrated, these claims meet the necessary legal thresholds, thereby providing a foundation for the conspiracy allegation.

18

**Defense's Intentional Misrepresentations**: The defense argues the Plaintiff alleges the Defendants conspired with the government in years long campaign of harassment and that it was already dismissed as fanciful.  Similar to the other causes of action the defense purposely misleads the court of the conspiracy allegations, which the Plaintiff outlined in (TAC ¶¶ 182 - 204).  The Plaintiff never claimed the defendants participated with the government over the course of years, the claim involves actions of the defendants over the course of almost a month. Furthermore, the Plaintiff's attempt at a preliminary injunction to prevent further acts of retaliation that was dismissed as fanciful is a separate case.  The judge has not barred the Plaintiff from opening a new case, and that court's decision has nothing to do with Rule 12(b)(6) in this case, making the defense's argument frivolous.

**Conspiracy**: As per Choate v. County of Orange, and other cited cases, a conspiracy requires each member to act in concert and agree, either expressly or tacitly, to accomplish a common and unlawful plan, with at least one overt act to further it. The complaint details how each defendant's actions were not independent but part of a coordinated effort to commit fraud. (TAC 182 - 204).

**Overt acts Fraud,** include Mr. Salt's creation of a deceptive LinkedIn profile as an AT&T representative.  The deceptive interview for the React Native position conducted by Mr. Montoya, Mr. Salt, and Mr. Hafkenschiel.  Ms. Delawalla's false promise of a contract and request for the Plaintiff's personal information, which was then used to create a fake profile and presentation of false hiring documents. Mr. Goulding obtained the plaintiff's information in a non-business manner and authorized the shipment of the package without a signature, to ensure the delivery of the package was insecure. Ms. Delawalla contacted the Plaintiff prior to the delivery of the package, when she could have contacted FedEx

to stop the shipment.  Ms. Delawalla and Ms. Chu pressured the Plaintiff to contact his parents.

Based on the actions of Ms. Delawalla, Mr. Goulding and Ms. Chu they conspired to inflict emotional distress as well.  Overt acts include the constant messages and emails pressuring the Plaintiff to contact his mother.

Following the principle from Wyatt v. Union Mortgage Co., the alleged actions of the defendants, if proven to be part of a conspiracy, would implicate all who agreed to the plan, not just those who executed the specific acts. The complaint outlines how each defendant's actions contributed to the alleged conspiracy to commit fraud which inflicted emotional distress. (TAC 191 - 196).

**Vicarious Liability Claim**: The defense claims the Plaintiff has not plead underlying wrongs.  Plaintiff claimed underlying wrongs of Fraud from count I and intentional infliction of emotional distress from count II displayed (TAC 246 - 254).  Thus, the claim for vicarious liability, which holds an employer responsible for the actions of its employees conducted within the scope of their employment, is valid.

**Conclusion**: For these reasons the Plaintiff opposes the defense's motion to dismiss as it was brought in bad faith, with the intention of misleading the court regarding the Plaintiff's allegations thus making claims that the Plaintiff has failed to state a claim in which relief can be granted.  The court does have jurisdiction over Mr. Salt and the Plaintiff has stated claims in which relief can be granted for all causes of action.

Dated: December 28, 2023

Russell Terry
1717 N Street NW STE 1
Washington, DC 20036
720-603-1872

20

The undersigned, counsel of record for Russell J Terry, Plaintiff, certifies that this brief contains 6032 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 28, 2023

Russell Terry
1717 N Street NW STE 1
Washington, DC 20036
720-603-1872

21