Name: Russell J Terry
Address: 1717 N Street NW STE 1
Washington, DC 20036
Phone number: 720-603-1872
Plaintiff in Pro Per

Wendy Sugg (SBN 223335)
Sugg Law Group, a Professional Corporation
384 Forest Ave., Suite 15
Laguna Beach, CA 92651
Telephone:   (949) 260-9548
Email:          wendy@sugglaw.com

Attorneys for Defendants
Apex Systems, LLC, AT&T Corp.,
DIRECTV, LLC, Mehak Delawalla,
Kim Chu, John Goulding, Ian
Hafkenschiel and Daniel Salt

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Russell J Terry,<br>      Plaintiff,<br>  vs.<br>Apex Systems, LLC, AT&T, DirecTV, LLC, Mehak Delawalla, Kim Chu, John Goulding, Oscar Montoya, Ian Hafkenschiel, Daniel Salt<br>      Defendants. | Case No.: CV23-7707-FMO(JCx)<br>**JOINT RULE 26(f) REPORT**<br>**Scheduling Conference**<br>Date: January 18, 2024<br>Time: 10:00 AM<br>Judge: Hon. Fernando Olguin<br>Courtroom 6D |

1

JOINT RULE 26 REPORT

Plaintiff RUSSELL J TERRY ("Plaintiff") and Defendants APEX SYSTEMS, LLC, AT&T, DIRECTV, LLC, MEHAK DELAWALLA, KIM CHU, JOHN GOULDING, IAN HAFKENSCHIEL, DANIEL SALT ("Defendants") respectfully submit the following Joint 26(f) Report.

Plaintiff and counsel for the Defendants held a telephonic planning meeting on December 21, 2023.

JOINT RULE 26(F) REPORT

**A. Statement of the Case**:

1. <u>Plaintiff's Position</u>: The Plaintiff, having faced retaliation following reports of FBI misconduct affecting him, his family, and his employment, ceased contact with his family to prevent them from being harassed. A week after testifying about the retaliation, he was contacted by Ms. Delawalla from Apex Systems. She falsely presented an employment opportunity at AT&T, that closely fit his skill set. Before the interview, she directed him to review the LinkedIn profiles of the interviewers, including Mr. Salt, who falsely identified himself as an AT&T employee. During the two-week interview, the interviewers continually shifted the skill requirements. They emotionally entangled him by constantly suggesting he was close to securing the position, only to then demand proficiency in unrelated programming languages.

Under the false promise of a forthcoming contract, Ms. Delawalla requested the Plaintiff's social security number and an address for the contract. Given the remote nature of the job and his unstable residence in Brazil, the Plaintiff provided his parents' address in Arizona. On October 1st, Ms. Delawalla was fully aware the Plaintiff was residing in Brazil, email correspondence displays she double checked to see if the VPN would work outside of the United States.

Ms. Delawalla deceitfully used his social security number and address to create a false profile on the Apex portal. Under this guise, she completed compliance documents in the Plaintiff's name and emailed him an agreement from the portal, giving the illusion of a legitimate onboarding process. This agreement, however, exposed the deceptive profile, and falsified compliance documents. Furthermore, she presented the Plaintiff with a fake offer letter, not a contract as promised.

The Plaintiff, without having completed any steps in the hiring process, was deceived that John Goulding of DirecTV had sent a company laptop to the Arizona address. Mr. Goulding had informally obtained the Plaintiff's information and authorized the package's release without a signature, contrary to FedEx's policy. Ms. Delawalla claimed the laptop was shipped when she instructed DirecTV to hold off, she contacted the Plaintiff over 2-hours before its delivery and instead of rerouting the shipment through FedEx, she pressured the Plaintiff to involve his parents. The Plaintiff, upon realizing this was a setup to distress him and his elderly parents, felt compelled to comply, fearing escalating retaliation. Both he and his mother faced harassment through repeated calls and messages, as Ms. Chu and Ms. Delawalla continuously tried to force the Plaintiff to contact his family directly.

This prolonged deception, lasting nearly a month, has resulted in enduring emotional distress for the Plaintiff, severely hindering his ability to obtain gainful employment and heightening his fears and anxieties.

2.      <u>Defendants' Position</u>: Plaintiff, an applicant for employment with Apex Systems, LLC, claims that Defendants engaged in a wide-ranging conspiracy with the apparent purpose of getting him to contact his parents. Plaintiff's allegations rest on Defendants somehow becoming aware of

Plaintiff's actions in an unspecified and unrelated legal proceeding and agreeing with unknown third parties to engage in a false job interview process. Had Plaintiff been upfront during the job interview process that he resided in Brazil instead of falsely providing his parents' address in Arizona as his residence, Defendants would not have had any reason to contact Plaintiff's parents to arrange for return of a company-provided laptop computer shipped to their address in anticipation of his employment. Plaintiff has no basis for recovery and has suffered no damages.

**B. Subject Matter Jurisdiction:**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

Diversity Jurisdiction, pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over the present matter due to the existence of diversity of citizenship between the plaintiff and the defendants. The plaintiff is a citizen of the United States and is residing in Brazil as a permanent resident. The defendants Apex Systems and AT&T / DirecTV have operations in Los Angeles, California. Defendants Mehak Delawalla, Kim Chu, Oscar Montoya, Ian Hafkenschiel, and John Goulding are citizens of California and defendant Daniel Salt is a citizen of Florida.

**C. Legal Issues**:

1. Plaintiff's Position:

The legal issues to be decided in this case include:

Personal Jurisdiction for defendant Daniel Salt.  Whether his employment with a California company and his involvement with his California colleagues in the allegations gives the court personal jurisdiction over Mr.

4
JOINT RULE 26 REPORT

Salt based under the 14th Amendment S1.7.1.4 Minimum Contact Requirements.

<u>Intentional Misrepresentation</u>: This issue examines whether the defendants knowingly made a false representation to the Plaintiff or were reckless about its truth. The focus is on whether the defendant intended the Plaintiff to rely on this misrepresentation, whether the Plaintiff's reliance was reasonable, and if this reliance led to harm. Additionally, the court will assess if this reliance significantly contributed to the Plaintiff's harm.

<u>Intentional Infliction of Emotional Distress</u>: This issue examines if the defendant's conduct was extremely outrageous and beyond acceptable norms. If the defendant intended to cause or recklessly disregarded the risk of causing the Plaintiff severe emotional distress. It is crucial to establish that the Plaintiff experienced profound emotional distress as a direct result of the defendant's actions and that this conduct was a key factor in causing such distress.

<u>Conspiracy to commit Intentional Misrepresentations</u>: Conspiracy to Commit Intentional Misrepresentations: This issue revolves around whether the defendants conspired to make intentional misrepresentations that harmed the Plaintiff. The court will consider whether the co-conspirators committed a tort resulting in harm to the Plaintiff and if the other defendants can be held responsible for this harm. Key factors include whether the defendants were aware of the co-conspirator's plans to commit the tort and if there was an implied agreement to participate in these misrepresentations, as indicated by their conduct. This may involve assessing their awareness and intent regarding the misrepresentations. It's important to note that proving direct involvement in the wrongful act or full knowledge of all conspiracy details

for each defendant is not required. Liability can be inferred from the overall circumstances and the nature of the defendants' participation.

<u>Conspiracy for Intentional Infliction of Emotional Distress (IIED):</u> the same legal issues as conspiracy to commit the tort of intentional misrepresentations, but the tort is IIED.

<u>Stalking</u>: The legal question here is whether the defendants' actions can be legally classified as conduct intended to follow, alarm, and harass the Plaintiff. Key considerations include whether the Plaintiff reasonably feared for the safety of his parents due to the defendants' actions, or if he suffered substantial emotional distress as a result. The court will also examine if the defendants' conduct constituted a credible threat, causing the Plaintiff to fear for his or his parents' safety, or if it demonstrated reckless disregard for their safety. Additionally, the court will assess the adequacy of the Plaintiff's efforts to cease the pattern of conduct or if the circumstances were too unsafe for the Plaintiff to explicitly demand that the defendants cease their harassing behavior towards him and his parents.

<u>Intrusion into Private Affairs:</u> Whether the Plaintiff had a reasonable expectation of privacy of his personal data.  If defendants intruded upon his expectation of privacy.  If the intrusion would be highly offensive to a reasonable person.  If the Plaintiff was harmed and the conduct of the intrusion was a substantial factor in causing the harm.

<u>Vicarious Liability under California's Doctrine of Respondeat Superior:</u> Consideration of whether the employer is vicariously liable for the actions of its employees to commit intentional misrepresentations and intentional infliction of emotional distress under the doctrine of respondeat superior.  If there was an agent/employee relationship and that agent/employee was

acting within the scope of their agency/employment when they harmed the Plaintiff.

<u>Negligent Infliction of Emotional Distress</u>: Whether the defendant owed a duty of care to the Plaintiff, which is a legal question determined by the foreseeability of the risk and a balance of policy considerations. The court will assess if the defendants breached a foreseeable duty of care and if this breach was a significant factor in causing emotional distress to the Plaintiff.

2. <u>Defendants' Position</u>:

   a. This Court does not have personal jurisdiction over Defendant Daniel Salt.

   b. Defendant Oscar Montoya has not been served with the operative complaint.

   c. Defendants' Motion to Dismiss the Third Amended Complaint is pending and scheduled to be heard on January 18, 2024.

**D. Parties and Evidence**

1. <u>Parties</u>:

   Plaintiff: Russell Terry

   Defendants:
   - Apex Systems, LLC. Defendant Apex Systems, LLC is a division of ASGN Inc.
   - AT&T Corp. Defendant AT&T Corp. is owned by its parent corporation, AT&T Inc.
   - DIRECTV, LLC. Defendant DIRECTV, LLC is a wholly-owned subsidiary of DIRECTV Holdings LLC. DIRECTV Holdings LLC is a wholly-owned subsidiary of DIRECTV Financing, LLC. DIRECTV Financing, LLC is a wholly-owned subsidiary of

DIRECTV Financing Holdco, LLC. DIRECTV Financing, LLC is a wholly-owned subsidiary of DIRECTV Entertainment Holdings LLC. DIRECTV Entertainment Holdings LLC is jointly-owned by AT&T Inc. and TVG VIII Merlin Investment Holdings, L.P.

- Mehak Delawalla
- Kim Chu
- John Goulding
- Oscar Montoya
- Ian Hafkenschiel
- Daniel Salt.

2. <u>Additional Parties</u>:

   a. <u>Plaintiff's Position</u>: Unknown person involved with the interview. Additional parties may be added to the lawsuit.

   b. <u>Defendants' Position</u>: Defendants do not intend to add any parties to this action.

3. <u>Witnesses</u>:

   a. <u>Plaintiff's Position</u>: Apex Systems, LLC, Managing Director Matthew Cheney; testimony from Mehak Delawalla, Kim Chu, John Goulding, Oscar Montoya, Daniel Salt, Ian Hafkenschiel, will seek testimony from Apex Systems, LLC personnel, DIRECTV, LLC personnel, and AT&T personnel. Plaintiff's parents Alan Terry and Loujuana Terry
   US Consulate American Citizen Services, Brazil, Consulate Assistants
   FBI LEGAT Brazil

   b. <u>Defendants' Position</u>: Defendants intend to seek testimony from Plaintiff, as well as Alan Terry and Loujuana Terry, and will rely

upon testimony from Apex Systems, LLC personnel, DIRECTV, LLC personnel, and AT&T Corp. personnel involved in the job application process and interview of Plaintiff.

4. <u>Evidence</u>:

   a. <u>Plaintiff's Position</u>:

**Proof of Law Enforcement Involvement**

1. Letter from the Department of Justice Office of Inspector General
2. Letter from Internal Affairs at the FBI, inviting additional information to be sent directly to Internal Affairs.

**Profiles / Employment history**

3. Email / Mehak / September 20, 2021:  Mehak sends an email prior to the interview directing the Plaintiff to view Oscar Montoya, Ian Hafkenschiel and Daniel Salt's LinkedIn profiles.
4. Daniel Salt's LinkedIn profile: displays him as an AT&T employee, he also comments that Oscar was his direct manager.  Oscar's LinkedIn profile shows he worked in El Segundo, CA.
5. Daniel Salt's Declaration:  Daniel Salt claims he worked for Apex Systems, not AT&T.  He also states he was never employed in California which conflicts with his LinkedIn profile and the offer letter from Apex Systems, which is from El Segundo, CA.
6. Memorandum for Motion to Dismiss (page 6, lines 27 -28), "Mr. Salt has performed no act in California and has no connection to California." Employment is considered a connection to California.
7. Offer letter from Apex Systems, electronically signed by Apex Managing Director Matthew Cheney.

8. Ian Hafkenshciel: LinkedIn profile, informing Oscar was his manager at DirecTV, displaying different technologies used in the job than what Mehak informed the Plaintiff.
9. Oscar Montoya: LinkedIn profile, displaying he was employed at both AT&T and DirecTV as manager at El Segundo, CA.
10. Skype message from John Goulding identifying himself as a DirecTV employee.
11. Return shipping label, identifying John Goulding as an AT&T employee.

<u>To get at discovery</u>

12. Employment verification of Daniel Salt, Ian Hafkenschiel, Oscar Montoya, Mehak Delawalla, Kim Chu, John Goulding, Matthew Cheney
    a. Including title of job, job description, location, dates employed, direct manager, employer location, pay rate.
13. Records pertaining to interviewers, agreement to conduct interviews, Oscar Montoya, Ian Hafkenschiel and Daniel Salt.
14. The email from Mehak Delawalla on September 20th, provided the meeting link to someone's personal meeting room. Will verify whose personal meeting room is https://attcorp.webex.com/meet/om951c.
15. Verify who attended the interview.

**React Native opening at AT&T (Job position)**

16. Email from Mehak Delawalla / September 15th, 2021: detailing the Remote React Native Opening with AT&T. Showing job requirements.
17. LinkedIn profiles of Daniel Salt and Ian Hafkenschiel: displaying actual technologies used. Reveals different job requirements and technologies used than what was presented by Mehak Delawalla.

18. Emails Mehak / September 21 – 29th: Updating the take-home assignment to require programing of computer languages unrelated to the React Native position.
19. Take home test requirements attachments to the emails.

<u>To get at Discovery</u>

20. AT&T/ DirecTV contract with Apex Systems regarding React Native opening at AT&T
21. Apex Systems, DirecTV and AT&T records regarding React Native opening at AT&T/ DirecTV. (hiring manager, job requirements, qualifications, equipment provided, pay rate, compliance documents)

**Interview and Hiring**

22. Emails from Mehak of take-home test, Exhibit B, C, D, G, F, I, J of Third Amended Complaint.
23. Email from Mehak requesting address for the contract Exhibit K.
24. Offer Letter for 'React Native at AT&T/DirecTV' position (Exhibit L).
25. Emails regarding hiring process from Mehak.
26. Youtube video https://www.youtube.com/watch?v=cLtjanesY8s&t=9s (25 seconds – 1 minute of the video). Tiffany Woolwine, Training and Development Specialist at Apex Systems, informs that all new recruits and recruiters have their own login to the platform for training and compliance document completion.
27. (Exhibit N) printout of Apex portal, Confidentiality and Invention Agreement

<u>To get at Discovery</u>

28. Apex Systems recruiting policy pertaining to AT&T and DirecTV hires.
    a. Obtaining candidates personal information

    b. Federal and State compliance documents

    c. Consent forms, data privacy, background check

    d. Apex Portal policy, guidelines for new hires.

    e. Offer letters, contracts.

29. Records pertaining to Offer Letter, Exhibit L, and involvement of Managing Director Matthew Cheney.
30. Records pertaining to the Plaintiff in Apex Portal, Exhibit N.
31. Records Apex Systems sent to AT&T and DirecTV pertaining to the Plaintiff.
32. Plaintiff's personal records at AT&T and DirecTV.

### Shipment of the Package

33. FedEx tracking information of the package.
34. Phone calls and messages from Mehak Delawalla and John Goulding.
35. Emails from Mehak Delawalla and Kim Chu regarding the recovery of the laptop.

### Discovery

36. AT&T and DirecTV policy for preparing and shipping a company laptop for Apex Systems, LLC hires.
37. DirecTV to acknowledge if a company laptop was released to the Plaintiff for the React Native opening.
38. Apex communication with John Goulding to hold off on shipping the laptop.
39. Proof of calls and emails from Kim Chu and Mehak Delawalla to Loujuana Terry.
40. Apex Systems, policy and procedures of Account Mangers as it relates to new hires.
41. Apex Systems, policy on providing new hire data to AT&T / DirecTV.
42. Apex and DirecTV internal communications on recovery of the laptop.

43. UPS tracking information of the package returned to AT&T.

Proof of Retaliation / Stalking Conduct

44. Emails with Mother's email account (September 20 - 23, 2020, December 25, 2020)
45. Emails with US Consulate (September 30, 2020 – July 16, 2021, March 2022)
46. Department of Justice Records, Civil Rights Division Records
47. May 12, 2021, Office of Professional Responsibility complaint.
48. Police report from drug-induced robbery in Brazil May 21, 2021
49. Email on October 4, 2021, attempting to get Plaintiff to contact mother.
50. Emails with FBI LEGAT Brazil, FBI Investigator Rodolfo Paredes, November 2021
51. FBI records 11/11/2021
52. FOIA request Bureau of Consular Affairs (pending FOIA request expedited since July 25, 2023)

Discovery

53. Plaintiff's testimony Brazil September 8, 2021

    b. <u>Defendants' Position</u>: Defendants intend to rely upon written correspondence with the Plaintiff and documents provided to Plaintiff as part of the interview process.

**E. Insurance**

Plaintiff has no insurance related to this matter.

Defendant Apex Systems, LLC has insurance that may apply to some or all of the claims alleged against it. Apex has tendered the claim to its insurer.

**F. Magistrate Judge**

At this time the parties do not consent to have the case assigned to a Magistrate Judge for all purposes.

**G. Discovery**

1. <u>Plaintiff's Position</u>:

The Plaintiff provided initial disclosures pursuant to the Federal Rules of Civil Procedure and court orders on January 3, 2024.

Plaintiff anticipates serving Requests for Admission, Interrogatories, Requests for Production and depositions.

Plaintiff does not anticipate using expert witnesses at this time.

Plaintiff does not agree to delay exchange of initial disclosures until January 31, 2024. Plaintiff request defense provide any initial disclosures in its possession according to the Federal Rules of Civil Procedures and court orders in order not to delay discovery.

Plaintiff's proposed the following discovery schedule:

- Fact discovery cut off: July 5, 2024
- Expert witness disclosures (initial): June 1, 2024
- Expert witness disclosures (rebuttal): July 1, 2024
- Expert discovery cut off: July 31, 2024
- Final date for hearing on dispositive motions: October 25, 2024

2. <u>Defendants' Position</u>:

During the December 21, 2023 telephonic conference regarding this joint report, Plaintiff agreed to exchange of initial disclosures by all parties on January 31, 2024. On January 3, 2024, Plaintiff informed Defendants' counsel that he no longer agreed to the January 31, 2024 exchange date. Defendants relied on Plaintiff's agreement on December 21, 2023. Defendants will serve their initial disclosures on or before January 11, 2024.

Defendants propose the following discovery schedule:

- Fact discovery cut off: July 5, 2024
- Expert witness disclosures (initial): June 1, 2024
- Expert witness disclosures (rebuttal): July 1, 2024
- Expert discovery cut off: July 31, 2024
- Final date for hearing on dispositive motions: October 25, 2024

### H. Motions

1. <u>Plaintiff's Position:</u>  Amended complaints, Addition of Plaintiffs and Defendants, Summary Judgment Motion and Discovery motion

2. <u>Defendants' Position:</u> Defendants expect to file a motion for summary judgment.

### I. Class Certification

Not Applicable to this action.

### J. Dispositive Motions

1. <u>Plaintiff's Position:</u>  Final date for hearing on dispositive motions October 25, 2024

2. <u>Defendants' Position:</u> Defendants believe that each claim can be resolved via dispositive motion because each claim fails as a matter of law. Defendants propose a final date for hearing on dispositive motions of October 25, 2024.

### K. Settlement/ Alternative Dispute Resolution (ADR)

The parties have not engaged in settlement discussions. Plaintiff is willing to discuss settlement.

The parties agree on conducting a settlement conference with a magistrate judge.

L.  **Pretrial Conference and Trial**

    1.    <u>Plaintiff's Position</u>: Pretrial Conference in mid-November 2024 with a trial date in mid-December 2024.

    2.    <u>Defendants' Position</u>: Pretrial Conference in mid-November 2024 with a trial date in mid-December 2024.

M. **Trial Estimate**

    1.    <u>Plaintiff's Position</u>: Plaintiff estimates 4 days for a jury trial.

    2.    <u>Defendants' Position</u>: Defendants estimate a 2-3 day jury trial. Defendants anticipate calling 4 witnesses.

N. **Trial Counsel**

    1.    <u>For Plaintiff</u>: Russell Terry

    2.    <u>For Defendants</u>: Wendy Sugg, Sugg Law Group

O. **Independent Expert or Master**

The parties agree that an Independent Expert or Master is not needed.

P. **Other Issues**

    1.    <u>Plaintiff's Position</u>: No other issues at this time

    2.    <u>Defendants' Position</u>: Defendants ask to bifurcate the liability phase of discovery and trial from the damages phase as to all damages or, in the alternative, as to punitive damages only.

Dated: January 4, 2024                        Russell J. Terry

                                              By:       /s/ Russell J. Terry
                                                    Russell J. Terry
                                                    Plaintiff
                                                    In Pro Per

| | |
|---|---|
| Dated:  January 4, 2024 | SUGG LAW GROUP<br><br>By: _____/s/ *Wendy Sugg*_____<br>       Wendy Sugg<br>       Attorney for Defendants<br>       Apex Systems, LLC, AT&T Corp.,<br>       DIRECTV, LLC, Mehak Delawalla,<br>       Kim Chu, John Goulding, Ian<br>       Hafkenschiel and Daniel Salt |

*Pursuant to Local Rule 5-4.3.4(2), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.